**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| URSULA MCGLONE, *et al.* | ) | Civil Action No. 2:19-cv-02196-ALM-EPD |
| | ) | |
| Plaintiffs, | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| v. | ) | Chief Magistrate Judge |
| | ) | Elizabeth A. Preston  Deavers |
| CENTRUS ENERGY CORP., *et al.* | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) | |

---

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Centrus Energy Corp., United States Enrichment Corporation, Uranium Disposition Services, LLC, BWXT Conversion Services, LLC, Mid-America Conversion Services, Bechtel Jacobs Company, LLC, LATA/Parallax Portsmouth, LLC, and Fluor-BWXT Portsmouth, LLC (collectively, "Defendants") move that this Court dismiss Plaintiffs Ursula McGlone, Jason McGlone, Julia Dunham, K.D. and C.D.'s (collectively, "Plaintiffs'") Complaint for failure to state a claim upon which relief can be granted.

Pursuant to S.D. Ohio Civ. R. 7.1(b)(2), Defendants request oral argument on this Motion because Plaintiffs' allegations of liability under the facts pled in this action are of importance to the public in that they pertain to the local community and ongoing activities on behalf of the United States Government.  A Memorandum in Support is attached hereto.

Respectfully submitted,

*/s/ Richard D. Schuster*
Richard D. Schuster (0022813)
     Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com

*Counsel for Defendants*

## TABLE OF CONTENTS / SUMMARY OF ARGUMENT

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................... 2

      A.    Operations at the Portsmouth Site ..................................................... 2

      B.    Overview of Plaintiffs' Complaint ...................................................... 5

III.  LAW AND ARGUMENT ............................................................................... 6

      A.    Standard of Review ............................................................................ 6

      B.    Plaintiffs' State Law Claims Are Preempted by the Price-Anderson Act. ............ 7

            1.    Overview of the Price-Anderson Act ........................................ 7

Summary

The Price-Anderson Act caps the potential liability for a nuclear incident, requires the nuclear industry to purchase public liability insurance, and provides for indemnification by the federal government if damages resulting from a nuclear incident exceed the insurance coverage. As amended, it also creates a federal cause of action, known as a "public liability action," as the exclusive claim for alleging a nuclear incident. Nuclear incident is defined by the Act as "any occurrence … within the United States causing … bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]"  42 U.S.C. § 2014(q).

Primary Authorities

Pub. L. 85-256, 71 Stat. 576
Pub. L. No. 100-408, 102 Stat. 1066 (1988)
*Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)
42 U.S.C. § 2014

            2.    Despite Their Efforts to Avoid the Price-Anderson Act, the Facts Plaintiffs Have Alleged Constitute An Asserted Nuclear Incident Under the Act..... 9

Summary

Plaintiffs allege a nuclear incident under the plain language of the Price-Anderson Act. Specifically, the Plaintiffs allege that the Portsmouth Site has expelled source, special nuclear, and byproduct materials—specifically uranium, neptunium, and plutonium—into the surrounding area, including onto Plaintiffs' own properties.  They also set forth allegations regarding the impact of the radioactive and toxic properties of these source, special nuclear, and byproduct materials that have allegedly been discharged from the Portsmouth Site.  And Plaintiffs further allege that these materials have caused property damage and the loss of use of property.  This Court has previously found that nearly identical allegations based on the release of radioactive substances from the Portsmouth Site to the surrounding vicinity present a nuclear incident under the Price-Anderson Act.

Primary Authorities

42 U.S.C. § 2014(q)
*Boggs v. Divested Atomic Corp*., S.D. Ohio Case No. 2:90cv840, Doc 270
*Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)
*Smith v. Carbide & Chems. Corp.*, No. 5:97-CV-3-M, 2009 U.S. Dist. LEXIS 86417 (W.D. Ky. Sept. 16, 2009)
*Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761 (E.D. Tenn. 2012)

3.     The Sixth Circuit and This Court Have Held That the Price-Anderson Act Preempts State Law Claims Alleging Nuclear Incidents. ......................... 12

Summary

Because Plaintiffs have clearly alleged a "nuclear incident" under the Price-Anderson Act, their State Law Claims are preempted.  The Sixth Circuit has expressly held that the Price-Anderson Act provides a federal cause of action and preempts state law claims based on an alleged nuclear incident.  This Court has previously held that the very same claims as Plaintiffs assert here arising from uranium enrichment activities at the very same Portsmouth Site are preempted.  The same result is mandated here.

Primary Authorities

*Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)
*Boggs v. Divested Atomic Corp.*, S.D. Ohio No. 2:90cv840, Doc. 270
*Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761 (E.D. Tenn. 2012)

4.     The Price-Anderson Act's Preemption of State Law Claims Has Been Confirmed by Courts Outside the Sixth Circuit....................................... 15

Summary

Beyond the Sixth Circuit, nearly every other federal circuit to consider the issue has held that (1) the Price-Anderson Act provides the exclusive means for plaintiffs to pursue claims for injuries arising out of an alleged nuclear incident, and (2) the Act preempts state law causes of action resulting from nuclear incidents.

Primary Authorities

*In re TMI Litigation Cases Consol. II*, 940 F.2d 832 (3d Cir. 1991)
*O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994)
*Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186 (5th Cir. 2011)
*In re Berg Litig.*, 293 F.3d 1127 (9th Cir. 2002)
*Corcoran v. New York Power Auth.*, 202 F.3d 530 (2d Cir. 1999)

C.     Plaintiffs Cannot Avoid the Applicability of the Price-Anderson Act. ................ 16

1.     Plaintiffs' Legal Conclusions Must be Rejected....................................... 16

Summary

Despite the fact that Plaintiffs' allegations fall squarely within the definition of a nuclear incident under the Price-Anderson Act, they contend that they have not alleged a nuclear incident

and that their claims do not fall within the scope of the Price-Anderson Act.  These contentions are nothing more than legal conclusions that the Court must disregard.  It is the substance of the allegations themselves—not Plaintiffs' characterization of them—that matters.

Primary Authorities

*Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007)
*Minger v. Green*, 239 F.3d 793 (6th Cir. 2001)

2.      Plaintiffs' Argument Regarding Defendants' Licenses and Indemnification Agreements Is Incorrect and Confuses the Relevant Inquiry. .................. 17

Summary

Plaintiffs' allegations regarding the purported lack of applicable licenses and indemnification agreements have no bearing on whether Plaintiffs have alleged a public liability action under the Price-Anderson Act as the term "public liability action" is not defined, in relevant part, by the Act with reference to whether a party has a license or indemnification agreement.  Moreover, Plaintiffs' suggestion that Defendants do not have the relevant licenses and indemnification agreements is simply wrong because as current and former operators and contractors at the Portsmouth Site, all Defendants are or were appropriately licensed or acting with government authorization and subject to indemnification coverage by the federal government as a matter of law. Lastly, Plaintiffs' allegations confuse the inquiry in any event as the question would not be whether Defendants have licenses or indemnification agreements covering the alleged release or disposal of radioactive materials on Plaintiffs' properties, but whether Defendants have engaged in activities on site subject to a license or other government authorization, or for which the government has extended indemnification coverage, that allegedly resulted in the "nuclear incident" off site.  To that end, Plaintiffs fail to allege that Defendants lack appropriate licenses or indemnification agreements for their on-site activities.

