**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| URSULA MCGLONE, *et al.* | ) | Civil Action No. 2:19-cv-02196-ALM-EPD |
| | ) | |
| Plaintiffs, | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| v. | ) | Chief Magistrate Judge |
| | ) | Elizabeth A. Preston Deavers |
| CENTRUS ENERGY CORP., *et al.* | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Centrus Energy Corp., United States Enrichment Corporation, Uranium Disposition Services, LLC, BWXT Conversion Services, LLC, Mid-America Conversion Services, LLC, Bechtel Jacobs Company, LLC, LATA/Parallax Portsmouth, LLC, and Fluor-BWXT Portsmouth, LLC (collectively, "Defendants") move to dismiss the Complaint of Plaintiffs Ursula McGlone, Jason McGlone, L.M., G.M., B.M., E.M., M.M., Julia Dunham, K.D., C.D., Adam Rider, Brittani Rider, M.R., C.R., L.R., and L.R. (collectively, "Plaintiffs") for failure to state a claim upon which relief can be granted. Pursuant to S.D. Ohio Civ. R. 7.1(b)(2), Defendants request oral argument because this action is of importance to the public in that it pertains to the local community and ongoing activities on behalf of the United States Government. A Memorandum in Support is attached.

Respectfully submitted,

*/s/ Richard D. Schuster*
Richard D. Schuster (0022813)
      Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com

*Counsel for Defendants*

## TABLE OF CONTENTS / SUMMARY OF THE ARGUMENT

I.      **INTRODUCTION**....................................................................................................1

II.     **BACKGROUND** ...................................................................................................3

III.   **LAW AND ARGUMENT**......................................................................................5

       **A.**    **Standard of Review**....................................................................................5

       **B.**    **Plaintiffs' PAA claim should be dismissed.** .........................................5

             **1.**    **Plaintiffs fail to adequately plead the elements of their PAA claim.**......5

                    **a.**    **Plaintiffs fail to plausibly allege that they were exposed to radiation that exceeded the threshold limits of 10 C.F.R. § 20.1301.**.................................................................................6

Courts dismiss PAA claims when plaintiffs fail to plausibly allege that they were exposed to radiation that exceeded the federal numerical dose limits set forth in 10 C.F.R. § 20.1301(a). Plaintiffs fail to plausibly allege that they or their properties were exposed to radiation above the federal numerical dose limits.

*Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761 (E.D. Tenn. 2012)

                    **b.**    **Plaintiffs fail to plausibly allege causation**..................................9

Plaintiffs must establish causation to recover on their PAA claim.  But Plaintiffs fail to plausibly tie the actions of any one Defendant to their alleged injuries.

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246 (3d Cir. 2017)

                    **c.**    **Plaintiffs fail to plausibly allege that they suffered an injury that is compensable under the PAA.** .............................................9

A plaintiff must establish either bodily or property injury to recover under the PAA. Plaintiffs have not alleged a bodily injury and Plaintiffs' alleged "annoyance," "emotional distress," and "increased risk of harm to person" are not compensable under the PAA.  Plaintiffs have also failed to plausibly allege property injuries as they have set forth nothing more than conclusory allegations.

*Snell v. Katafias*, No. 17440, 1999 Ohio App. LEXIS 997 (2d Dist. Mar. 19, 1999)
*Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002)
*Ford v. Chillicothe*, No. 2:15-cv-2464, 2016 U.S. Dist. LEXIS 186338 (S.D. Ohio Jan. 15, 2016)
*Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623 (N.D. Ohio 2014)

              **2.**    **Plaintiffs impermissibly seek to impose duties upon Defendants that are inconsistent with the PAA.**............................................................13

Plaintiffs seek to hold Defendants strictly liable under the PAA, which is impermissible because a strict-liability theory would allow a plaintiff to establish liability under the PAA without first establishing that the defendant breached the federally imposed duty of care.

Plaintiffs also wrongly seek to hold Defendants to vague, reasonable-care-like standards that are inconsistent with the PAA.

*Boggs v. Divested Atomic Corp.*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270

**C.      Plaintiffs' "Pleas for Alternative Relief" should be dismissed.........................15**

**1.      Plaintiffs' alternative state-law claims should be dismissed because Plaintiffs can proceed only under the PAA. ...........................................15**

A public liability action under PAA is the exclusive cause of action for and preempts state law claims that assert liability based on an alleged nuclear incident. This Court has previously held that the very same state-law claims arising from operations at the Portsmouth Site are preempted. Plaintiffs' alternative state-law claims cannot stand as separate causes of action and should be dismissed.

*Nieman v. NLO, Inc.,* 108 F.3d 1546 (6th Cir. 1997)
*Boggs v. Divested Atomic Corp.*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270

**2.      Plaintiffs' alternative declaratory-judgment counts should be dismissed because the PAA is constitutional. .........................................18**

Plaintiffs wrongly claim that it would violate their due process rights to construe the PAA as barring any recovery. The Supreme Court has already resolved this issue in holding that the PAA does provide a reasonably just substitute for the state-law tort remedies it replaces. Additionally, the NRC numerical-dose-limit regulations for members of the public pass constitutional muster as they are based on extensive scientific and technical investigation.

*Duke Power Co. v. Carolina Envt'l Study Grp.*, 438 U.S. 59 (1978)
*In re TMI Gen. Pub. Utils. Corp.*, 67 F.3d 1103 (3rd Cir. 1995)

**D.      Plaintiffs' CERCLA cost-recovery claim should be dismissed.........................19**

**1.      Plaintiffs fail to plausibly allege that any Defendant is a "responsible party." .......................................................................................................20**

To be liable under CERCLA, a defendant must currently own and operate the facility. Because the Portsmouth Site is owned by the Government of the United States, none of the Defendants can be current owners and as such are not "responsible parties" under CERCLA.

*Ohio ex. rel. Dewine v. Breen*, 362 F. Supp. 3d 420 (S.D. Ohio 2019)

**2.      Plaintiffs have not adequately pleaded a CERCLA claim against Defendant "response action contractors."...........................................21**

Defendants meet the definition of "response action contractors" under CERCLA. As such, Defendants cannot be not strictly liable under CERCLA and to assert a CERCLA claim, Plaintiffs must plausibly allege that Defendants' activities were either negligent, grossly negligent, or constitute intentional misconduct. But Plaintiffs have failed to do so.

42 U.S.C. § 9619

### 3. Plaintiffs fail to plausibly allege that they have incurred necessary response costs. ...........................................................................22

Plaintiffs forward only conclusory allegations with regard to the response costs they have incurred.  Moreover, investigative costs incurred by a private party after the EPA or state environmental protection agencies has initiated a remedial investigation, unless authorized by agency, are duplicative and therefore not recoverable.  Extensive monitoring and remediation efforts have been undertaken for decades at the Portsmouth Site under the authority of the Ohio EPA.  Plaintiffs have failed to plausibly allege that they have incurred necessary response costs.

*Louisiana-Pac. Corp. v. Beazer Materials & Servs., Inc.*, 811 F. Supp. 1421 (E.D. Cal. 1993)
*Marcas, LLC v. Bd. of Cty. Comm'rs of St. Mary's Cty.*, 977 F. Supp. 2d 487 (D. Md. 2013)

### 4. Even if Plaintiffs had alleged necessary response costs, they have failed to allege that such costs are consistent with the NCP. ...............24

The NCP is made up of regulations, promulgated by the EPA, which establish standards for the removal of hazardous substances.  The NCP requirements prevent a plaintiff from recovering the costs incurred in instituting a needless and expensive monitoring study.  Courts dismiss CERCLA cost-recovery claims where plaintiffs only forward the conclusory allegation that they have incurred response costs that are necessary and consistent with the NCP.  Plaintiffs' conclusory allegations that their response costs are consistent with the NCP are insufficient.

*Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209 (3d Cir. 1993)
*McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988)

### 5. Plaintiffs seek other relief that they cannot recover under CERCLA. 25

Plaintiffs cannot recover for alleged injury to natural resources or the costs of private medical monitoring.  Additionally, injunctive relief and punitive damages are not available to Plaintiffs under CERCLA.

42 U.S.C. § 9607(f)(1)
*Boggs v. Divested Atomic Corp.*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270
*McGregor v. Indus. Excess Landfill, Inc.*, 709 F. Supp. 1401 (N.D. Ohio 1987)
*Reagan v. Cherry Corp.*, 706 F. Supp. 145 (D.R.I. 1989)

### 6. Plaintiffs' CERCLA claim is time-barred. .............................................26

Plaintiffs were required to bring their cost-recovery claim within 6 years after initiation of physical on-site construction of the remedial action to be timely.  Plaintiffs did not file suit until December 10, 2019, well over six years after construction for the Portsmouth Site remedial actions began and the remedial actions were in fact being implemented.  Therefore, Plaintiffs' CERCLA cost-recovery claim is time-barred.

42 U.S.C. § 9613(g)(2)(B)

*Cytec Indus. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821 (S.D. Ohio 2002)

**E.      Plaintiffs' Non-Rad Claims should be dismissed. ...............................................27**

**1.      Plaintiffs have not plausibly alleged their properties have been impacted by non-radioactive materials....................................................28**

Plaintiffs plead no more than that some of their properties have been "impacted" or "contaminated with" unspecified "radioactive and toxic materials."  Plaintiffs fail to identify by name a single "material" that has been found on their properties, when their properties were impacted, and by which defendants, and it is unclear from Plaintiffs' vague allegations whether any of these alleged "materials" are the non-radioactive ones that form the basis for their Non-Rad Claims, as opposed to the radioactive materials that form the basis for their PAA claim.

*Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405 (W.D.N.Y. 2019)

**2.      Plaintiffs fail to allege how any non-radioactive hazardous substances migrated from the Portsmouth Site to their properties or which Defendant, if any, is responsible. ...........................................................28**

Plaintiffs fail to (1) plead how the alleged non-radioactive hazardous substances that form the basis of their Non-Rad Claims migrated from the Portsmouth Site to their properties or (2) link Defendants' activities at the Portsmouth Site to any specific non-radioactive hazardous substance on their properties.

*Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623 (N.D. Ohio 2014)
*Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405 (W.D.N.Y. 2019)

**3.      Plaintiffs fail to plausibly allege damages. ...............................................30**

Plaintiffs fail to plead any facts regarding the damages allegedly incurred as a result of non-radioactive hazardous substances.  Plaintiffs do not allege the nature and extent of the "property damage" they claim as a result of non-radioactive hazardous materials, nor do they plead how the presence of any non-radioactive hazardous substances affected their use and enjoyment of their properties or caused them emotional distress or inconvenience.  Plaintiffs' allegations are insufficient to state a plausible claim.

*Ford v. Chillicothe*, No. 2:15-cv-2464, 2016 U.S. Dist. LEXIS 186338 (S.D. Ohio Jan. 15, 2016)
*Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623 (N.D. Ohio 2014)

**4.      Plaintiffs have failed to identify an abnormally dangerous activity engaged in by Defendants in regard to non-radioactive materials......32**

In order to plead a strict-liability claim, a plaintiff must allege that the defendant carries on an abnormally dangerous activity and plaintiffs suffered harm resulting from that activity. Where a plaintiff fails to allege which of the defendant's specific activities are abnormally dangerous or ultrahazardous, it cannot state a claim for strict liability.  Here, Plaintiffs offer no more than conclusory statements in support of their strict liability claim and fail to even so much

as identify a single activity by any Defendant that resulted in the release of non-radioactive materials—let alone an ultrahazardous activity. Plaintiffs fail to state a claim for strict liability.

*Elmer v. S.H. Bell Co.* 127 F. Supp. 3d 812 (N.D. Ohio Aug. 31, 2015)

5. **Medical monitoring is not an independent cause of action.** .................33

Plaintiffs' Non-Rad Claim for medical monitoring should be dismissed because medical monitoring does not exist as an independent cause of action under Ohio law. Moreover, plaintiffs are only entitled to medical monitoring if they can establish liability and an increased risk of disease. Plaintiffs here have not alleged an increased risk of disease due to exposure to non-radioactive materials. Therefore, even if the Non-Rad Claims were otherwise sufficiently pleaded, Plaintiffs would not be entitled to medical monitoring as a form of damages for their Non-Rad Claims.

*Hirsch v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008)

F. **Plaintiffs' claim for declaratory judgment should be dismissed.** ....................33

Finally, Plaintiffs' claim for declaratory judgment should be dismissed for at least two reasons. First, this Court has dismissed claims for declaratory judgment where, as here, the plaintiffs' underlying substantive claims are subject to dismissal. Second, Plaintiffs' declaratory judgment claim improperly duplicates their other theories of liability.

*Superior Pharm., Inc. v. Med Shoppe Int'l, Inc.*, No. 2:10-cv-207 (S.D. Ohio Feb. 10, 2011)
*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925 (S.D. Ohio 2012)

IV. **CONCLUSION** ...............................................................................................34

<u>**MEMORANDUM IN SUPPORT**</u>

**I.**   <u>**Introduction**</u>

Plaintiffs' Second Amended Complaint ("SAC") should be dismissed under Rule

12(b)(6).  The centerpiece of Plaintiffs' SAC (Count One) is a public liability action under the

Price-Anderson Act ("PAA") based on alleged "property damage" caused by the alleged release

of radiation from a site owned by the U.S. Department of Energy ("DOE") in Piketon, Ohio.  To

plead such a claim, Plaintiffs must plausibly allege that (1) they were exposed to radiation in

excess of permissible numerical dose limits set by the Nuclear Regulatory Commission ("NRC")

in 10 C.F.R. § 20.1301(a); and (2) such overexposure caused them to suffer a compensable

injury under the PAA.  Plaintiffs plausibly allege neither of these elements.  No Plaintiff alleges

(let alone *plausibly* alleges) that they or their property have been exposed to radiation in excess

of the permissible numerical dose limits.  Moreover, Plaintiffs fail to plead any injury that is

compensable under the PAA.

Unable to satisfy the actual elements of their PAA claim, Plaintiffs seek to hold

Defendants liable under strict-liability theories and general, reasonable-care-like standards.  But

these standards are inconsistent with the PAA and thus cannot support a plausible PAA claim.

Plaintiffs' failure to adequately plead the elements of their PAA claim requires dismissal.

Further, Plaintiffs' "Pleas for Alternative Relief" related to the release of radiation lack

legal basis.  (Doc. 78, SAC ¶¶ 154-91.)  The Sixth Circuit has expressly held that "the Price-

Anderson Act preempts . . .  state law claims[,]" and that "state law claims cannot stand as

separate causes of action."  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997).  In other

words, Plaintiffs "can sue under the Price-Anderson Act, as amended, or not at all."  *Id.*  They

may not plead around preemption under the guise of "Pleas for Alternative Relief."

Plaintiffs' other claims fare no better.  The cost-recovery claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (Count Two) fails for six reasons.  First, plaintiffs fail to plausibly allege that any Defendant is a "responsible party."  Second, Defendant "response action contractors" cannot be strictly liable under CERCLA, and thus, Plaintiffs must plausibly allege at least negligence to survive a motion to dismiss, which they have failed to do.  Third, Plaintiffs fail to plausibly allege that they have incurred necessary response costs, which is particularly problematic here because CERCLA remediation efforts at the DOE site have already been underway for decades and are pervasively overseen by the Ohio Environmental Protection Agency ("Ohio EPA") through enforcement of administrative agreements that are of public record.  Fourth, even if Plaintiffs had plausibly alleged necessary response costs, they have failed to allege that such costs are consistent with the national contingency plan.  Fifth, Plaintiffs seek other relief, such as natural resource damages, costs for health assessment, punitive damages, and injunctive relief, for which they have no standing to recover under CERCLA.  Sixth, Plaintiffs' CERCLA claim is time-barred.

Plaintiffs' "causes of action for state law claims as to hazardous substances/wastes only" (the "Non-Rad Claims") (Doc. 78, SAC ¶¶ 135-153) are also inadequately pleaded.  Plaintiffs fail to allege any specific non-radioactive hazardous substances on their properties or how any such substances damaged their properties.  In fact, Plaintiffs fail to even plead the elements of these claims and instead merely allege that "[o]ne or more of the Defendants' conduct" renders them liable for negligence/gross negligence, trespass, nuisance, and strict liability.  (*Id.* ¶¶ 135-47.)  This pleading tactic is not permissible under *Iqbal* and *Twombly*.  Plaintiffs' Non-Rad Claims (Count Four) should be dismissed.

Finally, Plaintiffs' claim for "declaratory judgment as to class rights and status" (Count Three(A)) is not cognizable, and it merely duplicates Plaintiffs' other claims. Put simply, this is not a proper case for declaratory relief. Because all of Plaintiffs' claims fail, the SAC should be dismissed.

## II.   Background

The Portsmouth Gaseous Diffusion Plant (the "Plant"), which enriched uranium from 1954 to 2001, is located on a 3,777-acre federally-owned site in Pike County, Ohio (the "Portsmouth Site"). (Doc. 78, SAC ¶¶ 1, 26.) The Plant was one of the three large gaseous diffusion plants in the United States initially constructed to produce enriched uranium to support the nation's nuclear weapons program, and later, commercial nuclear reactors. In 2001, uranium enrichment operations were discontinued at the Plant, which was placed into cold standby and subsequently, cold shutdown. (*Id.* ¶¶ 26-28.) Environmental remediation began at the Portsmouth Site in 1989 and continues today pursuant to, *inter alia*, a Consent Decree entered by this Court and under the supervision of Ohio EPA. (*Id.* ¶¶ 37-42; *see also* Ex. 1, September 9, 1989 Consent Decree.) Each of the Defendants was, at some point from 1998[1] to present, responsible for at least one of the following activities at the Portsmouth Site: uranium enrichment operations, depleted uranium hexafluoride conversion, or environmental remediation. (*Id.* ¶¶ 26-42.) And each of the Defendants' operations at the Portsmouth Site were undertaken pursuant to authority granted by the federal government, including DOE. *See* 42 U.S.C. § 2210(a); 42 U.S.C. § 2297h-5(f); 42 U.S.C. § 2210(d)(1)(A); (*see also* Docs. 58-1-58-8.)

On May 26, 2019, Plaintiffs filed this putative class-action lawsuit against Defendants, asserting state-law claims based on the alleged release of radioactive materials from the

---

[1]    Defendant United States Enrichment Corporation did not exist until the privatization of a government corporation was completed in 1998 pursuant to the USEC Privatization Act, 42 U.S.C. § 2297h-10.

Portsmouth Site. (*See generally* Doc. 1, Compl.) Defendants moved to dismiss on the basis of PAA preemption (Doc. 58), and in response, Plaintiffs filed a First Amended Complaint on December 10, 2019 (Doc. 64, First Am. Compl.) and then their SAC on January 10, 2020 (Doc. 78, SAC.)

