## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**URSULA MCGLONE,** *et al.*,

      **Plaintiffs,**

                              **Case No. 2:19-cv-2196**
                              **Chief Judge Algenon L. Marbley**
      **v.**                          **Chief Magistrate Judge Elizabeth P. Deavers**

**CENTRUS ENERGY CORP.,**
*et al.*,

      **Defendants.**

## OPINION AND ORDER

    This matter is before the Court on the motion to quash subpoena filed by non-party Ohio Department of Health ("ODH").  (ECF No. 89.)  Plaintiffs Julia Dunham, Jason McGlone, Ursula McGlone, Adam Rider, and Brittani Rider ("Plaintiffs") have filed a Response.  (ECF No. 97.)  ODH has filed a Reply and, as ordered, Plaintiffs have filed a sur-reply.  (ECF Nos. 103, 110.)  For the following reasons, the motion to quash subpoena is **GRANTED.**

## I.

    This putative class action asserts claims for violations of the Price-Anderson Act and CERCLA, seeks declaratory judgment as to class rights and status, and asserts state law claims as to hazardous substances/wastes. The allegations of the Second Amended Complaint pertain to uranium enrichment operations at the 3,777-acre Portsmouth Site located in Pike County, Ohio. (ECF No. 78.)  Plaintiffs allege that these operations have expelled air laden with radioactive material and other metals that have been carried by wind throughout the area and can be found deposited in soils and buildings in and around Piketon, Ohio.  (*Id.*)

## II.

Plaintiffs served a subpoena on ODH seeking cancer data from ODH's database in order to study reported cases of cancer near the nuclear uranium enrichment facility.  This ODH database, the Ohio Cancer Incidence Surveillance System ("OCISS"), is the central cancer registry for the State of Ohio.

By way of background, ODH has submitted a declaration from Lynn Giljahn, the OCISS Registry Manager responsible for the OCISS.  (ECF No. 103-1, at ¶¶ 1 and 2.)  This declaration explains the genesis of the OCISS and explains its search processes.  Ms. Gillian states as follows.

Under Ohio law, with limited exceptions, certain healthcare providers are required to report cancer cases to ODH. (*Id*. at ¶¶ 6 and 7.)   The information maintained in the database includes an individual's street address, city, county, zip code, race, age, date of diagnosis, cancer type and prescribed treatment.  (*Id*., *see also* Ohio Administrative Code § 3701-4-02.)  The data are collected and housed in software made available from the CDC.  (*Id*. at ¶ 9.)

The databased contains protected health information ("PHI") as defined in Ohio Revised Code § 3701.17(A)(2), the confidentiality of which ODH is required to protect.  (ECF No. 13-1, at ¶¶ 10 and 11.)  The method ODH has developed to ensure protection against an improper release of PHI is a "Disclosure Limitation Standard."  (*Id*. at ¶ 10.)  Under this standard, if a query is too small, and the confidentiality of personal health information is at risk, the data cannot be disclosed.  (*Id*. at ¶ 12.)

OCISS provides public view of its data in Ohio's Public Warehouse for users to customize their own searches and generate reports.  (ECF No. 13-1, at ¶ 15.)  The applicable software program applies the Disclosure Limitation Standard to all reports and if PHI is present, that data will not be shown.  (*Id*.)   OCISS also provides secure non-public access to researchers

2

who obtain ODH Institutional Review Board ("IRB") approval. (*Id*. at ¶¶ 8, 16, and 17.) Once approval is obtained, upon entering into a data user agreement, a researcher is allowed unlimited access to the OCISS data for the identified analysis. (*Id*. at ¶¶ 16 and 17.) Under this scenario, a researcher could conduct any IRB approved search and generate a report. (*Id*. at ¶ 17.) A researcher, however, would be required to apply the Disclosure Limitation Standard to protect any PHI before publishing search results. (*Id*.)