Primary Authorities

42 U.S.C. §§ 2014(q), (w), (hh), 2210(a), (d), 2297f(a), 2297h(3), 2297h-5(a), (f)
*Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273 (3d Cir. 2017)
*Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000)
*Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253 (S.D. Fla. 2014)
Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2926, §§ 1301(a), 1403(a)
10 C.F.R. § 76.1(a)
48 C.F.R. §§ 950.7003(a), 950.7006, 952.250-70

D.      Plaintiffs' Complaint Fails to State a Claim for a Public Liability Action. .......... 19

Summary

Even if Plaintiffs had brought their claims as a public liability action, Plaintiffs' claims cannot survive as a public liability action under the Price-Anderson Act because they failed to plead a breach of the applicable federal standard of care established by the United States Nuclear Regulatory Commission ("NRC").  The Sixth Circuit has held that NRC safety regulations conclusively establish the duty of care owed by defendants in a public liability action under the Price-Anderson Act.  This Court and others have applied federal regulations to establish the duty of care in public liability actions involving claims of property damage. Plaintiffs fail to allege

that any nuclear releases from the Portsmouth Site exceed the radiation dose limits established by the NRC. As such, Plaintiffs cannot state a claim under the Price-Anderson Act, and their Complaint must be dismissed.

Primary Authorities

*TNS, Inc. v. NLRB*, 296 F.3d 384 (6th Cir. 2002)
*Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761 (E.D. Tenn. 2012)
*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008)
*Roberts v. Florida Power & Light Co.*, 146 F.3d 1305 (11th Cir. 1998)
*Boggs v. Divested Atomic Corp.*, S.D. Ohio No. 2:90cv840, Doc. 270
*Smith v. Carbide & Chems. Corp.*, No. 5:97-CV-3-M, 2009 U.S. Dist. LEXIS 86417 (W.D. Ky. Sept. 16, 2009)

E.    Plaintiffs' Claims for Medical Monitoring and Declaratory Judgment Also Fail. 22

1.    Medical Monitoring Is Not an Independent Cause of Action. ................. 22

Summary

Plaintiffs' claim for medical monitoring is likewise preempted by the Price-Anderson Act, but also fails for the reason that medical monitoring does not exist as an independent cause of action under Ohio law.  Therefore, Plaintiffs' medical monitoring claim must be dismissed.

Primary Authorities

*Hirsch v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008)
*First Prop. Grp. v. Behr Dayton Thermal Prods., LLC*, No. 3:08cv00329, 2009 U.S. Dist. LEXIS 131400 (S.D. Ohio Apr. 22, 2009)
*Wilson v. Brush Wellman*, 103 Ohio St. 3d 538, 2004 Ohio 5847, 817 N.E.2d 59 (Ohio 2004)

2.    Declaratory Relief Is Improper in This Case. .......................................... 22

Summary

Plaintiffs' claim for declaratory judgment should be dismissed because this Court has dismissed claims for declaratory judgment where, as here, (1) the underlying substantive claims are subject to dismissal; and (2) the declaratory judgment claim is duplicative of Plaintiffs' other theories of liability.

Primary Authorities

*Superior Care Pharm., Inc. v. Med Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 U.S. Dist. LEXIS 13013 (S.D. Ohio Feb. 10, 2011)
*Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 U.S. Dist. LEXIS 45047 (S.D. Ohio Mar. 20, 2018)
*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925 (S.D. Ohio 2012)

IV.    CONCLUSION .............................................................................................................. 24

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Acuna v. Brown & Root, Inc.*,
200 F.3d 335, 340 (5th Cir. 2000) ................................................ 17

*Adkins v. Chevron Corp.*,
960 F. Supp. 2d 761, 768 (E.D. Tenn. 2012)........................................ passim

*Arrow v. FRB of St. Louis*,
358 F.3d 392, 394 (6th Cir. 2004) ...................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)...................................................... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2007)...................................................... 6

*Boggs v. Divested Atomic Corp.*,
No. 2:90-cv-840, 2008 U.S. Dist. LEXIS 127120, at *5-6 (S.D. Ohio July 18,
2008) ...................................................... 20

*Boggs v. Divested Atomic Corp.*,
S.D. Ohio Case No. 2:90-cv-840, Doc 270 at 1-2, 30 ............................ passim

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
No. 2:08-cv-186, 2009 U.S. Dist. LEXIS 27070, at *16 (S.D. Ohio Mar. 30, 2009)......... 6

*Cook v. Rockwell Intern. Corp.*,
790 F.3d 1088 (10th Cir. 2015) .................................. 16

*Corcoran v. New York Power Auth.*,
202 F.3d 530, 537 (2d Cir. 1999).................................. 16

*Cotromano v. United Techs. Corp.*,
7 F. Supp. 3d 1253, 1257 (S.D. Fla. 2014) .................................. 17

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
639 F.3d 186, 192 (5th Cir. 2011) .................................. 15

*Doe v. Univ. of Dayton*,
No. 3:17-cv-134, 2018 U.S. Dist. LEXIS 45047, at *28-29 (S.D. Ohio Mar. 20,
2018) .................................. 23

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
438 U.S. 59, 63 (1978).................................. 7

*Eidson v. Tenn. Dep't. of Children's Servs.*,
510 F.3d 631, 634 (6th Cir. 2007) .................................. 6, 16

*El Paso Nat'l Gas Co. v. Neztsosie*,
526 U.S. 473, 484, 19 S. Ct. 1430, 143 L. Ed. 2d 635 (1999).................................. 9

*Estate of Ware v. Hosp. of the Univ. of Pa.*,
871 F.3d 273, 283 (3d Cir. 2017).................................. 17

*First Prop. Grp. v. Behr Dayton Thermal Prods., LLC*,
    No. 3:08cv00329, 2009 U.S. Dist. LEXIS 131400, at *26 (S.D. Ohio Apr. 22,
    2009) ................................................................................................................ 22

*GTE Mobilnet v. Johnson*,
    111 F.3d 469, 475 (6th Cir. 1997) ....................................................................... 6

*Hirsch v. CSX Transp., Inc.*,
    No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at *5 (N.D. Ohio Oct. 22,
    2008) ................................................................................................................ 22

*In re Berg Litig.*,
    293 F.3d 1127, 1132 (9th Cir. 2002) ................................................................. 15

*In re Hanford Nuclear Reservation Litig.*,
    534 F.3d 986, 1003 (9th Cir. 2008) ................................................................... 19

*In re TMI Litigation Cases Consol. II*,
    940 F.2d 832, 854 (3rd Cir. 1991) .......................................................... 13, 15, 16

*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*,
    852 F. Supp. 2d, 925, 938 (S.D. Ohio 2012) ..................................................... 23

*Minger v. Green*,
    239 F.3d 793, 799-800 (6th Cir. 2001) .............................................................. 16

*Nieman v. NLO, Inc.*,
    108 F.3d 1546, 1553 (6th Cir. 1997) ........................................................... passim

*O'Conner v. Commonwealth Edison Co.*,
    13 F.3d 1090, 1095-97, 1099-1101 (7th Cir. 1994); S. Rep. No. 100-218, at 13
    (1987) .......................................................................................... 8, 13, 15

*Ranier v. Union Carbide Corp.*,
    402 F.3d 608, 611, 617 (6th Cir. 2005) .............................................................. 13

*Roberts v. Florida Power & Light Co.*,
    146 F.3d 1305, 1308 (11th Cir. 1998) ........................................................... 19, 21

*Smith v. Carbide & Chems. Corp.*,
    No. 5:97-CV-3-M, 2009 U.S. Dist. LEXIS 86417, at *5-7 (W.D. Ky. Sept. 16,
    2009) ........................................................................................................... 12, 20

*Superior Pharm., Inc. v. Med Shoppe Int'l, Inc.*,
    No. 2:10-cv-207, at *42 (S.D. Ohio Feb. 10, 2011) ........................................... 22

*Thomas v. Publishers Clearing House, Inc.*,
    29 F. App'x 319, 322 (6th Cir. 2002) ................................................................. 18

*TNS, Inc. v. NLRB*,
    296 F.3d 384, 399 (6th Cir. 2002) ................................................................. 19, 21

*Wilson v. Brush Wellman*,
    103 Ohio St. 3d 538, 2004 Ohio 5847, 817 N.E.2d 59, 63 (Ohio 2004) ............ 22