In their SAC, Plaintiffs (11 of whom are minors) allege that they live two, four, and four-and-a-half miles from the Portsmouth Site, and that their properties have been impacted by or are "within the zone of impact" of "radioactive and toxic materials" allegedly emitted from the Portsmouth Site. (Doc. 78, SAC ¶¶ 10-15.) Plaintiffs assert 15 claims (5 of which are their original state-law claims that are preempted by the PAA) (*id.* ¶¶ 97-191), and they seek to recover for "loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including remediation, along with such injunctive relief and declaratory relief as necessary to protect human health and the environment." (*Id.* ¶¶ 10-15.) Plaintiffs seek to represent (1) "[a]ll property owners within a 7-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence"; (2) "[a]ll residents and former residents with more than one year of residence within a 7-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence"; (3) "[a]ll current and former students at Zahn's Corner Middle School from 1993 to present as well as their parents"; (4) "[a]ll property owners with property located within 500 yards of the waterways draining the plant"; and (5) "[a]ll property owners with property within 500 yards of the Scioto River downstream of a point 500 yards upstream of Piketon until its confluence with the Ohio River at Portsmouth." (*Id.* ¶ 81.)

### III.  Law and Argument

#### A.  Standard of Review

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In short, a plaintiff's pleadings must make "a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555, n.3.  While this Court is obliged to accept as true all material factual allegations of the complaint, it is not required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations . . . ."  *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

#### B.  Plaintiffs' PAA claim should be dismissed.

Plaintiffs' PAA claim (Count One) should be dismissed for two reasons.  First, Plaintiffs fail to plausibly allege the actual elements of their PAA claim—namely, exposure to radiation that exceeded the permissible numerical dose limit set by NRC regulations and caused bodily injury or property damage.  Second, Plaintiffs impermissibly seek to impose duties upon Defendants that are inconsistent with the PAA and thus invalid as a matter of law.

##### 1.  Plaintiffs fail to adequately plead the elements of their PAA claim.

The Sixth Circuit has joined "with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by defendants" in a public liability action under the PAA.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 398 (6th Cir. 2002) (citing *Nieman*, 108 F.3d at 1552-53); *Smith v. Carbide & Chems. Corp.*, No. 5:97-CV-3-M, 2009 U.S. Dist. LEXIS 86417, at *8-10 (W.D. Ky. Sept. 16, 2009) (collecting cases and finding that "[e]very federal

circuit that has considered the appropriate standard of care under the Act agrees that federal safety regulations should control."). The NRC regulations—specifically, 10 C.F.R. § 20.1301(a)—establish "specific numerical dose limits." (Ex. 2, *Boggs v. Divested Atomic Corp.*, S.D. Ohio Case No. 2:90-cv-840, Doc. 270 at 33-37); 10 C.F.R. § 20.1301(a). Therefore, to plead a PAA claim, plaintiffs must plausibly allege "two essential elements: (1) [plaintiffs'] exposure exceeded the federal numerical dose limits; and (2) such overexposure caused [them] to suffer a compensable injury under the [PAA]." *Lokos v. Detroit Edison*, 67 F. Supp. 2d 740, 743 (E.D. Mich. 1999). Plaintiffs fail to plausibly allege these elements, and their PAA claim should be dismissed.

> ### a. Plaintiffs fail to plausibly allege that they were exposed to radiation that exceeded the threshold limits of 10 C.F.R. § 20.1301.

Courts dismiss PAA claims when plaintiffs fail to plausibly allege that they were exposed to radiation that "exceeded the federal numerical dose limits" set forth in 10 C.F.R. § 20.1301(a). *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 769, 772-73 (E.D. Tenn. 2012) (dismissing public liability action where plaintiffs failed to plausibly allege that they were exposed to radiation in excess of the federal limits); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (affirming dismissal of a public liability action for failure to state a claim when plaintiffs "failed to allege that FPL breached its duty of care by exposing Bertram Roberts to an amount of radiation in excess of the maximum permissible amount allowed by federal regulation").

For example, *Adkins* was a putative class action on behalf of 143 plaintiffs who lived near, worked at, or owned property near a nuclear fuel processing facility. *Adkins*, 960 F. Supp. 2d at 765. Plaintiffs alleged that they or their decedents suffered from cancer and other medical conditions and incurred property damages as a result of "repeated releases of hazardous and

radioactive substances into the area surrounding the [f]acility." *Id.* The court dismissed Plaintiffs' PAA claim for failure to plausibly plead a breach of the federal numerical dose limits. *Id.* at 772-73. In so doing, the court rejected plaintiffs' argument that they had satisfied their pleading burden by citing federal safety regulations and alleging that defendants had violated them. *Id.* It dismissed such allegations as "conclusory pleading," finding that "[a]lthough plaintiffs allege[d] in a general sense the violation of federal safety standards . . . they totally fail[ed] to provide any factual allegations which would support the allegation of the breach of an applicable federal safety standard." *Id.* at 773. Put simply, plaintiffs' "conclusory statements, masquerading as factual allegations, [were] not sufficient" to assert a PAA claim. *Id.*

Plaintiffs' SAC, like their first two complaints, suffers from the same basic deficiency. Plaintiffs "allege in a general sense" that "[r]ecent scientific testing performed at locations adjacent to the plant on publicly accessible areas supports a conclusion that external radiation levels exceed the allowable level of exposure to members of the public under federal law, including . . . more than 100 millirems above background levels in a calendar year." (Doc. 78, SAC ¶ 44.) They also vaguely allege that "[u]pon information and belief, Defendants' activities have caused and/or contributed to radioactive contamination offsite and into unrestricted areas in levels that exceed levels allowable under federal law." (*Id.* ¶ 49.) But Plaintiffs fail to allege— let alone plausibly allege—that *they or their properties* were exposed to radiation above the federal numerical dose limits.

With respect to Plaintiffs Ursula and Jason McGlone and Adam and Brittani Rider (as well as the Riders' minor children), the SAC merely alleges that "[s]cientific testing shows their property to be *impacted* with radioactive and toxic materials." (*Id.* ¶¶ 10, 14-15 (emphasis added).) With respect to the other Plaintiffs, the SAC alleges only that "[t]hey live within the

zone of impact"—without stating that "radioactive and toxic materials" are present on their properties, and without specifying what constitutes the "zone of impact."  (*Id.* ¶¶ 11-13.)  Indeed, despite allegedly conducting scientific testing on their properties, *Plaintiffs never allege that they or their properties have been exposed to radiation in excess of the permissible numerical dose limit set by 10 C.F.R. § 20.1301(a)*.  Therefore, Plaintiffs have failed to state a claim under the PAA.

In fact, the "reports by DOE, NIOSH and EPA" referenced by Plaintiffs (Doc. 78, SAC ¶ 43) confirm that neither Plaintiffs nor their properties have been exposed to radiation from the Portsmouth Site in excess of the permissible numerical dose limits.  For example, DOE's 2017 Annual Site Environmental Report ("ASER") for the Portsmouth Site provides a detailed analysis of radiation emitted from the Site gleaned from continuously active "thermoluminescent dosimeters (TLDs) at five locations near the $DUF_6$ cylinder storage yards and 19 on-site and off-site locations[.]"  (Ex. 3, excerpt of 2017Annual Site Environmental Report at ES-5.)[2]  The ASER concludes that "exposure to an *on-site* member of the public from radiation from the cylinder yards is approximately 0.74 mrem/year."  (*Id.* (emphasis added).)  This figure "is approximately 0.2% of the average yearly natural radiation exposure for a person in the United States and is significantly less than the 100 mrem/year limit to a member of the public . . . ." (*Id.*)

---

[2]    While not attached to the SAC, the Court can consider such reports in evaluating Defendants' Motion to Dismiss for several reasons.  First, the reports can be considered by the Court because they are publicly-available, government documents.  *See Tenn. Clean Water Network v. TVA*, 206 F. Supp. 3d 1280, 1290 (M.D. Tenn. 2016).  Second, the Sixth Circuit has "taken a liberal view of what matters fall within the pleadings" for purposes of Rule 12(b)(6), and extrinsic material should be considered if it "fill[s] in the contours and details of [the] complaint." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).  "[C]ourts consider the complaint as well as 'documents incorporated into the complaint by reference . . . .'" *Bowers v. Wynne*, 615 F.3d 455, 470 (6th Cir. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007)).  Thus, where the plaintiff fails to attach a "pertinent document" to the complaint, as Plaintiffs have failed to do here, the "defendant may introduce the exhibit as part of his motion attacking the pleading."  *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002).

**b.      Plaintiffs fail to plausibly allege causation.**

Plaintiffs also fail to plausibly allege causation.  Plaintiffs must establish causation to recover on their PAA claim.  *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 869 F.3d 246, 251 (3d Cir. 2017).  But Plaintiffs fail to plausibly tie the actions of any one Defendant to their alleged injuries.  Indeed, although Defendants engaged in vastly different activities at the Portsmouth Site over the past two decades (Doc. 78, SAC ¶¶ 29-49), Plaintiffs simply lump all Defendants together, and allege "[u]pon information and belief, Defendants' activities have caused and/or contributed to radioactive contamination offsite and into unrestricted areas[.]"  (*Id.* ¶ 49.)  These vague allegations are insufficient to make causation plausible.  *See, e.g.*, *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 775 (E.D. Ky. 2017) (dismissing claims because plaintiffs "do not link any manufacturer to the allegedly defective e-cigarette that caused the fire.  Instead, they group together every conceivable possibility.  This does not make Plaintiffs' claims plausible.").

**c.      Plaintiffs fail to plausibly allege that they suffered an injury that is compensable under the PAA.**

Even assuming that Plaintiffs had plausibly alleged that their person or property was exposed to radiation in excess of the NRC dose limits, and that a particular Defendant was responsible for this exposure (*they have done neither*), Plaintiffs fail to adequately allege that they have suffered a compensable injury under the PAA.  The PAA itself provides the exclusive list of compensable injuries under that statute:  "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property . . . ."  42 U.S.C. § 2014(q); *Ranier v. Union Carbide Corp.*, 402 F.3d 608, 618-19 (6th Cir. 2005).  The terms "sickness, disease, or death" do not broaden the statute's coverage—Plaintiffs must establish either bodily or property injury to recover under the PAA.  *In re Berg Litig.*, 293 F.3d 1127, 1131 (9th Cir. 2002) (analyzing text

and legislative history of PAA and concluding that "Congress added the words 'sickness' and 'disease' after 'bodily injury' in order to clarify what it meant by 'bodily injury[,]'" and that the PAA is not intended to "provide coverage for purely emotional injuries.").  Because they have not plausibly alleged bodily or property injury, Plaintiffs' PAA claim should be dismissed.