The OCISS database includes nearly 1.5 million records. (ECF No. 103-1, at ¶ 12.) Its data are downloaded and analyzed using statistical software and results are frequently presented as a cross-tabulation of categorical variables in tabular form with multiple dimensions, i.e., cells. (*Id*.) As the number of cells increases, the raw data in each cell is smaller. (*Id*.) Eventually, if the data in a cell meets the Disclosure Limitation Standard, that information becomes PHI and its disclosure is a violation of Ohio Revised Code § 3701.17(A)(2). (*Id*.)

The criteria in Plaintiffs' requested search are census tracts in 11 counties (131), primary cancer site (26), two time periods (2), eleven age ranges (11) gender (2). (ECF No. 103-1 at ¶ 13; *see also* Subpoena, ECF No. 97, Exhibit 8.) The number of cells generated by this search would be 149,864.[1] (*Id*.) To generate Plaintiffs requested tables would take between 24 and 48 hours of an ODH employee's working hours. (*Id.*) Before releasing the data in Plaintiffs' requested format, ODH would review each cell for compliance with the Disclosure Limitation Standard. (*Id.* at ¶ 14.) The time to complete the work is difficult for ODH to estimate but the time commitment would increase exponentially. (*Id.*)

---

[1] In their sur-reply Plaintiffs reiterated the representation made during the July 7, 2020 status conference with the Court, that Plaintiffs and ODH agree that Plaintiffs' subpoena seeks data for 9 counties, not 11 counties. Using the formula referenced in ODH's Reply brief, this yields 110,968 cells of data, rather than 149,864 cells. (ECF No. 110, at p. 1.)

### III.

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted).  Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Under Rule 45, parties may command a nonparty to, *inter alia,* produce documents. Fed. R. Civ. P. 45(a)(1).  Rule 45 further provides that "the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).  Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics,* 275 F.R.D. 251, 253 (S.D. Ohio 2011).

**IV.**

ODH moves to quash the subpoena on two grounds:[2]  (1) the requested data is not found in a currently existing document and (2) a subpoena is unnecessary because secure, non-public access to the data is available to Plaintiffs by other means.  In short, ODH explains that the subpoena is really a "detailed search request" and an "attempt to circumvent" the ODH procedures for obtaining secure access as outlined above.  The Court will address each argument in turn.

**A.**

There is no dispute here that the information Plaintiffs seek does not currently exist in the format requested.  There also is no question that ODH cannot be required to produce a document that does not exist.  *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 97 n.10  (S.D. Ohio 2013) ("Of course the Court cannot require [non-party] Anthem to produce something that does not exist…."); *see also Taylor v. Kilmer*, No. 18 CV 7403, 2020 WL 606781, at *3 (N.D. Ill. Feb. 7, 2020) (granting motion to quash to extent subpoenas requiring non-parties to generate reports or otherwise create documents that did not exist); *Mir v. L-3 Commc'ns Integrated Sys.,* L.P., 319 F.R.D. 220, 227 (N.D. Tex. 2016) (recognizing that Rule 45 does not contemplate that a non-party will be forced to create documents that do not exist);  *Crawford v. Biolife Plasma Servs. LP*, No. 10 CV 24, 2011 WL 2183874, at *4 (N.D. Ind. June 3, 2011) ("The power to subpoena documents from non-parties

---

[2] ODH initially moved to quash the subpoena citing, in part, confidentiality concerns relating to the potential release of PHI.  In Reply, ODH has clarified that it is not attempting to prevent Plaintiffs from studying the OCISS data.  ODH acknowledges that its IRB process allows access to non-public information with certain obligations.  Accordingly, under ODH's revised framing of its argument, the Court will not address confidentiality as an independent basis for quashing the subpoena.

during discovery is limited to records that already exist and are within the nonparty's possession…").