**Statutes**

28 U.S.C. § 2201 ................................................................................................ 22, 23

42 U.S.C. § 2012 ...................................................................................................... 7

42 U.S.C. § 2014 ............................................................................................... passim

42 U.S.C. § 2210 .................................................................................................... 18

42 U.S.C. § 2297 ............................................................................................... 17, 18

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 6, 22, 23

**Regulations**

10 C.F.R. § 110.23 .................................................................................................. 9

10 C.F.R. § 20.1201 .............................................................................................. 19

10 C.F.R. § 20.1301 .............................................................................................. 19

10 C.F.R. § 30.4 ...................................................................................................... 8

10 C.F.R. § 40.4 ...................................................................................................... 8

10 C.F.R. § 70.4 ...................................................................................................... 8

10 C.F.R. § 76.1 .................................................................................................... 17

40 C.F.R. § 61.92 .................................................................................................. 18

48 C.F.R. § 950.7003 ............................................................................................ 18

48 C.F.R. § 950.7006 ............................................................................................ 18

48 C.F.R. § 952.250.70 ......................................................................................... 18

**Other Authorities**

Atomic Energy Act of 1946, ch. 724, 60 Stat. 755 ................................................ 7

Atomic Energy Act of 1954, Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919 .................. 7

Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2926, §§ 1301(a), 1403(a) ............. 17

Price-Anderson Act, Pub. L. 85-256, 71 Stat. 576 ................................................ 7

Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066 (1988) ............ 8

<u>MEMORANDUM IN SUPPORT</u>

## I.     <u>PRELIMINARY STATEMENT</u>

This putative class action lawsuit seeks to circumvent both federal law governing liability claims related to certain nuclear materials and Sixth Circuit precedent. Plaintiffs purport to assert Ohio common-law claims based on the alleged releases of radioactive and toxic materials from a uranium enrichment site in Pike County, Ohio, owned by the United States Department of Energy ("DOE"). The federal Price-Anderson Act, however, exclusively governs such allegations and preempts all of Plaintiffs' state law claims. Indeed, the United States Court of Appeals for the Sixth Circuit has expressly held that "**the Price-Anderson Act preempts … state law claims**[,]" and that "**state law claims cannot stand as separate causes of action**." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (emphases added).

Moreover, this Court has held that the Price-Anderson Act preempts state law claims for property damage and state law standards of care arising from the alleged release of radioactive substances from uranium enrichment operations conducted **at the Portsmouth Site**. (*See Boggs v. Divested Atomic Corp.*, S.D. Ohio Case No. 2:90-cv-840, Doc 270 at 1-2, 30, attached hereto as Ex. 1.) The same result is warranted in this case—all of Plaintiffs' state law claims are preempted.

Plaintiffs' pleadings also fail to state a claim under the Price-Anderson Act. The Sixth Circuit and every circuit court to consider the issue has held that federal nuclear regulations establish the standard of care in Price-Anderson Act cases. Accordingly, to allege a claim under the Price-Anderson Act, Plaintiffs must allege exposure to radiation in excess of the standards established by the federal regulations. Nowhere in the 109 paragraphs of Plaintiffs' Complaint is there any allegation that the applicable federal radiation standards have been exceeded. Failing to do so, Plaintiffs' Complaint should be dismissed.

Plaintiffs' attempt to shoehorn claims for medical monitoring and declaratory judgment into this case also fails for additional reasons. Ohio law is clear that medical monitoring is a form of relief for an underlying tort, not a separate cause of action. Finally, a claim for declaratory judgment must be dismissed when, as here, the claim is merely duplicative of Plaintiffs' other claims, which are subject to dismissal. For these reasons, and as more fully set forth below, all of Plaintiffs' claims fail as a matter of law and should be dismissed.

## II. FACTUAL BACKGROUND

### A. Operations at the Portsmouth Site

The Portsmouth Gaseous Diffusion Plant (the "Plant"), which enriched uranium from 1954 to 2001, is located on a 3,777-acre federally-owned site in Pike County, Ohio (the "Portsmouth Site"). (Doc. 1, Compl. ¶ 1.) The Plant was one of the three large gaseous diffusion plants in the United States initially constructed to produce enriched uranium to support the nation's nuclear weapons program, and later, commercial nuclear reactors. In 2001, uranium enrichment operations were discontinued at the Plant, which was placed into cold standby and subsequently, cold shutdown. (*Id.*, ¶¶ 24-26.)

Environmental remediation at the Portsmouth Site, which began in 1989, continues today. (*Id.*, ¶ 35.) Plaintiffs allege that each of the Defendants was, at some point from 1993 to the present, responsible for at least one of the following activities at the Portsmouth Site: uranium enrichment operations, depleted uranium hexafluoride conversion, or environmental remediation. (*Id.*, ¶¶ 24-40.)

**Uranium Enrichment**

Specifically, in 1993, pursuant to the terms of the Energy Policy Act of 1992, a U.S. Government corporation known as the United States Enrichment Corporation ("USEC-Federal") leased the Plant's production facilities from DOE and conducted commercial uranium

enrichment operations until July 1998. In July 1998, USEC-Federal was privatized according to the terms of the USEC Privatization Act. Defendant United States Enrichment Corporation, a Delaware corporation that emerged from the privatization, continued to produce enriched uranium for commercial customers at the Plant until 2001, when it ceased enrichment. At that point, United States Enrichment Corporation was awarded a contract by DOE to continue to operate the Plant in cold standby, and subsequently in cold shutdown to prepare for decontamination and decommissioning. (*Id.*, ¶ 26.) United States Enrichment Corporation turned the Plant back to DOE on September 30, 2011. (*Id.*)

### Centrifuge Uranium Enrichment

In 2002, USEC Inc. (a Delaware corporation now known as Centrus Energy Corp., which was also created in connection with the July 1998 privatization of USEC-Federal),[1] leased from DOE centrifuge-related equipment and facilities at the Portsmouth Site, and from 2004 to 2016, built and then operated the American Centrifuge Demonstration Facility (commonly known as the "American Centrifuge Lead Cascade Facility") at the Portsmouth Site. (*Id.*, ¶¶ 31-32.) This facility was a closed test loop to demonstrate centrifuge enrichment using equipment derived from DOE technology and further developed and constructed by USEC Inc. (*Id.*, ¶ 32.) The American Centrifuge Lead Cascade Facility used very small quantities of uranium and did not enrich uranium commercially. From 2014 until 2016, USEC Inc., and its subsidiary, American Centrifuge Operating LLC ("ACO"), operated the American Centrifuge Lead Cascade Facility under a contract with UT-Battelle, a DOE Contractor. Thereafter, the American Centrifuge Lead

---

[1] For clarification, Defendant Centrus Energy Corp. (formerly known as USEC Inc.) owns Defendant United States Enrichment Corporation. For purposes of this Motion, except where references are made to "USEC Inc.," any reference to "USEC" is intended to refer to Defendant United States Enrichment Corporation.

Cascade Facility ceased to operate and the equipment was removed and shipped for off-site disposal.  All enrichment demonstration equipment had been removed by the end of 2017.[2]

### Depleted Uranium Hexafluoride Conversion

From 2002 to 2010, Defendant Uranium Disposition Services, LLC was contracted by DOE to design, build, and operate a depleted uranium hexafluoride conversion plant at the Portsmouth Site, which converted depleted uranium hexafluoride produced by the Plant to a more stable uranium oxide for reuse, storage, transportation, or disposition.  (*Id*., ¶¶ 27- 28.) Defendant BWXT Conversion Services, LLC entered into a contract with DOE to operate the depleted uranium hexafluoride conversion plant from 2010 to February 2017.  At that time, Defendant Mid-America Conversion Services, LLC was contracted to operate the depleted uranium hexafluoride conversion plant, which it continues to do today.