### 1) Plaintiffs fail to allege bodily injury under the PAA.

In their initial Complaint, Plaintiffs stated that this "is an action for property damage claims and not for personal injury."  (Doc. 1, Compl. ¶ 10.)  While Plaintiffs do not make this express statement in their latest Complaint, it remains true.  Each Plaintiff seeks "damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including remediation"—but bodily injury is *not* alleged.  (Doc. 78, SAC ¶¶ 10-15.)

Further, Plaintiffs' alleged "annoyance" and "emotional distress" (*id.*) are not "bodily injury."  In *Rainer*, the Sixth Circuit held that "courts are required to look to state law" in determining whether there is "bodily injury" under the PAA.  *Rainer*, 402 F.3d at 618.  Emotional distress is not "bodily injury" under Ohio law.  *Snell v. Katafias*, No. 17440, 1999 Ohio App. LEXIS 997, at *7-8 (2d Dist. Mar. 19, 1999).  Indeed, all Ohio courts that "have considered the question of whether the term 'bodily injury' . . . encompasses claims of emotional distress in the absence of some physical harm . . . have concluded that it does not."  *Id.*

To the extent that Plaintiffs seek to recover for an "increased risk of harm to person" (Doc. 78, SAC ¶ 116), Plaintiffs also miss the mark.  An increased risk of personal harm is not a compensable bodily injury under Ohio law (and therefore the PAA).  *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) ("Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition, because that would invite

speculation by the jury."); *Lavelle v. Owens-Corning Fiberglas Corp.*, 507 N.E.2d 476, 478-79 (Ohio Ct. C.P. 1987) ("Simply stated, to permit recovery for the increased risk of cancer would be to allow speculation").

2)      **Plaintiffs fail to plausibly allege property injuries.**

Moreover, despite pitching this as a property-damage case, Plaintiffs fail to plausibly allege any property injuries.  Instead they merely assert—in a conclusory fashion—that they seek damages for "loss of use and enjoyment of property, diminution of property value" and "property damage."  (Doc. 78, SAC ¶¶ 10-15.)  Diminution of property value is not a compensable injury under the plain language of the PAA.  42 U.S.C. § 2014(q).  Moreover, "pure environmental stigma, defined as when the value of real property decreases due solely to public perception or fear of contamination from a neighboring property, does not constitute compensable damages in Ohio."  *Ramirez v. Akzo*, 153 Ohio App. 3d 115, 119, 2003-Ohio-2859, 791 N.E.2d 1031 (5th Dist. 2003).  Rather, there must be "actual, physical damage to a plaintiff's property" that is substantial or "substantial interference."  *Id.* at 118; *see also Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 523-24 (6th Cir. 2013).

Conclusory allegations of property damage are insufficient to survive a motion to dismiss.  For example, in *Ford v. Chillicothe*, the "Plaintiffs plead[ed] only that . . . air particulates 'interfered with Plaintiffs' interests in the exclusive possession of Plaintiffs' land and properties'"; "that Plaintiffs suffered substantial damages to their properties"; and that "odors and air particulates 'substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their properties.'"  *Ford v. Chillicothe*, No. 2:15-cv-2464, 2016 U.S. Dist. LEXIS 186338, at *6 (S.D. Ohio Jan. 15, 2016).  The Court found these allegations to be "nothing more than conclusory statements or threadbare recitals of a cause of action[,]" noting that "Plaintiffs fail to

plead any facts—such as *how* the particulates interfered with their use and enjoyment of the land or caused physical damage—that would make th[eir] conclusory allegations plausible." *Id.* (emphasis in original).  Also, in *Brown v. Whirlpool*, the complaint did not "specify the type of damage to plaintiffs' varied properties or the extent of such damages." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 639 (N.D. Ohio 2014).  Therefore, the court found "that plaintiffs [had] provided nothing but conclusions to support their property-damages claim" and dismissed those claims. *Id.*

Like in *Ford* and *Brown*, Plaintiffs' allegations are "nothing more than 'unadorned, the-defendant unlawfully-harmed-me accusations.'" *Whirlpool*, 996 F. Supp. 2d at 639 (quoting *Iqbal*, 556 U.S. at 678).  Plaintiffs simply aver that that they have "suffered loss or damage to property or loss of use of property, as a direct and proximate result of their exposures" to radioactive materials allegedly released from the Portsmouth Site.  (Doc. 78, SAC ¶ 104.) Plaintiffs do not "specify the type of damage to [their] varied properties or the extent of such damages." *Brown*, 996 F. Supp. 2d at 639.  Instead, they provide conclusions, which are not enough to survive a motion to dismiss under Rule 12(b)(6).

Indeed, the eleven Plaintiffs who are minor children fail to even allege that they own property.  (Doc. 78, SAC ¶¶ 10-15.)  These Plaintiffs thus lack standing to assert claims for property damage, and their PAA claims should be dismissed. *See Windsor Realty & Mgmt. v. Ne. Ohio Reg'l Sewer Dist.*, 8th Dist. Cuyahoga No. 107597, 2019-Ohio-3096, ¶ 14 ("A party without legal or equitable title in a property has no interest in claims stemming from that property" and lacks standing).

### 3)    Plaintiffs cannot recover punitive damages.

Finally, Plaintiffs cannot recover punitive damages under the PAA.  The statute makes clear that "[n]o court may award punitive damages in any action with respect to a nuclear incident . . . ."  42 U.S.C. § 2210(s).  As this Court is obliged to apply the PAA's plain text, *United States v. Ron Pair Ent., Inc.*, 489 U.S. 35, 241 (1989), Plaintiffs' request for punitive damages under the PAA fails.

### 2.    Plaintiffs impermissibly seek to impose duties upon Defendants that are inconsistent with the PAA.

Unable to plead the necessary elements of a viable PAA claim, Plaintiffs impermissibly attempt to create new thresholds for PAA liability and impose duties upon Defendants that are inconsistent with the PAA.  While the "substantive rules for decision" in a PAA action "shall be derived from" state law, Plaintiffs cannot proceed under state-law theories that are "inconsistent" with the applicable federal regulations.  42 U.S.C. § 2014(hh); *Nieman*, 108 F.3d at 1550.  Plaintiffs admit as much in the SAC.  (Doc. 78, SAC ¶ 106.)

Nevertheless, Plaintiffs seek to hold Defendants strictly liable under the PAA.  (*Id.* ¶¶ 107-08.)  Allegations based on strict liability are inconsistent with the PAA because a strict-liability theory would allow a plaintiff to establish liability under the PAA "without first establishing that the defendant breached the federally imposed duty of care."  *O'Connor v. Boeing N. Am. Inc.*, Nos. CV-97-1554-DT et al., 2005 U.S. Dist. LEXIS 46226, at *140 (C.D. Cal. Aug 18, 2005).  Indeed, in *Boggs*, this Court precluded plaintiffs from pursuing a strict-liability theory under the PAA with respect to alleged nuclear releases from the Portsmouth Site.  (Ex. 2, *Boggs*, Doc. 270 at 30-37.)  Other courts have held likewise.  *Koller v. Pinnacle West Capital Corp.*, No. CV-06-2031-PHX-FJM, 2007 U.S. Dist. LEXIS 9186, at *11 (D. Ariz. Feb. 6, 2007) ("[W]e conclude that plaintiffs' strict liability theory is also inconsistent with Price-

Anderson because it is premised on the theory that defendants could be found liable without first establishing that they breached the federally-imposed dose limits."); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 221 (D. Me. 1996) (same); *McLandrich v. S. Cal. Edison Co.*, 942 F. Supp. 457, 465 n.7 (S.D. Cal. 1996) (same). Put simply, Plaintiffs' theory of "strict liability is inconsistent with the Price-Anderson Act and is unavailable to Plaintiffs." *O'Connor*, 2005 U.S. Dist. LEXIS 46226, at *144.

Plaintiffs also wrongly seek to hold Defendants to vague, reasonable-care-like standards that are inconsistent with the PAA. Specifically, Plaintiffs allege as follows:

- "Defendants owed to Plaintiffs a duty of due care which could only be satisfied by the legal, safe, and proper processing, handling, storage, and/or disposal of the radioactive, toxic, and hazardous substances in Defendants' possession." (Doc. 78, SAC ¶ 109.)

- "Defendants had a duty to prevent the discharge or release of such substances that might harm Plaintiffs." (*Id.*)

- "Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic, and hazardous substances, and to warn or notify Plaintiffs of the fact that discharges or releases of these substances had occurred and were likely to occur in the future." (*Id.*)

This Court in *Boggs* rejected such theories as to radioactive materials, finding they were contrary to the numerical dose limits established by 10 C.F.R. § 20.1301(a) and "would [impermissibly] allow juries to become the final arbiters of how much radiation can be released without violating federal law." (Ex. 2, *Boggs*, Doc. 270 at 37); *see also Smith*, 2009 U.S. Dist. LEXIS 86417, at *11 ("adoption of such a vague standard 'would give no real guidance to operators and would allow juries to fix the standard case by case and plant by plant.'" (quoting *Koller*, 2007 U.S. Dist. LEXIS 9186, at *9)). And the Court should do the same here. Defendants' duty under the PAA

is governed by the NRC regulations, not the vague, baseless standards created and advocated by Plaintiffs.