However, courts also have held that a requested search "requiring a party to query an existing database to produce reports for opposing parties" does not equate to requiring the creation of a new document. *Mervyn v. Atlas Van Lines, Inc*., No. 13 C 3587, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015); *see also Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, No. 3:18-CV-705 (VLB), 2020 WL 401776, at *8 (D. Conn. Jan. 24, 2020) (requiring a party to query an existing dynamic database for relevant information is not the same as requiring the creation of completely new documents); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.,* 325 F.R.D. 36, 51 (E.D.N.Y. 2018) (same) (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013). This reasoning also has been extended to requests to non-parties. *Gonzales v. Google, Inc*., 234 F.R.D. 674, 683 (N.D. Cal. 2006) ("As a general rule, non-parties are not required to create documents that do not exist, simply for the purposes of discovery, … however, Google has not represented that it is unable to extract the information requested from its existing systems) (citing *Insituform Tech., Inc. v. Cat Contracting, Inc.,* 168 F.R.D. 630, 633 (N.D. Ill.1996)).

The question then is whether requiring ODH to perform Plaintiffs' requested search is the same as requiring ODH to create a new document. The record before the Court on this issue is not particularly detailed.  On one hand, ODH acknowledges that the information Plaintiffs seek currently exists in the OCISS database. Further, ODH does not provide any evidence or argue that it would need to undertake any additional technological processes to extract this data.   In fact, according to Ms. Giljahn's explanation regarding the number of cells that the search would generate and the amount of ODH employee work time required to perform the search, such a

search is possible.  (ECF 103-1, at ¶ 13.)  Under this scenario, the above caselaw suggests that ODH's compliance with the subpoena would not require the creation of a new document.

ODH further explains, however, that its responsibility does not end upon completion of the search.  Rather, ODH asserts that, at that point, it must manually apply the required application of the Disclosure Limitation Standard to determine whether information contained in each cell constitutes PHI.  ODH does not explain how this step serves to create a new document and the Court is not otherwise convinced that it does.  Accordingly, the Court declines to conclude, on this very limited record, that responding to the subpoena will require ODH to create a document that currently does not exist.   Accordingly, the motion to quash will not be granted on this ground.

**B.**

ODH's second argument is that the motion to quash should be granted because Plaintiffs have the ability to undertake the requested search themselves using the IRB application process. In short, ODH contends that the subpoena should be quashed because the information sought is otherwise available to Plaintiffs.  Although not particularly well articulated, ODH appears to be relying on Fed. R. Civ. P. 26(b)(2)(C)(i) as a basis for quashing Plaintiffs' subpoena.

"The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Baumer v. Schmidt*, 423 F.Supp.3d 393, 398 (E.D. Mich. 2019) (citing *Callidus Capital Corp. v. FCA Grp.*, No. 14-10484, 2018 WL 1556231, at *3 (E.D. Mich. Mar. 30, 2018)).   Generally, under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). However, the Court is obligated to limit discovery when "[it] is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

7

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Further, "[a]lthough Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.,* 315 F.R.D. 220, 222 (E.D. Mich. 2016) (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed. Cir. 1993)).

Applying these principles, courts routinely quash subpoenas directed to non-parties where the discovery sought was obtainable from a party to the litigation. *See, e.g., Recycled Paper Greetings, Inc. v. Davis*, No. 1:08-MC-13, 2008 WL 440458, at *4-5 (N.D. Ohio Feb. 13, 2008) (granting, in part, a motion to quash subpoena, where the majority of the relevant documents could have or had been produced by a party to the litigation)); *Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, No. 1:11-CV-2074, 2012 WL 187979, at *2 (N.D. Ohio Jan. 23, 2012) (granting motion to quash where defendants could obtain from the plaintiff many of documents that they requested from non-party).

Here, the information is available not from a party to the litigation but from the precise non-party state agency that Plaintiffs have subpoenaed. Plaintiffs explain, however, that they "are unwilling to go through ODH's IRB process, in part, because there is no guarantee that ODH will ultimately provide the requested documents." (ECF No. 97 at p.13 n.10.) [3] In their sur-reply, Plaintiffs further explain that the IRB application process requirements are "lengthy, costly and time-consuming" and compliance may be "impossible for an institution-less expert." (ECF No. 110 at p. 4.) They further contend that there is nothing preventing the IRB from

---

[3]Plaintiffs also do not explain why they have not undertaken a public search of the OCISS database if, as they believe, the Disclosure Limitation Standard does not apply to their search request. (*See* ECF No. 97, at p. 8 "the policy established a mathematical calculation which is not even violated here.")

postponing the application or creating other hindrances. (*Id.*) Plaintiffs further assert, without argument or authority, that ODH has not provided a justification for the IRB process and that "there is no legal basis to require IRB review." (ECF No. 97, at p.13 n. 10; ECF No. 110 at p. 4.)