### Environmental Remediation

Defendant Bechtel Jacobs Company, LLC was contracted by DOE to provide environmental remediation services at the Portsmouth Site from 1997 to 2005.  (*Id.*, ¶ 36.)  From 2005 to 2010, Defendant LATA/Parallax Portsmouth, LLC was responsible for environmental remediation under a contract with DOE.  (*Id.*, ¶ 37.)  Defendant Fluor-BWXT Portsmouth, LLC began providing environmental remediation services under a contract with DOE in 2010, and it continues to do so today.  (*Id.*, ¶ 38.)

---

[2]     In January 2019, it was announced that a contract would be awarded to ACO to deploy a new demonstration in buildings where the American Centrifuge Lead Cascade Facility was located.  ACO signed a letter agreement with DOE in May 2019.  Preparatory work for construction is currently ongoing, but there are no operations involving nuclear materials at the facility currently.

### B.    Overview of Plaintiffs' Complaint

#### Property Damage Allegations

Plaintiffs allege that they live within two and four miles of the Portsmouth Site and claim that certain materials with radioactive and toxic properties, including uranium, neptunium, and plutonium, have been emitted into the air by the Portsmouth Site and deposited on properties around the Portsmouth Site, including their own.  (*Id.*, ¶¶ 3, 5, 11-13, 45-46, 50.)  While the Complaint contains allegations of speculative future injury due to exposure to certain materials with radioactive and toxic properties (*see, e.g.*, *id.*, ¶¶ 51-52, 60-65, 95-100), Plaintiffs expressly aver that this "is an action for property damage claims and not for personal injury."  (*Id.*, ¶ 10.)

#### Class Action Allegations

Plaintiffs bring this putative class action, seeking to represent (1) all property owners within a 7-mile radius of the Portsmouth Site; (2) all residents and former residents within a 7-mile radius of the Portsmouth Site; and (3) all current and former students of Zahn's Corner Middle School, located in Piketon, Ohio, from 1993 to present, along with their parents.  (*Id.*, ¶ 67.)

#### Plaintiffs' Claims

Plaintiffs assert six claims against Defendants in this action:  negligence/gross negligence (Count I), trespass (Count II), nuisance (Count III), ultra-hazardous/strict liability (Count IV) (collectively, Counts I-IV are referred to as the "State Law Claims"), medical monitoring (Count V), and declaratory judgment (Count VI).  (*Id.*, ¶¶ 84-109.)  Plaintiffs "seek damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including remediation, along with such

injunctive and declaratory relief as necessary to protect human health and the environment."

(*Id.*, ¶¶ 11-13.)

## III.    LAW AND ARGUMENT

### A.    Standard of Review

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In short, a plaintiff's pleadings must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555, n.3.  While this Court is obliged to accept as true all material factual allegations of the complaint, it is not required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations . . . ." *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Federal preemption is a question of law appropriate for a motion to dismiss. *GTE Mobilnet v. Johnson*, 111 F.3d 469, 475 (6th Cir. 1997) (citation omitted).  Thus, state law claims are regularly dismissed under Rule 12(b)(6) as preempted. *See, e.g.*, *Arrow v. FRB of St. Louis*, 358 F.3d 392, 394 (6th Cir. 2004) (affirming dismissal of complaint pursuant to Rule 12(b)(6) because state law claims were preempted by federal law); *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2009 U.S. Dist. LEXIS 27070, at *16 (S.D. Ohio Mar. 30, 2009) (Marbley, J.) (finding state law claims preempted by the Federal Aviation Administration Authorization Act and dismissing "as a matter of law" under Rule 12(b)(6)); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 768 (E.D. Tenn. 2012) (finding state law claims preempted by the Price-Anderson Act and dismissing under Rule 12(b)(6)).

**B.     Plaintiffs' State Law Claims Are Preempted by the Price-Anderson Act.**

1.     Overview of the Price-Anderson Act

Congress began regulating nuclear energy with the passage of the Atomic Energy Act of 1946, ch. 724, 60 Stat. 755, which "contemplated that the development of nuclear power would be a Government monopoly." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 63 (1978). Congress later concluded that the "national interest would be best served if the Government encouraged the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing." *Id.* This conclusion resulted in the passage of the Atomic Energy Act of 1954, Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919, which provided for "licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production under strict supervision by the Atomic Energy Commission." *Id.* Private utilities, however, "were reluctant to enter the field, because of the 'risk of potentially vast liability in the event of a nuclear accident.'" *Adkins*, 960 F. Supp. 2d at 766 (quoting *Duke Power Co.*, 438 U.S. at 64).

Therefore, in 1957, Congress passed the Price-Anderson Act, Pub. L. 85-256, 71 Stat. 576, which capped the potential liability for a nuclear incident, required the nuclear industry to purchase public liability insurance, and provided for indemnification by the federal government if damages resulting from a nuclear incident exceeded the insurance coverage. *See Duke Power Co.*, 438 U.S. at 64-65. "The Act had the dual purpose of [protecting] the public and … [encouraging] the development of the atomic energy industry." *Id.* at 64 (quoting 42 U.S.C. § 2012(i)) (alterations in original); *see also Nieman,* 108 F.3d at 1549 ("Congress enacted the Price-Anderson Act in 1957 as an amendment to the Atomic Energy Act … to encourage private sector investment in the development of nuclear power by limiting the liability of private owners and operators in the event of a nuclear incident." (internal quotation marks omitted) (citation

omitted)).  In this statute, Congress also addressed the subject of liability for certain private

contractors of the Atomic Energy Commission, the predecessor to the current DOE.  *See* 71 Stat.

577 (adding Section 170d to the Atomic Energy Act of 1954).

**Congress Creates an Exclusive Federal Cause of Action for "Public Liability Actions"**

The Price-Anderson Act subsequently has been reauthorized and amended on multiple

occasions.  For purposes of the present motion, the most significant of these amendments was the

enactment of the Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066

(1988).  In the aftermath of the Three Mile Island accident, which resulted in a multitude of

litigation, Congress changed the structure of the Price-Anderson Act by creating a federal cause

of action, known as a "public liability action," as the exclusive claim for alleging a nuclear

incident.  *Nieman*, 108 F.3d at 1549 (citing 42 U.S.C. § 2014); *see also O'Conner v.*

*Commonwealth Edison Co.*, 13 F.3d 1090, 1095-97, 1099-1101 (7th Cir. 1994); S. Rep. No. 100-

218, at 13 (1987), *reprinted in* 1988 U.S.C.C.A.N. 1476, 1488.

Under the Price-Anderson Act, as amended, a "public liability action" is "any suit

asserting public liability."  42 U.S.C. § 2014(hh).  A "public liability" encompasses "any legal

liability arising out of or resulting from a nuclear incident."  42 U.S.C. § 2014(w).  And a nuclear

incident is defined as:

> [A]ny occurrence … within the United States causing … bodily
> injury, sickness, disease, or death, or loss of or damage to property,
> or loss of use of property, arising out of or resulting from the
> radioactive, toxic, explosive, or other hazardous properties of
> source, special nuclear, or byproduct material…[3]

---

[3]     Source material includes uranium, thorium or any other material determined by the United States Nuclear
Regulatory Commission ("NRC") to be source material.  42 U.S.C § 2014(z).  Special nuclear material includes
plutonium, uranium enriched in the isotope 233 or 235, any other material the NRC determines to be special nuclear
material, and any material artificially enriched with one or more of the foregoing.  42 U.S.C § 2014(aa).  Byproduct
material includes radioactive material yielded in or made radioactive through the production or utilization of special
nuclear material and wastes produced by the extraction or concentration of uranium or thorium from ore.  42 U.S.C.
§ 2014(e); *see also* 10 C.F.R. §§ 30.4 (defining "byproduct material"), 40.4 (defining "source material"), 70.4
(defining "special nuclear material").  Isotopes of neptunium are referred to in federal regulations as byproduct

42 U.S.C. § 2014(q).  A public liability action "shall be deemed to be an action under Section 2210 of this title."  42 U.S.C. § 2014(hh); *see also El Paso Nat'l Gas Co. v. Neztsosie*, 526 U.S. 473, 484, 19 S. Ct. 1430, 143 L. Ed. 2d 635 (1999) (finding that section 2014(hh) "resembles what we have spoken of as complete pre-emption doctrine, under which the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim…'") (citations omitted).  In a public liability action, the "substantive rules for decision … shall be derived from" state law, "unless such law is inconsistent" with federal law.  42 U.S.C. § 2014(hh).