### C. Plaintiffs' "Pleas for Alternative Relief" should be dismissed.

Plaintiffs' "Pleas for Alternative Relief" (Doc. 78, SAC ¶¶ 154-191) also lack legal basis. Fed. R. Civ. P. 8(d) permits parties to "set out two or more statements of a claim or defense alternatively or hypothetically[.]"  But there is no basis for Plaintiffs' assertion that their "Pleas for Alternative Relief remain preserved but unasserted and, therefore, not ripe for the Court's determination of applicability to this action."[3]  (Doc. 78, SAC ¶ 155.)  Defendants must be permitted to challenge, and this Court should rule upon, the legal sufficiency of Plaintiffs' purported "Pleas for Alternative Relief."  *See Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 416 (6th Cir. 2014) (affirming district court's dismissal of principal and alternative claims).

### 1. Plaintiffs' alternative state-law claims should be dismissed because Plaintiffs can proceed only under the PAA.

Plaintiffs' claims for negligence, trespass, nuisance, strict liability, and medical monitoring "in the alternative to the claim set forth above in Count One (Violation of the Price Anderson Act)" cannot stand.  (Doc. 78, SAC ¶¶ 156-178.)  This is a matter of federal preemption, not a Rule 8 pleading issue.  Indeed, Defendants thoroughly addressed why the PAA preempted state-law claims based on the alleged release of radioactive materials in their prior Motion to Dismiss.  (Doc. 58, Motion to Dismiss at PageID ## 188-97.)  Perhaps recognizing that their state-law claims were, in fact, preempted, Plaintiffs elected to amend their Complaint

---

3    Plaintiffs' assertion that their so-called alternative claims will spring to life at *any time* "[i]n the event . . . the Court, for *any reason*, finds that *any* of the Plaintiffs' claims . . . fail to be cognizable or governed under the Price Anderson Act" (Doc. 78, SAC ¶ 156 (emphasis added)) is unfounded.  If this were the case, Defendants could theoretically obtain a favorable jury verdict on Plaintiffs' PAA claim, which would start the entire action over again. The Federal Rules of Civil Procedure simply do not work that way.

and assert a PAA claim. Plaintiffs cannot now have their cake and eat it too by "reserving" their preempted state-law claims.

Specifically, in *Nieman*, the Sixth Circuit held that a public liability action under the Price-Anderson Act is the exclusive cause of action for and preempts state law claims that assert liability based on an alleged nuclear incident. *Nieman,* 108 F.3d at 1553. There, the plaintiff alleged that the discharge of uranium from a nuclear facility in Fernald, Ohio, "has damaged and continues to damage his property." *Id.* at 1547. The district court granted defendants' motion to dismiss the action as time-barred. *Id.* at 1548. On appeal, the Sixth Circuit held that the PAA preempted plaintiff's state-law claims, finding that "the state law claims *cannot stand as separate causes of action*. Nieman can sue under the Price-Anderson Act, as amended, *or not at all*." *Id.* at 1553 (emphasis added).

In reaching this decision, the *Nieman* court applied case law from the Seventh and Third Circuits, which holds that the "Price-Anderson Act, as amended in 1988, preempts state law claims." *Id.* at 1552-53 (citing *O'Conner*, 13 F.3d at 1099-1100 and *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3rd Cir. 1991)); *see also Ranier*, 402 F.3d at 611, 617 (finding that the district court had properly dismissed state law claims arising from plaintiffs' exposure to radioactive substances from a uranium enrichment plant in Paducah, Kentucky because "[a]s the district court noted, this court has interpreted the Price-Anderson Act as preempting otherwise applicable state-law causes of action."). Case law from other circuits is in accord with *Nieman*. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011) ("[A] plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the [Price-Anderson Act], 42 U.S.C. § 2014(q), 'can sue under the [PAA] or not at all.'" (quoting *Nieman*, 108 F.3d at 1553)); *In re Berg Litig.*, 293 F.3d at 1132 (the PAA provides the "exclusive means for pursuing

claims" asserting a nuclear incident); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 537 (2d Cir. 1999) (the PAA "creat[es] an <u>exclusive</u> federal cause of action for radiation injury" (emphasis in original)).

In fact, this Court has previously held that the very same state-law claims arising from operations at the Portsmouth Site are preempted.  In *Boggs*, plaintiffs alleged that the defendants, the owners/operators of the Portsmouth Site, had "engaged in a continuous course of conduct whereby they . . . ha[d] permitted ongoing and continuous discharges of radioactive . . . substances."  (Ex. 2, *Boggs*, Doc. 270 at 2.)  They "set forth four substantive claims for relief under the common law of Ohio, to wit: negligence; absolute or strict liability, predicated upon engaging in abnormally dangerous or ultrahazardous activities; private nuisance; and trespass." (*Id.*)  Applying *Nieman*, this Court held that plaintiffs' state-law claims based on alleged releases of radioactive materials were preempted by the PAA.  (*Id.* at 30-32.)

Other district courts have applied *Nieman* in the same way.  For example, in addition to their PAA claim, the plaintiffs in *Adkins* asserted various state-law claims, including negligence, strict liability, nuisance, and trespass.  *Adkins*, 960 F. Supp. 2d at 766.  Defendants argued that plaintiffs' state-law claims were preempted by the Price-Anderson Act and could not stand as separate causes of action.  *Id.* at 763.  The court agreed with the defendants and dismissed the plaintiffs' state-law claims, noting that the Sixth Circuit had "squarely addressed the question" of Price-Anderson Act preemption in *Nieman*:

> [T]his court cannot ignore the clear language of the Sixth Circuit in *Nieman* that 'the state law causes of action cannot stand as separate causes of action,' *Nieman*, 108 F.3d at 1553, and the state law claims must be dismissed.… This Court, as a district court sitting in the Sixth Circuit, is bound to apply Sixth Circuit precedent.

*Id.* at 767-68.

The above cases are materially indistinguishable from this action.  They all involve alleged (1) releases of radioactive materials from nearby nuclear facilities—in the case of *Boggs*, *precisely the same facility*; (2) property damage; and (3) state law claims for negligence, trespass, nuisance, and strict liability.  In each case, the court properly held that the plaintiffs' state-law claims were preempted by the PAA and could not stand as separate causes of action.  The Court should hold the same here and dismiss Plaintiffs' state-law claims "in the alternative to the claim set forth above in Count One (Violation of the Price Anderson Act)[.]"  (Doc. 78, SAC ¶¶ 156-178.)

### 2.  Plaintiffs' alternative declaratory-judgment counts should be dismissed because the PAA is constitutional.

Plaintiffs' alternative declaratory-judgment counts (*id.* ¶¶ 179-91) should also be dismissed.  Plaintiffs wrongly claim that "it would violate the Plaintiffs' due process rights to construe the Price-Anderson Act as barring any recovery by Plaintiffs" and that "[a]s a matter of due process, Congress cannot eliminate longstanding common law rights without providing any 'reasonable alternative remedy'" unless there is a 'compelling' reason to do so."  (*Id.* ¶¶ 179-84.)  The Supreme Court has already resolved this issue:

> [T]he Price-Anderson Act does, in our view, provide a reasonably just substitute for the common-law or state tort law remedies it replaces.  The legislative history of the liability-limitation provisions and the accompanying compensation mechanism reflects Congress's determination that reliance on state tort law remedies and state-court procedures was an unsatisfactory approach to assuring public compensation for nuclear accidents, while at the same time providing the necessary incentives for private development of nuclear-produced energy.

*Duke Power Co. v. Carolina Envt'l Study Grp.*, 438 U.S. 59, 87-89 (1978).

Plaintiffs claim that the NRC numerical-dose-limit regulations are unconstitutional, as they "erroneously and arbitrarily set a 100 millirem above background average yearly dose for individual members of the public" (Doc. 78, SAC ¶¶ 185-90), also fails.  Aside from the fact that

Plaintiffs fail to even identify the due-process right allegedly violated, the NRC "limits on exposure [are] based upon years of extensive scientific and technical investigation and upon years of experience with practical problems of radiation protection," "represent a consensus as to the measures generally desirable to provide appropriate degrees of safety[,]" and are "conservative standard[s]." *In re TMI Gen. Pub. Utils. Corp.*, 67 F.3d 1103, 1111-15 (3d Cir. 1995) (reviewing regulations in depth and concluding that they "represent the considered judgment of the relevant regulatory bodies—the Federal Radiation Council, EPA, AEC, and NRC—on the appropriate levels of radiation to which the general public may be exposed."). Accordingly, the numerical dose limits pass constitutional muster. *See Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (holding that statute or regulation is subject to a "strong presumption of validity" under rational basis review, and the court must uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis.").

### D. Plaintiffs' CERCLA cost-recovery claim should be dismissed.

Plaintiffs' CERCLA cost-recovery claim (Count Two) should also be dismissed. Congress enacted CERCLA to fund the remediation of sites where hazardous wastes were released and disposed. To that end, Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), creates a private right of action to recover "necessary costs of response incurred . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). A "cost-recovery claim" has four elements: (1) the defendant must be a "responsible party"; (2) the hazardous substances were disposed of at a "facility"; (3) there is a "release" or threatened release of hazardous substances into the environment; and (4) the "release" causes the occurrence of "response costs" that are necessary and consistent with the national contingency plan ("NCP"). *Id.* § 9607(a). Generally,

cost-recovery claims related to a "remedial action" are subject to a 6-year statute of limitations. *See id.* § 9613(g)(2).