At this point, Plaintiffs' arguments are strictly conjecture despite their claim to the contrary. Certainly, the record on this issue also could be more developed. However, two things are clear. First, ODH's IRB process exists to allow approved applicants non-public access to the OCISS database. Second, Plaintiffs have chosen not to pursue an IRB application to obtain this access based strictly on their assumption that ODH will deny it. Under these circumstances, Plaintiffs' subpoena strikes the Court as premature. That is, until Plaintiffs actually have been foreclosed from the IRB process, the potential exists that they will be able to perform their own OCISS database search. At this point, a subpoena requiring ODH to perform this search for Plaintiffs and produce the results is unnecessary. Considering these very limited facts, and in light of the principles outlined above, the Court grants the motion to quash.

The cases cited by Plaintiffs do not mandate a different result. To the extent Plaintiffs rely on cases outside this Circuit, they are not binding on this Court. Further, the cases from within this Circuit are readily distinguishable. For example, in *In re Bankers Trust Co*., 61 F.3d 465 (6th Cir. 1995), as the Sixth Circuit described, the intent of the regulation at issue was the non-disclosure of information and testimony in direct contravention of the Federal Rules of Civil Procedure. *Id.* at 470. According to ODH, that is not the intent of the IRB process – in fact the intent is just the opposite – to allow for non-public access to otherwise secure information. Further, in *Gischel v. University of Cincinnati*, No. 1:17-cv-745, 2018 WL 9945170 (S.D. Ohio

June 26, 2018) (Dlott, J.), the *Touhy*[4] regulation at issue addressed requirements for the disclosure of records or information by the Department of Education.  Judge Dlott concluded that in the conflict between the DOE's Touhy regulations prohibiting disclosure and the Federal Rules of Civil Procedure, the Federal Rules prevail.  *Id*. at *4.  Again, it bears repeating, this is not the situation here.  Rather, in this case, a process specifically designed to allow approved applicants direct access to secure information exists but Plaintiffs have declined to undertake the application process based only on speculation.

Moreover, despite Plaintiffs' characterization of ODH's motives, ODH represents to the Court that it is not blocking Plaintiffs' access to the OCISS cancer data.  Further, the Court does not view ODH's recognition that a protective order can be narrowly tailored as fully dispositive of the issue here.  As the Court understands ODH's position, privacy concerns are only part of the issue.   ODH also expresses concern over the amount of employee time that will be required to comply with Plaintiffs' subpoena – time that ODH suggests should not be required to be expended by an ODH employee when a procedure exists whereby Plaintiffs could undertake the very same search.  Plaintiffs appear to dismiss this particular concern.

Equally unpersuasive to the Court is Plaintiffs' argument that because the IRB application process ultimately may lead back to the Court, it is more efficient to simply enforce the subpoena now.  Simply stated, Plaintiffs chose to forego an established process designed to allow non-public, secure database access and they bear the consequences of that decision.  However, at this point, the Court is not unmindful of Plaintiffs' concerns regarding IRB approval and timeframe.  Accordingly, Plaintiffs and ODH are directed to meet and confer within the next

---

[4]  Under *Touhy v. Ragen*, 340 U.S. 462, 468–69 (1951), federal agencies have discretion to restrict the testimony of employees and the production of agency documents through promulgated regulations.

fourteen days in an effort to address these issues and report back to the Court on the progress of their discussions. Should those discussion prove unproductive, a conference with the Court may be sought at that time.

For all of these reasons and based on the current record, the Motion to Quash (ECF No. 89) is **GRANTED.** Plaintiffs and ODH are **DIRECTED** to meet and confer within fourteen days and report back to the Court on the progress of their discussions.

**IT IS SO ORDERED.**


**DATED: August 4, 2020**

_/s/ Elizabeth A. Preston Deavers_____
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**