      2.     <u>Despite Their Efforts to Avoid the Price-Anderson Act, the Facts Plaintiffs Have Alleged Constitute An Asserted Nuclear Incident Under the Act.</u>

**Alleged Release of Source, Special Nuclear, and Byproduct Materials**

Plaintiffs allege a nuclear incident under the plain language of the Price-Anderson Act. *See* 42 U.S.C. § 2014(q).  They allege that the Portsmouth Site has expelled source, special nuclear, and byproduct materials—specifically uranium, neptunium, and plutonium—into the surrounding area, including onto their own properties:

- "[T]he Portsmouth Site expelled air laden with radioactive material and other metals. Winds have carried the radioactive materials and other metals throughout the area in such concentrations that radioactive materials and metals can be found deposited in soils and buildings in and around Piketon, Ohio."  (Doc. 1, Compl. ¶¶ 2-3.)

- "Plaintiffs' properties are within the zone impacted by radioactive materials, including alpha emitting radionuclides.  Samples taken on and around Plaintiffs' properties and at other locations near the Portsmouth Site confirm an elevated presence of radioactive particles.  Environmental evidence gathered thus far indicates that property and persons near the Portsmouth Site have been and continue to be exposed to toxic and radioactive substances and are negatively impacted by toxic and radioactive releases from the Portsmouth Site."  (*Id.*, ¶¶ 41-42.)

---

material.  *See* 10 C.F.R. § 110.23 (referring to neptunium-235 and neptunium-237); *see also* 10 C.F.R. Part 110, Appendix L (illustrative list of byproduct materials).

- "Zahn's Corner Middle School in Piketon was suddenly closed due to health concerns because enriched uranium was detected inside the building.  Neptunium-237 was also detected by an air monitor next to the school.  The school is approximately two miles from the Portsmouth Site."  (*Id.*, ¶ 48.)

- "Emissions from the Portsmouth Site account for the enriched contents of Uranium, Neptunium, and Plutonium encountered in the environmental samples from the Piketon area."  (*Id.*, ¶ 50.)

**Radioactive and Toxic Properties of Materials**

Plaintiffs also set forth allegations regarding the impact of the radioactive and toxic

properties of these source, special nuclear, and byproduct materials that have allegedly been

discharged from the Portsmouth Site:

- "Exposure to this radioactive and toxic mixture in the environment through human pathways can cause grave bodily injury and has created a need for a mitigation/abatement program to protect the public from further risk of being harmed by Defendants' tortious contamination of their properties."  (*Id.*, ¶ 51.)

- "Plaintiffs allege that discharges of highly toxic and carcinogenic alpha emitting radionuclides from the Portsmouth Site into the surrounding area have created an imminent and substantial danger to public health."  (*Id.*, ¶ 52.)

- "Ounce for ounce, radioactive isotopes are considered the most toxic materials known to man."  (*Id.*, ¶ 55.)

- "The injuries resulting from exposure to ionizing radiation can also be separated into two categories:  somatic injuries and genetic injuries.  Somatic injuries are damages to the individual exposed.… Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells."  (*Id.*, ¶¶ 60-61.)

- "The toxic and carcinogenic effects of exposure to radioactive materials have been a matter of scientific knowledge since the early 20th Century."  (*Id.*, ¶ 65.)

**Alleged Property Damage and Loss of Use of Property**

Plaintiffs further allege that these materials have caused property damage and the loss of

use of property:

- "Plaintiffs Ursula McGlone and Jason McGlone … live approximately two miles from the Portsmouth Site on property they own.  Scientific testing shows their property to be

10

impacted with radioactive and toxic materials.  They seek damages for loss of use and enjoyment of property … and property damage…."  (*Id.*, ¶ 11.)

- "Julia Dunham … lives approximately four miles from the Portsmouth Site on property she owns.  Julia Dunham's property is located within the zone of impact.  She seeks damages for loss of use and enjoyment of property … and property damage…." (*Id.*, ¶ 12.)

- "K.D. and C.D. live approximately four miles from the Portsmouth Site.  They lie within the zone of impact.  They seek damages for loss of use and enjoyment of property … and property damage…." (*Id.*, ¶ 13.)

- "Radioactive material contamination in and around Plaintiffs' Properties … renders them unfit for normal use and enjoyment…." (*Id.*, ¶ 53.)

- "Plaintiffs have suffered … injury to their real and personal property…. Plaintiffs and Class Members have suffered an array of damages all stemming from the common trunk of facts and issues related to Defendants' emissions."  (*Id.*, ¶ 71.)

In short, Plaintiffs have alleged loss of or damage to property and loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.[4]

### The Southern District of Ohio Previously Concluded that Claims for Alleged Releases from the Portsmouth Site Are Subject to the Price-Anderson Act.

In fact, this Court has already found that nearly identical allegations present an allegation of a nuclear incident under the Price-Anderson Act.  (Ex. 1, *Boggs*, S.D. Ohio Case No. 2:90-cv-840, Doc 270 at 1-2, 30 (Price-Anderson Act applies to preempt state law claims for property damage and state law standards of care based on the release of radioactive substances from the **Portsmouth Site** to the surrounding vicinity).)  The *Boggs* decision is in accord with other Sixth Circuit case law.  *See Nieman,* 108 F.3d at 1547, 1549-50 (asserting a nuclear incident under the Price-Anderson Act where plaintiff alleged "that the discharge of uranium from a nuclear

---

[4]    To the extent Plaintiffs allege any bodily injury, sickness, or disease from the alleged releases, such allegations are encompassed by the definition of "nuclear incident", *see* 42 U.S.C. § 2014(q), and thus are subject to the Price-Anderson Act.

processing facility in Fernald, Ohio, has damaged and continues to damage his property"); *Smith v. Carbide & Chems. Corp.*, No. 5:97-CV-3-M, 2009 U.S. Dist. LEXIS 86417, at *5-7 (W.D. Ky. Sept. 16, 2009) (property owners' and residents' action arose under the Price-Anderson Act when they sought damages for the soil and groundwater contamination caused by the Paducah Gaseous Diffusion Plant); *Adkins,* 960 F. Supp.2d at 763, 768 (holding that the Price-Anderson Act preempted the plaintiffs' state law claims for property damage and personal injury "which arise from allegations of releases of radioactive, hazardous and toxic substances from a nuclear fuel processing facility … into the surrounding environment").  In light of this precedent, there can be no doubt that this case alleges a nuclear incident—a claim that can be brought only as a public liability action under the Price-Anderson Act.