Here, Plaintiffs' alleged CERCLA cost-recovery claim fails for six reasons.  First, plaintiffs fail to plausibly allege that any Defendant is a "responsible party."  Second, Defendant "response action contractors" cannot be strictly liable under CERCLA, and thus, Plaintiffs must plausibly allege at least negligence to survive a motion to dismiss, which they have failed to do. Third, Plaintiffs fail to plausibly allege that they have incurred necessary response costs.  Fourth, even if Plaintiffs had plausibly alleged necessary response costs, they have failed to allege that such costs are consistent with the NCP.  Fifth, Plaintiffs seek other relief, such as natural resource damages, costs for health assessment, punitive damages, and injunctive relief, which they cannot recover under CERCLA.  Sixth, Plaintiffs' CERCLA cost-recovery claim is time-barred.

Moreover, CERCLA response actions have long been ongoing at the Portsmouth Site pursuant to administrative orders executed by DOE and Ohio EPA.  (*E.g.*, Ex. 4, excerpt of April 13, 2010 Director's Final Findings and Orders ("DFFO").)  Thus, to the extent that Plaintiffs' requested relief challenges these ongoing CERCLA response actions pursuant to any state or federal law (*see, e.g.*, SAC ¶ 65), this Court lacks jurisdiction to review any such challenges.  42 U.S.C. § 9613(h).

### 1. Plaintiffs fail to plausibly allege that any Defendant is a "responsible party."

Plaintiffs' conclusory allegation that "Defendants are Responsible Parties as defined by CERCLA" because each "is a current 'owner and operator of a vessel or facility' under 42 U.S.C. § 9607(a)" misses the mark.  (Doc. 78, SAC ¶¶ 120-1.)  To be liable under this section of CERCLA, a defendant must "currently own[] *and* operate[] the facility."  *Ohio ex. rel. Dewine v.*

*Breen*, 362 F. Supp. 3d 420, 437 (S.D. Ohio 2019) (emphasis added).  Put differently, there must

be "current ownership and active participation in the hazardous release."  *Id.* at 440 ("Trabue has

established it is not a PRP under section 9607(a)(1) because Trabue does not own *and* operate a

hazardous waste facility." (emphasis in original)).

Here, none of the Defendants own the Portsmouth Site; it is "owned by the Government

of the United States under the jurisdiction of USDOE."  (Ex. 1, September 9, 1989 Consent

Decree at 4.)  Moreover, many of the Defendants have been off-site for multiple years and thus

cannot be considered as current operators.  (*See* Doc. 78, SAC ¶¶ 28-40.)  Because Defendants

are not current "owners *and* operators," Plaintiffs have failed to plausibly allege that any

Defendant is a "responsible party" under CERCLA, and their cost-recovery claim should be

dismissed.

> **2.** **Plaintiffs have not adequately pleaded a CERCLA claim against
> Defendant "response action contractors."**

Defendants meet the definition of "response action contractors" under CERCLA.  *See* 42

U.S.C. § 9619(e)(2).  As such, Defendants cannot be strictly liable under CERCLA, *id.* §

9619(a)(1), and to assert a CERCLA claim, Plaintiffs must plausibly allege that Defendants'

activities were either negligent, grossly negligent, or constitute intentional misconduct.  *See id.* §

9619(a)(2).  But Plaintiffs have failed to do so.  Indeed, Plaintiffs offer only the legal conclusion

that Defendants' "processing, handling, storage, and/or disposal of hazardous, toxic, and

radioactive waste materials at the Portsmouth Site" was "negligent, grossly negligent, and

reckless" (Doc. 78, SAC ¶ 112), which is insufficient to state a plausible claim against

Defendants as response action contractors.  *See, e.g.*, *Ford*, 2016 U.S. Dist. LEXIS 186338, at

*10 ("[S]imply alleging that Defendant was negligent in the construction, maintenance or

operation of the paper mill does not suffice as such allegation still fails to include any facts to make the legal conclusion of negligence plausible.").

### 3. Plaintiffs fail to plausibly allege that they have incurred necessary response costs.

Regardless, Plaintiffs' cost-recovery claim should be dismissed because Plaintiffs fail to plausibly allege that they have incurred necessary response costs.  *See* 42 U.S.C. § 9607(a)(2), (a)(4)(B).  "Generally speaking, legal fees and litigation-related costs are not recoverable; only work that is closely tied to the actual cleanup . . . may constitute a necessary cost of response." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 482 (6th Cir. 2004) (quoting *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 549 (6th Cir. 2001)); *Key Tronic Corp. v. United States*, 511 U.S. 809, 819-20 (1994).  Likewise, plaintiffs do not "incur" response costs "merely because they may be obligated in the future to reimburse their attorneys . . . ." *Trimble v. Asarco, Inc.*, 232 F.3d 946, 956-59 (8th Cir. 2000), *rev'd on other grounds*, 545 U.S. 546 (2005).

Here, it is unclear what response costs, if any, Plaintiffs have incurred.  Plaintiffs forward the conclusory allegations that they "have incurred necessary costs of response[,]" and that their "response thus far has been in the form of substantial investigation and sampling costs necessary to determine the nature and extent of the releases and contamination of the area around Pike County."  (Doc. 78, SAC ¶¶ 125-26.)  But the only study cited in the SAC states that it was done "pro bono."  (Ex. 5, Michael E. Ketterer, *Investigation of Anthropogenic Uranium, Neptunium, and Plutonium in Environmental Samples Near Piketon*, Ohio, April 27, 2019 at 2; Doc. 78, SAC ¶ 61 n.3.)

Moreover, it is well settled that "investigative costs incurred by a private party after the [EPA] has initiated a remedial investigation, unless authorized by the EPA, are 'duplicative' and

therefore not recoverable." *Louisiana-Pac. Corp. v. Beazer Materials & Servs., Inc.*, 811 F. Supp. 1421, 1425 (E.D. Cal. 1993)); *see also Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 209 F. Supp. 3d 1093, 1112 (E.D. Mo. 2016) ("Monitoring and assessment costs are needless and thus not recoverable where such efforts are duplicative of work already performed to monitor and assess the contamination." (quotations omitted)); *In re Hanford Nuclear Reservation Litig.*, 780 F. Supp. 1551, 1567 (E.D. Wash. 1991) (same). The same is true with respect to the actions of a state environmental protection agency. *Marcas, LLC v. Bd. of Cty. Comm'rs of St. Mary's Cty.*, 977 F. Supp. 2d 487, 500-01 (D. Md. 2013) (holding that a private plaintiff's CERCLA claim failed because the plaintiff had not incurred "investigative and monitoring costs that were necessary," where those costs were "duplicative of work already performed by" a state environmental protection agency and several potentially responsible parties).

Extensive monitoring and remediation efforts have been undertaken for decades at the Portsmouth Site under the authority of the Ohio EPA. In 1989, this Court entered a consent decree between DOE and the State of Ohio regarding "the safe and environmentally sound handling of hazardous waste, mixed waste, PCB's, solid waste, and water pollutants at PORTS." (Ex. 1, September 9, 1989 Consent Decree at 1.) The consent decree sets forth extensive monitoring and reporting obligations, and it requires DOE to "provide access to PORTS to Ohio EPA for the purpose of monitoring, sampling and observing activities carried out under this Consent Decree." (*Id.* at 8, 12, 15, 24.) Since the consent decree, there have been numerous administrative orders and records of decision to, *inter alia*, "avoid duplication of effort, and efficiently perform sitewide ground water monitoring and surveillance and maintenance activities . . . ." (*E.g.*, Ex. 6, March 18, 1999 DFFO at 1; Ex. 7 excerpt of December 16, 2011

DFFO at 1.)  In fact, in 2013, DOE issued its own "Environmental Monitoring Plan," imposing significant air, radiation, groundwater, surface water, sediment, soil/vegetation, and biota monitoring requirements.  (*See generally* Ex. 8, excerpt of February 2013 Environmental Monitoring Plan.)[4]  In light of the monitoring activities in place at the Portsmouth Site, Plaintiffs have failed to plausibly allege that they have incurred necessary response costs.

### 4. Even if Plaintiffs had alleged necessary response costs, they have failed to allege that such costs are consistent with the NCP.

Even if Plaintiffs had plausibly alleged that they have incurred necessary response costs, Plaintiffs have failed to allege that such costs are consistent with the NCP.  As explained by the Sixth Circuit, "[t]he NCP is made up of regulations, promulgated by the EPA under the authority of 42 U.S.C. § 9605, which establish standards for the removal of hazardous substances." *Pierson Sand & Gravel, Inc. v. Pierson Twp.*, No. 94-1472, 1996 U.S. App. LEXIS 16088, at *5 (6th Cir. 1996); *see also* 40 C.F.R. § 300.700.  The NCP requirements "prevent a plaintiff from recovering the costs incurred in instituting a needless and expensive monitoring study." *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1219 (3d Cir. 1993).

Courts dismiss CERCLA cost-recovery claims where plaintiffs only forward the conclusory allegation that they have incurred response costs that are necessary and consistent with the NCP.  *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42 (6th Cir. 1988) (affirming dismissal of CERCLA cost-recovery claim where plaintiffs "failed to allege any . . . factual basis for their conclusory allegation that they had personally incurred response costs consistent with the National Contingency Plan."); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658 (E.D. Tex. 2006) (dismissing cost-recovery claim where plaintiff "failed to

---

[4]      The Court can take judicial notice of these exhibits and consider them in ruling on Defendants' motion to dismiss.  *See Tenn. Clean Water Network*, 206 F. Supp. 3d at 1290.

allege any . . . factual basis for its conclusory allegation that it expended response costs consistent with the National Contingency Plan.").

Similarly, here, Plaintiffs pay lip service to the requirement that their response costs be consistent with the NCP.  (*See* Doc. 78, SAC ¶ 126.)  Indeed, they offer only the single conclusory sentence that "[t]he response costs incurred by Plaintiffs are consistent with the National Contingency Plan . . . ."  (Doc. 78, SAC ¶ 126.)  This conclusory allegation is insufficient, especially in light of the extensive monitoring and remediation efforts that have been in place for years at the Portsmouth Site.  (*See supra* § III.D.3.)  Plaintiffs' CERCLA claim should be dismissed.