> 3.  <u>The Sixth Circuit and This Court Have Held That the Price-Anderson Act Preempts State Law Claims Alleging Nuclear Incidents.</u>

Because Plaintiffs have clearly alleged a "nuclear incident" under the Price-Anderson Act, their State Law Claims are preempted.  Indeed, the Sixth Circuit has expressly held that the Price-Anderson Act provides an exclusive federal cause of action and preempts state law claims based on an alleged nuclear incident.  *Nieman,* 108 F.3d at 1553.  In *Nieman*, the plaintiff alleged that the discharge of uranium from a nuclear facility in Fernald, Ohio "has damaged and continues to damage his property" and brought claims under the Price-Anderson Act, as well as state law claims.  *Id.* at 1547.  The district court granted defendants' motion to dismiss the action on the basis that it was time-barred.  *Id.* at 1548.  On appeal, the Sixth Circuit considered whether the Price-Anderson Act preempted plaintiff's only viable state law claim (for continuing trespass) and ultimately held that that it did: "we hold that the Price-Anderson Act preempts Nieman's state law claims; **the state law claims cannot stand as separate causes of action. Nieman can sue under the Price-Anderson Act, as amended, or not at all**."  *Id.* at 1553

(emphasis added).  In reaching this decision, the court concurred with decisions of the Seventh and Third Circuits, which concluded that the "Price-Anderson Act, as amended in 1988, preempts state law claims." *Id.* at 1552-53 (citing *O'Conner*, 13 F.3d at 1099-1100 and *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 854 (3rd Cir. 1991)); *see also Ranier v. Union Carbide Corp.*, 402 F.3d 608, 611, 617 (6th Cir. 2005) (finding that the district court had properly dismissed state law claims arising from plaintiffs' exposure to radioactive substances from a uranium enrichment plant in Paducah, Kentucky because "[a]s the district court noted, this court has interpreted the Price-Anderson Act as preempting otherwise applicable state-law causes of action.").

In fact, this Court has previously held that the very same claims arising from uranium enrichment activities at the very same Portsmouth Site are preempted.  In *Boggs*, plaintiffs alleged that the defendants, the owners/operators of the Portsmouth Site, had "engaged in a continuous course of conduct whereby they … ha[d] permitted ongoing and continuous discharges of radioactive … substances."  (Ex.1, *Boggs*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270 at 2.)  They "set forth four substantive claims for relief under the common law of Ohio, to wit: negligence; absolute or strict liability, predicated upon engaging in abnormally dangerous or ultrahazardous activities; private nuisance; and trespass."  (*Id.*)  And they sought to recover "compensatory damages for the diminution of the value of their real property, the loss of the enjoyment of that property and emotional distress in the form of increased fear of the risk of contracting cancer," as well as "an order from the Court, requiring the Defendants to pay for medical monitoring."  (*Id.*)  Notably, like Plaintiffs here, the plaintiffs in *Boggs* did "not seek to recover damages for personal injuries suffered as a result of the Defendants' operation of the Plant."  (*Id.*)  In other words, *Boggs* involved the same facility, the same allegations of nuclear

releases, and the same claims. (*Compare id.*, *with* Doc. 1, ¶¶ 10-13, 84-93.)[5] Ultimately, this Court in *Boggs* held that the plaintiffs' state law claims based on alleged releases of radioactive materials were preempted by the Price-Anderson Act. (*Id.* at 30-32.) Identical factual allegations and identical claims mandate an identical result in this case—all of Plaintiffs' State Law Claims are preempted by the Price-Anderson Act.

Boggs is no outlier—other district courts have applied the *Nieman* holding in the same way. For example, *Adkins* was a putative class action lawsuit for property damage and personal injury brought by plaintiffs who lived and worked in close proximity to a nuclear fuel processing facility that allegedly released radioactive and toxic substances. 960 F. Supp. 2d at 763, 765. The plaintiffs asserted a public liability claim under the Price-Anderson Act, as well as various state law claims, including negligence, strict liability, nuisance, and trespass. *Id.* at 766. Defendants moved to dismiss the action and argued that plaintiffs' state law claims were preempted by the Price-Anderson Act. *Id.* at 763. The court agreed with the defendants, noting that the Sixth Circuit had "squarely addressed the question" of Price-Anderson Act preemption in *Nieman*. *Id.* at 767. It thus dismissed the plaintiffs' state law claims, stating:

> **[T]his court cannot ignore the clear language of the Sixth Circuit in *Nieman* that 'the state law causes of action cannot stand as separate causes of action,'** *Nieman*, 108 F.3d at 1553, **and the state law claims must be dismissed**.... **This Court, as a district court sitting in the Sixth Circuit, is bound to apply Sixth Circuit precedent**.

*Id.* at 768 (emphasis added).

---

[5] The *Boggs* litigation was commenced in 1990, before any of the Defendants in this case began operations at the Portsmouth Site and concluded in 2011, after Defendants Uranium Disposition Services, LLC, Bechtel Jacobs Company, LLC, and LATA/Parallax Portsmouth LLC no longer had any presence at the Portsmouth Site. *See generally Boggs*, S.D. Ohio Case No. 2:90-cv-840; (Doc. 1, Compl. ¶¶ 24-40). In their Complaint, the Plaintiffs make no effort to distinguish the alleged radioactive emissions and discharges in the *Boggs* case from their allegations in this case.

In sum, each of the cases discussed above are materially indistinguishable from this action. They all involve alleged (1) releases of radioactive materials from nearby nuclear facilities—in the case of *Boggs*, **precisely the same facility**; (2) property damage; and (3) state law claims for negligence, trespass, nuisance, or strict liability. In each of these cases, the court properly held that the plaintiffs' state law claims were preempted by the Price-Anderson Act. This Court is bound to do so as well. *See Nieman*, 108 F.3d at 1553.

        4.    <u>The Price-Anderson Act's Preemption of State Law Claims Has Been Confirmed by Courts Outside the Sixth Circuit.</u>

Beyond the Sixth Circuit, nearly every other federal circuit to consider the issue has held that (1) the Price-Anderson Act provides the exclusive means for plaintiffs to pursue claims for injuries arising out of an alleged nuclear incident, and (2) the Act preempts state law causes of action resulting from nuclear incidents. *See, e.g.*, *TMI Litigation Cases*, 940 F.2d at 854 ("[T]he consequence of a determination that a particular plaintiff has failed to state a public liability claim potentially compensable under the Price-Anderson Act is that he has no such claim at all. After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it is *not compensable at all*." (emphasis in original)); *O'Conner*, 13 F.3d at 1100, 1105 ("[A] new federal cause of action supplants the prior state cause of action … [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011) ("[A] plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the [Price-Anderson Act], 42 U.S.C. § 2014(q), 'can sue under the [Price-Anderson Act] or not at all.'" (quoting *Nieman*, 108 F.3d at 1553)); *In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (the Price-Anderson Act provides the "exclusive means for pursuing claims" asserting a nuclear incident); *Corcoran v.*

*New York Power Auth.*, 202 F.3d 530, 537 (2d Cir. 1999) (the Price-Anderson Act "creat[es] an

<u>exclusive</u> federal cause of action for radiation injury" (emphasis in original)).  Put simply,

Plaintiffs' State Law Claims are preempted.  They "can sue under the Price-Anderson Act, as

amended, or not at all."  *Nieman*, 108 F.3d at 1553.

### C. Plaintiffs Cannot Avoid the Applicability of the Price-Anderson Act.

#### 1. Plaintiffs' Legal Conclusions Must be Rejected.

Despite the fact that Plaintiffs' allegations fall squarely within the definition of a nuclear

incident under the Price-Anderson Act (*see supra* § III.B.2), they baldly contend that "the

ongoing and continuous releases that resulted in the contamination and that form the basis of this

suit are not 'nuclear incidents' as that term is defined in the Price-Anderson Act[]," and that their

claims "do not fall within the scope of the Price-Anderson Act."  (Doc. 1, Compl. ¶¶ 8, 9.)