### 5. Plaintiffs seek other relief that they cannot recover under CERCLA.

Finally, Plaintiffs cannot recover for alleged "injury to, destruction of, or loss of natural resources" or "the costs of any health assessment or health effects study carried out under section 9604(i)."  (Doc. 78, SAC ¶ 127.)  For the former, only natural resource trustees—government entities—can recover for such damages.[5]  42 U.S.C. § 9607(f)(1).  For the latter, only the Agency for Toxic Substances and Disease Registry is given the power under section 9604(i) to complete health assessments and recover those costs.  In other words, expenses for private medical monitoring are not recoverable response costs under CERCLA.  (Ex. 2, *Boggs*, Doc. 270 at 43-44 (collecting cases)).  Finally, injunctive relief and punitive damages are not available to Plaintiffs under CERCLA.  *McGregor v. Indus. Excess Landfill, Inc.*, 709 F. Supp. 1401, 1409 (N.D. Ohio 1987), *aff'd* 856 F.2d 39 (6th Cir. 1988) (applying plain language of CERCLA and finding no private right of action for injunctive relief); *Reagan v. Cherry Corp.*, 706 F. Supp. 145, 152 (D.R.I. 1989) (holding that punitive damages are not recoverable under CERCLA).

---

[5]     Plaintiffs' reference to damages limitations under CERCLA (Doc. 78, SAC, ¶ 128), is misleading because they have no standing to recover damages under CERCLA and may only recover necessary response costs consistent with the NCP.

###### 6.    Plaintiffs' CERCLA claim is time-barred.

Plaintiffs were required to bring their cost-recovery claim "within 6 years after initiation of physical on-site construction of the remedial action" to be timely.  *See* 42 U.S.C. § 9613(g)(2)(B).  For example, in *Cytec Indus. v. B.F. Goodrich Co.*, the court found that the "construction of a concrete slab and installation of the equipment necessary to remove" hazardous wastes "constitute[d] the initiation of a physical on-site construction of the remedial action[.]"  *Cytec Indus. v. B.F. Goodrich Co.*, 232 F. Supp. 2d 821, 840 (S.D. Ohio 2002).  Because those actions occurred in 1992, and plaintiff did not file suit until 2000, plaintiff's cost-recovery claim was untimely.  *Id.*; *see also, e.g.*, *Douglas Autotech Corp. v. Scott Fetzer Co.*, No. 1:07-CV-1062, 2008 U.S. Dist. LEXIS 4894, at *15-16 (W.D. Mich. Jan. 23, 2008) (cost-recovery claim time-barred where brought more than 6 years after remedial plan that included "use of large containment well, pumps, air-stripping and monitor wells."); *Am. Premier Underwriters, Inc. v. GE*, 866 F. Supp. 2d 883, 891-97 (S.D. Ohio 2012) (cost-recovery claim time barred when it was brought more than 6 years after remedial actions began with fuel oil treatment and recovery systems); *Schaefer v. Town of Victor*, 457 F.3d 188, 202-210 (2nd Cir. 2006) (cost-recovery claim time barred when "'physical on-site construction' of a remedial nature" occurred more than 6 years prior to the initiation of the action).

Plaintiffs' cost-recovery claim is likewise untimely under section 9613(g)(2)(B).  Long-term plans for DOE to investigate the nature and extent of hazardous substance/hazardous waste releases and undertake long-term remedial action were formally memorialized in 1989 and have been overseen continuously by a combination of U.S. EPA and Ohio EPA under RCRA, TSCA, and CERCLA.  (*See* Ex. 1, September 9, 1989 Consent Decree; Ex. 9, excerpt of 1989 Administrative Order by Consent ("AOC"); Ex. 10, excerpt of 1994 AOC; Ex. 11, excerpt of 1997 AOC; Ex. 6, March 18, 1999 DFFO; Ex. 4, excerpt of April 13, 2010 DFFO.)  Decision

26

documents for certain remedial actions in Site "Quadrants" required by the 1989 Consent Decree and 1989 AOC were issued between 1996 and 2003, and by 2010, these remedial actions had been implemented. (Ex. 1, September 9, 1989 Consent Decree at Ex. B; Ex. 9, excerpt of 1989 AOC at § IX; Ex. 4, excerpt of April 13, 2010 DFFO at ¶¶ 6n-6o.) DOE has continued to implement remedial action at the Portsmouth Site, including the Decontamination and Demolition of Site buildings and construction of an On-Site Waste Disposal Facility. (Doc. 78, SAC, ¶¶ 37-42.) Notwithstanding the fact that key decisions on remedial action are subject to public comment (*see, e.g.*, Ex. 9, excerpt of 1989 AOC at § XIII) and a vast administrative record is available to the public, Plaintiffs did not file suit until December 10, 2019 (*see* Doc. 64), well over six years after construction for the Portsmouth Site remedial actions began and the remedial actions were in fact being implemented. Therefore, Plaintiffs' CERCLA cost-recovery claim is time-barred under the applicable 6-year statute of limitations.

### E. Plaintiffs' Non-Rad Claims should be dismissed.

Plaintiffs' Non-Rad Claims (Doc. 78, SAC ¶¶ 135-53)[6] should also be dismissed as implausible. *Bellafaire v. Town of Wheatfield* is instructive. There, plaintiffs asserted claims for negligence, strict liability, and trespass against multiple defendants based on the alleged release of hazardous substances from a landfill. *Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405, 418 (W.D.N.Y. 2019). The court summarized plaintiffs' allegations as follows: "[i]n effect, Plaintiffs allege that an unspecified Defendant deposited or caused to be deposited an unspecified substance on, in, or underneath Plaintiffs' properties at an unspecified time which caused unspecified damage." *Id.* at 418. The court then dismissed the Plaintiffs' complaint, finding that it "fail[ed] to 'give the defendant fair notice of what the . . . claim is and the grounds

---

6      Under Count Four of the SAC, Plaintiffs set forth claims for (1) negligence/gross negligence, (2) trespass, (3) nuisance, (4) strict liability, and (5) medial monitoring. (*Id.* ¶¶ 138-53.)

upon which it rests,' and d[id] not allege 'sufficient factual matter . . . to state a claim for relief that is plausible on its face.'"  *Id.* at 415 (internal citations omitted).  Plaintiffs' allegations here are likewise deficient, and their Non-Rad Claims (Count Four(A)-(E)) should be dismissed.

### 1. Plaintiffs have not plausibly alleged their properties have been impacted by non-radioactive materials.

Specifically, Plaintiffs plead no more than that some of their properties have been "impacted" or "contaminated with" unspecified "radioactive and toxic materials."  (Doc. 78, SAC ¶¶ 10, 14.)  Plaintiffs fail to identify by name a single "material" that has been found on their properties, when their properties were impacted, and by which defendants, and it is unclear from Plaintiffs' vague allegations whether any of these alleged "materials" are the non-radioactive ones that form the basis for their Non-Rad Claims, as opposed to the radioactive materials that form the basis for their PAA claim.  Indeed, even Plaintiffs are unsure whether their properties have been impacted by non-radioactive hazardous substances, as opposed to radioactive substances that are governed exclusively by the PAA—they assert their Non-Rad Claims only "[t]o the extent that the contamination of Plaintiffs' properties and/or other damages of the Plaintiffs is caused by non-radioactive releases, substances, and/or wastes[.]"  (*Id.* ¶ 136.) Plaintiffs' failure to provide any specificity regarding the alleged substances on their properties is fatal to their Non-Rad Claims.  *See Bellafaire*, 401 F. Supp. 3d at 414 ("Without knowing which substance is alleged to be the causation agent, there is no means of determining whether a claim has been stated against a particular [d]efendant.").

### 2. Plaintiffs fail to allege how any non-radioactive hazardous substances migrated from the Portsmouth Site to their properties or which Defendant, if any, is responsible.

Further, Plaintiffs fail to (1) plead how the alleged non-radioactive hazardous substances that form the basis of their Non-Rad Claims migrated from the Portsmouth Site to their

properties or (2) link Defendants' activities at the Portsmouth Site to any specific non-radioactive hazardous substance on their properties. The most Plaintiffs allege is that "[o]ne or more of the Defendants is responsible for PORTS continuing to release hazardous substances and/or wastes from the facility to offsite areas" via a "waste stream." (Doc. 78, SAC ¶ 79.) Plaintiffs fail to provide any detail regarding this alleged "waste stream," such as when the material was released, which Defendant is responsible for it, the method by which the stream disperses the waste to offsite areas, or the offsite areas that are affected. And critically, Plaintiffs do not allege that this "waste stream" has distributed non-radioactive hazardous substances onto their properties. Accordingly, Plaintiffs' Non-Rad Claims are implausible and should be dismissed. *See Brown*, 996 F. Supp. 2d at 641 ("[T]o the extent the trespass claim depends on the toxic substances dumped at the various dumping sites, the claim would still be implausible, given plaintiffs' failure to allege those substances: 1) migrated from the dumping ground to their properties; and 2) the presence, if any, of those substances on their property resulted in substantial damage."); *Bellafaire*, 401 F. Supp. 3d at 415 ("[T]he amended complaint does not allege 'how, when[,] or where such chemicals entered [Plaintiffs' properties[.]' Although a high degree of specificity is not required, Plaintiffs' causation theory remains wholly speculative.").