These are nothing more than legal conclusions that the Court must disregard.  *See Eidson*, 510

F.3d at 634 (6th Cir. 2007).  Moreover, it is the substance of the allegations themselves—not

Plaintiffs' characterization of them—that matters.[6]  *See Minger v. Green*, 239 F.3d 793, 799-800

(6th Cir. 2001) (holding that courts should examine the substance of the complaint and not mere

labels when ruling on a motion to dismiss); *see also TMI Litigation Cases*, 940 F.2d at 855 ("At

the threshold of every action asserting liability growing out of a nuclear incident … there is a

federal definitional matter to be resolved:  Is this a public liability action?  If the answer to that

question is 'yes,' the provisions of the Price-Anderson Act apply....").

---

[6]    Plaintiffs include in their Complaint a citation to *Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088 (10th Cir. 2015), in conjunction with their legal conclusion that they have not alleged a nuclear incident under the Price-Anderson Act.  (Doc.1, ¶ 9 n.1.)  *Cook* is contrary to Sixth Circuit precedent, is contrary to the text and purpose of the Price-Anderson Act, and, in any event, involves unique facts that render it inapplicable to the case at bar.

2. <u>Plaintiffs' Argument Regarding Defendants' Licenses and Indemnification Agreements Is Incorrect and Confuses the Relevant Inquiry.</u>

Plaintiffs' allegations regarding the purported lack of applicable licenses and indemnification agreements have no bearing on whether Plaintiffs' alleged facts constitute a claim that can be pursued only as a public liability action under the Price-Anderson Act. Indeed, the term "public liability action" is not defined, in relevant part, by the Price-Anderson Act with reference to whether a party has a license or indemnification agreement. *See* 42 U.S.C. § 2014(q), (w), (hh).

A number of federal courts have found that licenses and indemnification agreements are irrelevant to the Price-Anderson Act's applicability. *See, e.g., Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 283 (3d Cir. 2017) ("We are unpersuaded that an indemnification agreement is necessary to trigger the Act's applicability."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (applying the Price-Anderson Act because incident arose out of "[u]ranium extraction and processing[,]" which "are part of the nuclear weapons and power industries"); *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1257 (S.D. Fla. 2014) (holding that neither a license nor indemnification agreement is required to invoke the Price-Anderson Act).

Moreover, Plaintiffs' suggestion that Defendants do not have the relevant licenses and indemnification agreements (Doc. 1, Compl. ¶ 8) is simply wrong. Defendant USEC was established by federal legislation as a government corporation to assume uranium enrichment responsibilities from DOE and lease the necessary facilities from DOE to do so. Energy Policy Act of 1992, Pub. L. No. 102-486, 106 Stat. 2926, §§ 1301(a), 1403(a); 42 U.S.C. §§ 2297h(3), 2297h-5(a). And the NRC enacted regulations to certify operations at the Portsmouth Site. 42 U.S.C. § 2297f(a); 10 C.F.R. § 76.1(a). As current and former operators and contractors at the

17

Portsmouth Site, all Defendants are or were appropriately licensed or acting with government authorization and subject to indemnification coverage by the federal government as a matter of law. *See* 42 U.S.C. § 2210(a); 42 U.S.C. § 2297h-5(f); 42 U.S.C. § 2210(d)(1)(A) ("[T]he Secretary [of Energy] shall, until December 21, 2025, enter into agreements of indemnification under this subsection with any person who may conduct activities under a contract with the Department of Energy that involve the risk of public liability…."); 48 C.F.R. §§ 950.7003(a), 950.7006(a), 952.250-70. Indeed, 48 C.F.R. § 952.250.70 sets forth the precise language of the "Nuclear Hazards Indemnity Agreement" that "shall be" incorporated into contracts between the Government and entities like Defendants. 48 C.F.R. §§ 950.7006(a), 952.250-70. To the extent there could be any doubt on this point (there cannot), Defendants have attached excerpts of their relevant contracts demonstrating incorporation of the Nuclear Hazards Indemnity Agreement.[7]

Lastly, Plaintiffs' allegations confuse the inquiry in any event. Plaintiffs allege that "Defendants have never received a license to dispose of radioactive materials **on Plaintiffs' properties**" and that "Plaintiffs have been unable to identify any indemnification agreement between any of the Defendants and the United States government … **with respect to the complained of activities**." (Doc. 1, ¶ 8 (emphasis added).) As an initial matter, federal regulations do not prohibit offsite emissions of radionuclides entirely, but merely limit them. *See, e.g.*, 40 C.F.R. § 61.92. And, in any event, the question would not be whether Defendants have licenses or indemnification agreements covering the alleged release or disposal of

---

[7]     Many of these contracts are available online or at public reading rooms maintained by DOE. Nevertheless, Defendants have attached relevant excerpts of their contracts as exhibits for ease of reference. Excerpts of Centrus Energy Corp.'s and United States Enrichment Corporation's contracts are attached as Ex. 2; excerpts of LATA/Parallax Portsmouth LLC's contract are attached as Ex. 3; excerpts of BWXT Conversion Services, LLC's contract are attached as Ex. 4; excerpts of Fluor-BWXT Portsmouth, LLC's contract are attached as Ex. 5; excerpts of Mid-America Conversion Services' contract are attached as Ex. 6; excepts of Bechtel Jacobs Company, LLC's contract are attached as Ex. 7; and excerpts of Uranium Disposition Services, LLC's contract are attached as Ex. 8. The Court is permitted to consider these exhibits in ruling on Defendants' motion to dismiss. *See Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (where the plaintiff fails to attach a "pertinent document" to the complaint, the "defendant may introduce the exhibit as part of his motion attacking the pleading").

radioactive materials on Plaintiffs' properties, *i.e.*, the complained-of conduct itself.  Rather, the inquiry, in the event it was a relevant inquiry, would be whether Defendants have engaged in activities performed on site subject to a license or other government authorization, or for which the government has extended indemnification coverage, that allegedly resulted in the "nuclear incident" off site.  To that end, Plaintiffs fail to allege—because they cannot—that Defendants lack appropriate licenses or indemnification agreements for their on-site activities.   Plaintiffs cannot escape the applicability of the Price-Anderson Act to their claims.

> **D.** **Plaintiffs' Complaint Fails to State a Claim for a Public Liability Action.**

Even if Plaintiffs had brought their claims as a public liability action, Plaintiffs' claims cannot survive as a public liability action under the Price-Anderson Act because they failed to plead a breach of the applicable federal standard of care established by the NRC.  "The Sixth Circuit has joined with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by defendants in a public liability action under the Price-Anderson Act."  *TNS, Inc. v. NLRB*, 296 F.3d 384, 399 (6th Cir. 2002).  These NRC regulations establish permissible dose limits.  10 C.F.R. § 20.1301, § 20.1201; *see also Adkins*, 960 F. Supp. 2d at 769 ("So far as this Court can tell, every circuit court of appeals to address the question has held that the plaintiff must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a public liability action under the Price-Anderson Act."); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008) ("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits."); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) ("[W]e join those courts in holding that federal safety regulations [setting forth maximum permissible amounts of radiation] conclusively establish the duty of care owed in a public liability action.").