Likewise, Plaintiffs fail to plead "factual content that allows the court to draw the reasonable inference that [any Defendant] is liable for the misconduct alleged[.]" *Patterson v. Novartis Pharms Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011). Instead, they forward general, conclusory allegations like, "[o]ne or more of the Defendants' conduct, acts, and omissions, with respect to the hazardous substances and/or wastes, violated duties owed to Plaintiffs and the Class." (Doc. 78, SAC ¶ 139; *see also id.* ¶ 143 ("One or more of the Defendants' conduct as to hazardous substances and/or wastes, as set forth herein constitutes trespass . . ."); ¶ 145 ("One or

more of Defendants' conduct as set forth herein, as to hazardous substances and/or wastes, constitutes the tort of nuisance…"); ¶ 147 ("One or more of Defendants' conduct as set forth herein constitutes the tort of abnormally dangerous/ultra-hazardous activity . . ."); ¶ 151 ("One or more of the Defendants' tortious actions resulting in hazardous and toxic materials, substances and waste pollution have invaded the legal protections afforded Plaintiffs . . .").)

Plaintiffs' "shotgun approach to pleading . . . has been criticized by this [Court] and others[,]" *Douglas v. Ratliff*, No. 1:09-cv-060, 2009 U.S. Dist. LEXIS 96941, at *31 (S.D. Ohio 2009) (collecting cases), and Plaintiffs' allegations are insufficient to satisfy their pleading burden under *Twombly/Iqbal*. *See, e.g.*, *Ford*, 2016 U.S. Dist. LEXIS 186338, at *10 ("[S]imply alleging that Defendant was negligent in the construction, maintenance or operation of the paper mill does not suffice as such allegation still fails to include any facts to make the legal conclusion of negligence plausible."); *Red Hed Oil*, 292 F. Supp. 3d at 775 (dismissing claims because plaintiffs "do not link any manufacturer to the allegedly defective e-cigarette that caused the fire. Instead, they group together every conceivable possibility. This does not make Plaintiffs' claims plausible.").

### 3. Plaintiffs fail to plausibly allege damages.

Plaintiffs also fail to plausibly allege damages with respect to their Non-Rad Claims. Plaintiffs claim to "seek damages for loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including remediation, along with such injunctive and declaratory relief as necessary to protect human health and the environment." (Doc. 78, SAC ¶¶ 10-15.) Yet Plaintiffs fail to plead any facts regarding the damages allegedly incurred as a result of non-radioactive hazardous substances. For instance, Plaintiffs do not allege the nature and extent of the "property damage" they claim as a result of non-radioactive hazardous materials, nor do they plead how the presence

of any non-radioactive hazardous substances affected their use and enjoyment of their properties or caused them emotional distress or inconvenience.  As in *Ford* and *Brown*, Plaintiffs' allegations are insufficient to state a plausible claim.  *Ford*, 2016 U.S. Dist. LEXIS 186338, at *6 (dismissing claims where "Plaintiffs fail to plead any facts—such as how the particulates interfered with their use and enjoyment of the land or caused physical damage—that would make th[eir] conclusory allegations plausible."); *Brown*, 996 F. Supp. 2d at 639 (dismissing property-damage claims where plaintiffs did not "specify the type of damage to plaintiffs' varied properties or the extent of such damages.").  Therefore, Plaintiffs' Non-Rad Claims should be dismissed.

Additionally, Plaintiffs' vague allegations fail to satisfy the specific damage requirements of their trespass and nuisance claims.  A claim for indirect trespass by chemical invasion, as Plaintiffs allege here, requires a showing that the "invasion has caused either *substantial physical damage* to the land or *substantial interference* with [Plaintiffs'] reasonable and foreseeable use of the land."  *Baker*, 533 F. App'x at 523 (emphasis added); *see also Ford*, 2016 U.S. Dist. LEXIS 186338, at *4 ("[I]n an indirect trespass claim, such as Plaintiffs' claim based on air particulates, Plaintiffs must show . . . that the invasion has caused either substantial physical damage to the land or substantial interference with their reasonable and foreseeable use of the land.").  Moreover, a claim for nuisance requires "damages that are *real, material, and substantial*."  *Id.* at *11 (emphasis added); *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940, 975 (S.D. Ohio Mar. 10, 2015) ("A landowner may only recover damages for nuisance, however, for 'real, substantial, and material injury and not for trifling annoyance[s] and unsubstantiated or unrealized fears.") (internal quotation marks omitted).  The "mere detection" of the materials at issue is insufficient to establish the substantial

31

damage required. *Chevron*, 533 F. App'x at 522-23; *see also Ford*, 2016 U.S. Dist. LEXIS 186338, at *6-7 ("[S]ome amount of interference can be considered de minimis or irrational and thus not sufficiently 'substantial' to state a cause of action under Ohio law.'"); *Whirlpool*, 996 F. Supp. 2d at 641 (dismissing trespass claim when plaintiffs alleged the presence of benzaldehyde, but not that it caused "substantial damage"). As Plaintiffs have failed to plausibly allege even the *presence* of non-radioactive hazardous substances on their properties, they have fallen well short of their burden to plausibly plead substantial and material damages as a result of non-radioactive hazardous substances.

### 4. Plaintiffs have failed to identify an abnormally dangerous activity engaged in by Defendants in regard to non-radioactive materials.

Plaintiffs' claim for strict liability (Count Four(D)) is deficient for an additional basic reason. In order to plead a strict-liability claim, a plaintiff must allege that the defendant "'carries on an abnormally dangerous activity,' and plaintiffs 'suffered harm . . . resulting from that activity.'" *Whirlpool*, 996 F. Supp. 2d at 639. Where a plaintiff fails to allege which of the defendant's specific activities are abnormally dangerous or ultrahazardous, it cannot state a claim for strict liability. *See, e.g.*, *Elmer v. S.H. Bell Co.* 127 F. Supp. 3d 812, 828 (N.D. Ohio Aug. 31, 2015) (dismissing strict liability claim stemming from exposure to emissions from industrial processing when plaintiffs "did not indicate which of Defendant's specific activities Plaintiffs believe are ultrahazardous" because "[w]ithout such specificity, Plaintiffs' nuisance *per se* claim is ' . . . supported by mere conclusory statements.'" (quoting *Iqbal*, 556 U.S. at 663) (alterations in original)). Here, Plaintiffs offer no more than conclusory statements in support of their strict liability claim. (Doc. 78, SAC ¶ 147.) Moreover, they fail to even so much as identify a single activity by any Defendant that resulted in the release of non-radioactive materials—*let alone an ultrahazardous activity*. Plaintiffs fail to state a claim for strict liability.

### 5. Medical monitoring is not an independent cause of action.

Finally, Plaintiffs' Non-Rad Claim for medical monitoring (Count Four(E)) should be dismissed because "[m]edical monitoring does not exist . . . as an independent cause of action under Ohio law." *Hirsch v. CSX Transp., Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at *5 (N.D. Ohio Oct. 22, 2008); *accord Wilson v. Brush Wellman*, 103 Ohio St. 3d 538, 2004 Ohio 5847, 817 N.E.2d 59, 63 (Ohio 2004); *see also, e.g.*, *First Prop. Grp. V. Behr Dayton Thermal Prods., LLC*, No. 3:08cv00329, 2009 U.S. Dist. LEXIS 131400, at *26 (S.D. Ohio Apr. 22, 2009) ("Defendants contend that Plaintiffs' Count VI (Medical Monitoring) must be dismissed under Rule 12(b)(6) because Ohio law does not recognize an independent cause of action for 'medical monitoring.' This contention is well taken[.]"); *Elmer*, 127 F. Supp. 3d at 826 ("Ohio law does not recognize medical monitoring as an independent cause of action. Plaintiffs' claim for medical monitoring is therefore dismissed.") (internal citation omitted).

Moreover, while "Ohio law recognizes medical monitoring as a form of damages for an underlying tort[,]" *Hirsch*, 2008 U.S. Dist. LEXIS 124211, at *5, plaintiffs are only entitled to medical monitoring if they can "establish liability and an increased risk of disease." *Elmer*, 127 F. Supp. 3d at 826. Plaintiffs here have not alleged an increased risk of disease due to exposure to non-radioactive materials. Therefore, even if the Non-Rad Claims were otherwise sufficiently pleaded, Plaintiffs would not be entitled to medical monitoring as a form of damages for their Non-Rad Claims.

### F. Plaintiffs' claim for declaratory judgment should be dismissed.

Finally, Plaintiffs' claim for declaratory judgment pursuant to 28 U.S.C. § 2201 (Count Three(A)) should be dismissed for at least two reasons. First, this Court has dismissed claims for declaratory judgment where, as here, the plaintiffs' underlying substantive claims are subject to dismissal. *See, e.g.*, *Superior Pharm., Inc. v. Med Shoppe Int'l, Inc.*, No. 2:10-cv-207, at *42

(S.D. Ohio Feb. 10, 2011) ("Now that the court has determined that the claims of fraud and breach of contract … will be dismissed under Rule 12(b)(6), declaratory judgment would not settle the controversy or serve a useful purpose in clarifying the legal relations at issue."); *Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 U.S. Dist. LEXIS 45047, at *28-29 (S.D. Ohio Mar. 20, 2018) ("Because all of the Plaintiff's substantive claims are subject to dismissal … Doe's claim for declaratory judgment will be dismissed.").  Second, Plaintiffs' declaratory judgment claim improperly duplicates their other theories of liability.  *See Miami Valley Mobile Health Servs. V. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (dismissing claim for declaratory judgment as "duplicative," and explaining that a declaratory judgment "would not settle the entire controversy" because "[p]laintiffs would presumably still pursue their other causes of action, seeking monetary damages").

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, the Court should dismiss Plaintiffs' Second Amended Complaint (Doc. 78) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Richard D. Schuster*
Richard D. Schuster (0022813)
    Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, a true and correct copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's Electronic Filing System.  Parties may access the filing through the Court's system.

*/s/ Richard D. Schuster*
Richard D. Schuster

2/28/2020 35285839 V.80