Indeed, despite Plaintiffs' suggestion to the contrary (*see* Doc. 1, ¶ 10), this Court and others have applied federal regulations to establish the duty of care in public liability actions involving claims of property damage.  For instance, in *Boggs*, where plaintiffs brought an action to recover damage to their properties allegedly caused by radioactive emissions from the Portsmouth Site, the Court found that the federal regulations setting dose limits for nuclear materials provided the exclusive standard of care, and "to allow a state law standard to apply would be inconsistent with federal law."  (Ex. 1, *Boggs*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270 at 1-2, 30-37.)  After finding that the plaintiffs had failed to assert evidence that the alleged radioactive releases from the Portsmouth Site "exceed[ed] the pertinent federal regulations[,]" the Court granted summary judgment in favor of the defendants on the plaintiffs' claims predicated on the release of radioactive materials.  (*Id.* at 39-41); *see also Boggs v. Divested Atomic Corp.*, No. 2:90-cv-840, 2008 U.S. Dist. LEXIS 127120, at \*5-6 (S.D. Ohio July 18, 2008) ("[T]his Court declines to alter its conclusion that Plaintiffs' common law claims were preempted by the PAA, so that the duty of care by which the liability of the Defendants would be assessed was supplied by federal regulations."); *Carbide & Chems. Corp.*, 2009 U.S. Dist. LEXIS 86417, at \*5, 11 (finding that "federal regulatory standards preempt state statutory or common-law standards" in an action seeking damages for loss of use and enjoyment of property and diminution of market value due to contamination from the operations of the Paducah Gaseous Diffusion Plant); *Adkins*, 960 F. Supp. 2d at 763, 769 (in an action alleging property damage arising from allegations of release of radioactive and toxic substances from a nuclear fuel processing facility, plaintiffs "must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a public liability action under the Price-Anderson Act.").

**No Allegations that NRC Radiation Dose Limits Were Exceeded**

In this case, Plaintiffs fail to even allege that any nuclear releases from the Portsmouth Site exceed the radiation dose limits established by the NRC.[8]  They allege no more than the mere presence of and exposure to unspecified levels of materials with radioactive and toxic properties.  (*See, e.g.*, Doc. 1, ¶ 4 ("enriched uranium was **detected** inside the building" (emphasis added)); *id.*, ¶ 41 ("elevated **presence** of radioactive particles" (emphasis added)); *id.*, ¶ 42 ("**exposed** to toxic and radioactive substances" (emphasis added));  *id.*, ¶ 43 ("Tests reveal the **presence** of these radioactive and toxic materials in the residences[]" (emphasis added)); *id.*, ¶ 50 ("Emissions from the Portsmouth Site account for the enriched contents of Uranium, Neptunium and Plutonium **encountered** in environmental samples from the Piketon area." (emphasis added)).)  Such allegations are insufficient to state a claim for the only possible legal cause of action based upon release of radiation from an NRC-licensed or DOE facility—that is, a public liability action under the Price-Anderson Act.  *See Adkins*, 960 F. Supp. 2d at 769 ("[I]n order to prevail on their public liability claim, plaintiffs must plead and prove a breach of the federal numerical dose limits.  Plaintiffs cannot do so and an essential element of their claim is missing.  As a result, Count 1 must also be dismissed."); *Roberts*, 146 F.3d at 1308 (affirming dismissal of a public liability action for failure to state a claim when plaintiffs "failed to allege that FBP breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation").  Because Plaintiffs in this case have failed to plead an exceedance of the federal dose limits, they cannot state a claim under the Price-Anderson Act, and their Complaint must be dismissed.

---

[8]      Plaintiffs' vague allegation that Defendants "could have prevented or mitigated the offsite impact with … compliance with applicable regulations" (Doc. 1, Compl. ¶ 51) does not come close to pleading exceedance of the radiation dose limits established by the NRC, which is required in order to state a claim for a public liability action under the Price-Anderson Act.  *TNS, Inc.*, 296 F.3d at 399; *Adkins*, 960 F. Supp. 2d at 769.

**E.    Plaintiffs' Claims for Medical Monitoring and Declaratory Judgment Also Fail.**

   1.    <u>Medical Monitoring Is Not an Independent Cause of Action.</u>

Plaintiffs' claim for medical monitoring (Count V) is likewise preempted by the Price-Anderson Act.  (*See* Ex. 1, *Boggs*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270 at 55 & n.50 (dismissing request for medical monitoring on basis of Price-Anderson Act preemption).)  However, it fails for an additional reason.  "Medical monitoring does not exist . . . as an independent cause of action under Ohio law."  *Hirsch v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at *5 (N.D. Ohio Oct. 22, 2008); *First Prop. Grp. v. Behr Dayton Thermal Prods., LLC*, No. 3:08cv00329, 2009 U.S. Dist. LEXIS 131400, at *26 (S.D. Ohio Apr. 22, 2009) ("Defendants contend that Plaintiffs' Count VI (Medical Monitoring) must be dismissed under Rule 12(b)(6) because Ohio law does not recognize an independent cause of action for 'medical monitoring.'  This contention is well taken[.]"); *accord Wilson v. Brush Wellman*, 103 Ohio St. 3d 538, 2004 Ohio 5847, 817 N.E.2d 59, 63 (Ohio 2004).  While "Ohio law recognizes medical monitoring as a form of damages for an underlying tort[,]" *Hirsch*, 2008 U.S. Dist. LEXIS 124211, at *5 (citing *Wilson*, 817 N.E.2d at 63), Plaintiffs' underlying tort claims are all preempted by the Price-Anderson Act.  (*See supra* § III.B.3.)  Therefore, Count V must be dismissed on this basis as well.

   2.    <u>Declaratory Relief Is Improper in This Case.</u>

Plaintiffs' claim for declaratory judgment pursuant to 28 U.S.C. § 2201 (Count VI) is also improper and should be dismissed for at least two reasons.  First, this Court has dismissed claims for declaratory judgment where, as here, the plaintiffs' underlying substantive claims are subject to dismissal.  *See, e.g.*, *Superior Pharm., Inc. v. Med Shoppe Int'l, Inc.*, No. 2:10-cv-207, at *42 (S.D. Ohio Feb. 10, 2011) ("Now that the court has determined that the claims of fraud

and breach of contract … will be dismissed under Rule 12(b)(6), declaratory judgment would not settle the controversy or serve a useful purpose in clarifying the legal relations at issue."); *Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 U.S. Dist. LEXIS 45047, at *28-29 (S.D. Ohio Mar. 20, 2018) ("Because all of the Plaintiff's substantive claims are subject to dismissal … Doe's claim for declaratory judgment will be dismissed.").

Second, Plaintiffs' declaratory judgment claim does nothing more than duplicate their other theories of liability. (*See* Doc. 1, ¶ 108 ("The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiffs and the Class Members and Defendants."); *id.*, ¶ 109 ("Plaintiffs … seek declaratory judgment clarifying the rights and obligations of the parties to each other.").) Moreover, they asserted this claim for declaratory judgment (1) alongside several alternate theories of liability (*id.*, ¶¶ 84-93); (2) in addition to their prayer for damages (*id.*, pp. 24-25); and (3) after the alleged injury-in-fact (*i.e.*, contamination of their properties) already occurred. A district court has discretion to determine whether it entertains such a claim for declaratory relief. 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party seeking such declaration…" (emphasis added)). This Court has dismissed declaratory judgment claims that are merely duplicative of the plaintiff's other theories of liability. *See Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d, 925, 938 (S.D. Ohio 2012) (dismissing claim for declaratory judgment as "duplicative," and explaining that a declaratory judgment "would not settle the entire controversy" because "[p]laintiffs would presumably still pursue their other causes of action, seeking monetary damages"). Plaintiffs' declaratory judgment claim should be dismissed.

IV.    **CONCLUSION**

Plaintiffs' State Law Claims are preempted by the Price-Anderson Act pursuant to binding Sixth Circuit precedent.  Because they cannot stand as separate causes of action and Plaintiffs fail to state a claim for a public liability action by pleading a breach of the applicable federal standard of care, they must be dismissed.  Plaintiffs' claims for medical monitoring and declaratory judgment must also be dismissed for the additional reasons that medical monitoring is not an independent cause of action, and their declaratory judgment claim is merely duplicative of their other failed claims.  For these reasons, Defendants request dismissal of the Complaint for failure to state a claim.

Respectfully submitted,

*/s/ Richard D. Schuster*
Richard D. Schuster (0022813)
     Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2019, a true and correct copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's Electronic Filing System.  Parties may access the filing through the Court's system.

*/s/ Richard D. Schuster*
Richard D. Schuster
