**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| URSULA MCGLONE, *et al.* | ) | Civil Action No. 2:19-cv-02196-ALM-EPD |
| | ) | |
| Plaintiffs, | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| v. | ) | Chief Magistrate Judge |
| | ) | Elizabeth A. Preston  Deavers |
| CENTRUS ENERGY CORP., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED
COMPLAINT**

---

Under Fed. R. Civ. P. 12(b)(6), Defendants Centrus Energy Corp., United States Enrichment Corporation, Uranium Disposition Services, LLC, BWXT Conversion Services, LLC, Mid-America Conversion Services, LLC, Bechtel Jacobs Company, LLC, LATA/Parallax Portsmouth, LLC, and Fluor-BWXT Portsmouth, LLC ( "Defendants") move to dismiss the Fourth Amended Complaint of Plaintiffs Ursula McGlone, Jason McGlone, L.M., G.M., B.M., E.M., M.M., Adam Rider, Brittani Rider, M.R., C.R., L.R., L.R., Joshua Ross, Rachel Ross, J.R., N.R., Adam Ross, Patsy Brownfield, Mickey Tackett, and Heather Tackett ("Plaintiffs") for failure to state a claim upon which relief can be granted.  Under S.D. Ohio Civ. R. 7.1(b)(2), Defendants request oral argument because this action is of importance to the public in that it pertains to the local community and ongoing activities on behalf of the United States Government.  A memorandum in support is attached.

Respectfully submitted,

*/s/ Richard D. Schuster*
Richard D. Schuster (0022813)
     Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Wesley R. Abrams (0095746)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com

*Counsel for Defendants*

## Table of Contents / Authorities

Page

I.     Preliminary Statement.................................................................................1

II.     Background ...............................................................................................3

III.     Argument .................................................................................................5

     A.     The Court should dismiss Plaintiffs' PAA claims ...................................5

         1.     Plaintiffs fail to allege the elements of a PAA claim...................................5

As the Court has held, "[t]o prevail on a claim under the Price-Anderson Act, Plaintiffs must establish four elements: (1) Defendants released radiation into the environment in excess of federal regulatory limits; (2) Plaintiffs were exposed to this radiation; (3) Plaintiffs have injuries; and (4) radiation was the cause of those injuries."  Plaintiffs plausibly allege neither of these required elements.

*McGlone v. Centrus Energy Corp.* ("*McGlone I*"), No. 2:19-cv-02196, 2020 U.S. Dist. LEXIS 135784, at *8-15 (S.D. Ohio July 31, 2020)

*Lokos v. Detroit Edison*, 67 F. Supp. 2d 740, 743 (E.D. Mich. 1999)

         a.     Neither Plaintiffs nor their properties were exposed to radiation in excess of the governing federal limit............................6

            1)     Plaintiffs' hypothetical dose calculations do not save their PAA claims........................................................8

            2)     EPA standards do not apply in PAA cases ........................12

            3)     Publicly-available government environmental reports refute Plaintiffs' PAA claims regardless ..............15

The NRC's 0.1 rem (100 millirem) per year limit, found in 10 C.F.R. § 20.1301(a), sets the standard of care for Plaintiffs' PAA claims.  No Plaintiff plausibly alleges that they or their properties have received a total effective dose of radiation in excess of 0.1 rem (100 millirem) in a year as a result of any Defendants' operations at PORTS.  Plaintiffs rely primarily on conclusory allegations that the Court previously rejected.  Although Plaintiffs attempt to support their PAA claims with hypothetical dose calculations, the calculations are facially flawed and, in any event, confirm that Plaintiffs cannot meet the governing NRC standard and state a PAA claim.  Plaintiffs also argue that EPA standards govern their PAA claims, but this Court, the Sixth Circuit, and other courts to consider the issue have held that the NRC standard—not EPA standards—apply.  Finally, and regardless of the governing standard, publicly-available

i

documents (which the Court can consider at this stage) confirm that no regulatory dose limits have been exceeded at PORTS, and that Plaintiffs' have no PAA claims.
*Basset v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)

*TNS, Inc. v. NLRB*, 296 F.3d 384, 398 (6th Cir. 2002)

*McGlone v. Centrus Energy Corp.* ("*McGlone I*"), No. 2:19-cv-02196, 2020 U.S. Dist. LEXIS 135784, at *8-15 (S.D. Ohio July 31, 2020)

10 C.F.R. § 20.1301(a)

b.    Plaintiffs fail to allege that they have suffered injuries compensable under the PAA..........................................................17

Even if Plaintiffs' exposure allegations were not legally insufficient, Plaintiffs' PAA claims still fail because no plaintiff plausibly alleges a compensable injury under the PAA as a result of any excess radiation exposure. The PAA provides the exclusive list of compensable injuries: "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property . . . ." No Plaintiff plausibly alleges a bodily injury—only an increased risk of bodily injury, which is insufficient. And no Plaintiff alleges property damage tied to radiation exposure in excess of the governing regulatory limit. Indeed, many Plaintiffs are minor children who own no property and thus cannot plausibly allege property damage.

*Ranier v. Union Carbide Corp.*, 402 F.3d 608, 618-19 (6th Cir. 2005)

*Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002)

*Windsor Realty & Mgmt. v. Ne. Ohio Reg'l Sewer Dist.*, 8th Dist. Cuyahoga No. 107597, 2019-Ohio-3096, ¶ 14

*Snell v. Katafias*, No. 17440, 1999 Ohio App. LEXIS 997, at *7-8 (2d Dist. Mar. 19, 1999)

42 U.S.C. § 2014(q)

2.    Plaintiffs' PAA claims are facially time barred as to several Defendants ...............................................................................19

a.    Plaintiffs have alleged no facts to justify tolling the statute of limitations ................................................................................21

b.    No other exception to the statute of limitations applies.................22

Plaintiffs' PAA claims are also facially untimely and barred under R.C. 2305.09's applicable four-year statute of limitations. Plaintiffs' own allegations establish that multiple Defendants, including Bechtel Jacobs Company, LLC ("Bechtel Jacobs"), Uranium Disposition Services ("UDS"), and LATA/Parallax Portsmouth, LLC ("LATA/Parallax") have been absent

from PORTS since 2010 or earlier, placing Plaintiffs' claims (filed in 2019) well outside the limitations period.  Plaintiffs have not met their burden to plead why the applicable statutory limitations period should be tolled or to establish any other exception to the statute of limitations—nor can they.

*Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)

*Day v. NLO, Inc.*, 3 F.3d 153, 154 n.1 (6th Cir. 1993)

*Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)

*Sexton v. City of Mason*, 117 Ohio St. 3d 275, 282, 2008-Ohio-858, 883 N.E.2d 1013

*Kramer v. Angel's Path, LLC*, 174 Ohio App. 3d 359, 2007-Ohio-7099, 882 N.E.2d 46 (6th Dist.)

R.C. 2305.09

B.    The Court should dismiss Plaintiffs' state-law claims in part ...............................24

    1.    The minors have no viable state-law claims ...............................................24

    2.    Plaintiffs' state-law claims are facially time barred as to certain Defendants ................................................................................................25

The Court should also dismiss Plaintiffs' state-law tort claims in part.  Like Plaintiffs' PAA claims, Plaintiffs' state-law claims hinge on alleged property damage.  Again, many Plaintiffs are minor children who own no property and thus cannot plausibly allege property damage. Finally, Plaintiffs' state-law claims against Bechtel Jacobs, UDS, and LATA/Parallax are untimely under R.C. 2309.05 for the same reasons that their PAA claims are untimely.

*Clay v. Sotheby's Chi., Inc.*, 257 F. Supp. 2d 973, 982 (S.D. Ohio 2003)

*Lame v. E.G. Sys. Inc.*, 8th Dist. Cuyahoga No. 101566, 2015-Ohio-686, ¶ 22

*Gevelaar v. Millennium Inorganic Chems.*, 11th Dist. Ashtabula No. 2012-A-0013, 2013-Ohio-435, ¶ 31

R.C. 2309.05

IV.    Conclusion .....................................................................................................................26

## Memorandum in Support

### I.      Preliminary Statement

Plaintiffs' Fourth Amended Complaint ("4thAC") fails to cure the deficiencies of the earlier complaint that the Court dismissed.  The centerpiece of Plaintiffs' 4thAC remains a public liability action under the Price-Anderson Act ("PAA").  Plaintiffs—most of whom are minor children and own no property—allege that radiation released from a U.S. Department of Energy ("DOE") site in Piketon, Ohio (commonly called "PORTS") has damaged their properties.  As the Court held in granting Defendants' earlier motion to dismiss, to state a PAA claim, each Plaintiff must plausibly allege that (1) each Defendant exposed them to radiation in excess of permissible numerical dose limits set by the Nuclear Regulatory Commission ("NRC") in 10 C.F.R. § 20.1301(a); and (2) such overexposure caused each Plaintiff to suffer a compensable injury under the PAA.  Because no Plaintiff plausibly alleges these elements, the Court should dismiss Plaintiffs' PAA claims.

No Plaintiff plausibly alleges that any Defendant exposed them to radiation in excess of the NRC's 0.1 rem (100 mrem)/year dose limit.  To avoid this deficiency, Plaintiffs ask the Court to change the NRC standard that it found applicable to their PAA claims and apply a U.S. EPA standard referenced in 10 C.F.R. § 20.1301(d).  There is no basis for the Court to change its prior decision.  In fact, the only case to address the EPA standard in a PAA case refused to apply it, which matches Sixth Circuit case law unanimously holding that the NRC standard applies. Beyond relying on an incorrect standard, Plaintiffs forward hypothetical (and incorrect) radiation dose calculations that do not plausibly establish that *any* Defendant exposed *any* Plaintiff to 0.1 rem (100 mrem) of radiation in a year.  In fact, Plaintiffs' hypothetical dose calculations confirm that there is no actual Plaintiff who received a dose even close to the governing NRC standard.

Furthermore, no Plaintiff alleges an injury compensable under the PAA, which is independently fatal to Plaintiffs' PAA claims.   Only bodily injuries and property damage are actionable injuries—allegations of annoyance, inconvenience, emotional distress, and increased risk of bodily harm are not compensable under the PAA.  Plaintiffs here allege no actual bodily injury, instead focusing on allegations of a general increased risk of harm.  Plaintiffs also fail to allege any cognizable property damage.  Indeed, most of Plaintiffs are minor children who do not own the properties at issue and cannot plausibly assert a PAA claim for property damage. Plaintiffs' failure to adequately plead the elements of their PAA claims requires dismissal.

Moreover, as to several Defendants, Plaintiffs' PAA claims are facially untimely and barred under the applicable four-year statute of limitations.  Plaintiffs' own allegations establish that multiple Defendants, including Bechtel Jacobs Company, LLC ("Bechtel Jacobs"), Uranium Disposition Services ("UDS"), and LATA/Parallax Portsmouth, LLC ("LATA/Parallax") have been absent from PORTS since 2010 or earlier, placing Plaintiffs' claims (filed in 2019) well outside the limitations period.  Plaintiffs have not met their burden to plead why the limitations period should be tolled or to establish any other exception to the statute of limitations—nor can they.  The Court should dismiss Plaintiffs' PAA claims against these Defendants irrespective of Plaintiffs' failure to plead the elements of their PAA claims.

Plaintiffs' state-law claims about non-radioactive materials (Counts 2(A)-2(D)) suffer from similar problems.  Again, Plaintiffs' allege damage to real property.  But Plaintiffs who are minor children have no basis to assert state-law tort claims about property that they do not own. And Plaintiffs' state-law claims against Bechtel Jacobs, UDS, and LATA/Parallax are untimely for the same reasons that their PAA claims are untimely.

II.     **Background**

DOE owns a 3,777-acre site in Pike County, Ohio.  PORTS, one of the three formerly-operated gaseous diffusion plants in the United States, is located there.  4thAC, Doc. 142 ¶¶ 2, 32.  Uranium was enriched at PORTS until 2001.  *Id.* ¶ 34.  Environmental remediation began at PORTS in 1989 and continues today under a Consent Decree entered by this Court, various other federal and state administrative orders, and the supervision of Ohio EPA.  *Id.* ¶¶ 42-46.

PORTS is now being decontaminated and decommissioned.  *Id.* ¶¶ 32-46.  Each of the Defendants was, at some point from 1998[1] to present, responsible for at least one of these activities at PORTS:  uranium enrichment operations, depleted uranium hexafluoride conversion, or environmental remediation.  *Id.*  And each of the Defendants' operated or operate at PORTS under the federal government's authority.  *See* 42 U.S.C. § 2210(a); 42 U.S.C. § 2297h-5(f); 42 U.S.C. § 2210(d)(1)(A); *see also* Docs. 58-1-58-8.

Nearly two years ago, Plaintiffs filed this putative class-action lawsuit against Defendants, asserting state-law claims based on the alleged release of radioactive materials from PORTS.  *See generally* Compl., Doc. 1.  Defendants moved to dismiss because the PAA preempted Plaintiffs' state-law claims.  Doc. 58.  In response, Plaintiffs amended their complaint twice and asserted a PAA claim along with state-law tort claims based on radioactive and non-radioactive materials.  First Am. Compl., Doc. 64; Second Am. Compl., Doc. 78.

Defendants moved to dismiss Plaintiffs' second amended complaint for failure to state a claim.  The Court granted Defendants' motion in part.  Among other things, the Court held that Plaintiffs failed "to state a cognizable claim against Defendants under the" PAA because they did not "allege that they or their properties were exposed to radiation levels in excess of" the NRC's

---

[1] Defendant United States Enrichment Corporation did not exist until the privatization of a government corporation was completed in 1998 pursuant to the USEC Privatization Act, 42 U.S.C. § 2297h-10.

0.1 rem (100 mrem)/year limit in 10 C.F.R. § 20.1301. *McGlone v. Centrus Energy Corp.* ("*McGlone I*"), No. 2:19-cv-02196, 2020 U.S. Dist. LEXIS 135784, at *8-15 (S.D. Ohio July 31, 2020). As a result, the Court dismissed Plaintiffs' PAA claims with prejudice. *Id.* at *49.

After the Court dismissed their PAA claims, Plaintiffs moved for leave to amend their complaint a third time. Mot. Leave Am., Doc. 119. Defendants opposed Plaintiffs' motion because the proposed amendment was futile. Opp. Mot. Leave Am., Doc. 125. After their motion for leave was fully briefed, Plaintiffs withdrew the motion and moved for leave to amend their complaint a fourth time. Docs. 139, 140. The Court granted Plaintiffs leave to file their 4thAC without weighing in on the plausibility of Plaintiffs' claims. Doc. 141.

In their 4thAC, Plaintiffs (12 of whom are minors) allege that they live two or three miles from PORTS, and that their properties have been impacted by or are "within the zone of impact" of "radioactive and toxic materials" allegedly emitted from PORTS. 4thAC, Doc. 142 ¶¶ 1, 11-18. Plaintiffs assert PAA claims based on the alleged release of radioactive materials and state-law claims for negligence, trespass, nuisance, ultra-hazardous activity/absolute liability/strict liability based on the alleged release of non-radioactive materials. *Id.* ¶¶ 111-211. They seek to recover for "loss of use and enjoyment of property, diminution of property value, annoyance, inconvenience, emotional distress, punitive and property damage, including remediation, along with such injunctive relief and declaratory relief as necessary to protect human health and the environment." *Id.* ¶ 11. And, as putative class representatives, Plaintiffs seek to represent (1) "[a]ll property owners within a 5-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence"; (2) "[a]ll residents and former residents with more than one year of residence within a 5-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence"; (3) "[a]ll former students at

Zahn's Corner Middle School from 1993 to its closure as well as their parents"; and (4) "[a]ll property owners with property within 500 yards of the Scioto River downstream of a point 500 yards upstream of Piketon until its confluence with the Ohio River at Portsmouth." *Id.* ¶ 93.

## III.    Argument

To survive a motion to dismiss, "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Plaintiffs must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, n.3 (2007). They may not rely on "conclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citations omitted).  Nor may they rely on "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### A.    The Court should dismiss Plaintiffs' PAA claims.

#### 1.    Plaintiffs fail to allege the elements of a PAA claim.

As the Court held in *McGlone I*, "[t]o prevail on a claim under the Price-Anderson Act, Plaintiffs must establish four elements: (1) Defendants released radiation into the environment in excess of federal regulatory limits; (2) Plaintiffs were exposed to this radiation; (3) Plaintiffs have injuries; and (4) radiation was the cause of those injuries." *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *7-8; *see also Lokos v. Detroit Edison*, 67 F. Supp. 2d 740, 743 (E.D. Mich. 1999) (explaining "two essential elements" of PAA claim "(1) [plaintiff's] exposure exceeded the federal numerical dose limits; and (2) such overexposure caused her to suffer a compensable injury under the" PAA).  Although this a putative class action, the Court looks only to the named Plaintiffs' allegations to determine whether the 4thAC states a PAA claim. *See Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, No. 2:19-cv-4262, 2021 U.S. Dist. LEXIS 40258, at

*9-10 (S.D. Ohio Mar. 4, 2021) (Marbley, J.).  "[T]he generalized allegations of unnamed plaintiffs or putative class members" are irrelevant; "a named plaintiff must have a valid cause of action against each defendant."  *Id.* (internal quotation marks omitted) (citation omitted).

Here, no Plaintiff plausibly alleges that any Defendant exposed them or their properties to radiation in excess of the governing federal limit.  And even if any Plaintiff had alleged such exposure, no Plaintiff alleges an injury compensable under the PAA.  Each of these pleading failures is independently fatal to Plaintiffs' PAA claims.

### a. Neither Plaintiffs nor their properties were exposed to radiation in excess of the governing federal limit.

This Court held that the NRC's 0.1 rem (100 millirem) per year limit, found in 10 C.F.R. § 20.1301(a), sets the standard of care for Plaintiffs' PAA claims.  *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *8-9, n.2, 13.  The Sixth Circuit and every other court to consider the issue agrees.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 398 (6th Cir. 2002) ("NRC safety regulations conclusively establish the duty of care owed by defendants in radiation safety personal injury cases governed by the . . . Price-Anderson Act."); *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1248 (E.D. Wash 2002) (applicable NRC standard "requires licensees to conduct operations so that the total effective dose equivalent to individual members of the public from the licensed operation does not exceed 0.1 rems (1 millisievert) in a year"); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 809 (N.D. Ill. 1999) ("the standard of care is set forth by the [NRC's] Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question").  The NRC standard is "based upon years of extensive scientific and technical investigation and . . . experience with practical problems of radiation protection." *In re TMI Gen. Pub. Utils. Corp.*, 67 F.3d 1103, 1111-15 (3d Cir. 1995).  It "represent[s] a

consensus as to the measures generally desirable to provide appropriate degrees of safety[,]" and it is a "conservative standard." *Id.*

Under the NRC standard, Defendants must limit "[t]he total effective dose equivalent to members of public . . . , exclusive of the dose contributions from background radiation" to "0.1 rem [or 100 mrem] in a year . . . ." 10 C.F.R. § 20.1301(a). To adequately plead a violation of the NRC standard and state a PAA claim against each Defendant, "*each* Plaintiff must establish that" their person or property "was exposed" to 0.1 rem (100 mrem) of radiation in a year, "exclusive of . . . background radiation," as a result of *each* Defendants' operations at PORTS. *Good*, 222 F. Supp. 2d at 1250 (emphasis in original). For perspective, "[a]ccording to the National Council on Radiation Protection and Measurements (NCRP), the average annual radiation dose per person in the U.S. is ***620 millirem***." U.S. EPA, *Radiation Sources and Doses*, https://www.epa.gov/radiation/radiation-sources-and-doses (emphasis added); *see also* U.S. NRC, *Doses in Our Daily Lives* ("On average[,] Americans receive a radiation dose of about 0.62 rem (620 millirem) each year[,]" half of which "comes from natural background radiation."), https://www.nrc.gov/aboutnrc/radiation/around-us/doses-daily-lives.html.[2]

Here, no Plaintiff plausibly alleges that they or their properties have received a total effective dose of radiation in excess of 0.1 rem (100 millirem) in a year as a result of any Defendants' operations at PORTS. As in their second amended complaint, Plaintiffs rely on

---

[2] Although not attached to the 4thAC, the Court can consider such reports in evaluating Defendants' motion to dismiss. First, the Court can consider the reports because they are publicly-available, government documents. *See Tenn. Clean Water Network v. TVA*, 206 F. Supp. 3d 1280, 1290 (M.D. Tenn. 2016). Second, the Sixth Circuit has "taken a liberal view of what matters fall within the pleadings" for purposes of Rule 12(b)(6), and extrinsic material should be considered if it "fill[s] in the contours and details of [the] complaint." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). "[C]ourts consider the complaint as well as 'documents incorporated into the complaint by reference . . . .'" *Bowers v. Wynne*, 615 F.3d 455, 470 (6th Cir. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd*., 551 U.S. 308, 322 (2007)). Thus, where the plaintiff fails to attach a "pertinent document" to the complaint, as Plaintiffs have failed to do here, the "defendant may introduce the exhibit as part of his motion attacking the pleading." *Thomas v. Publishers Clearing House, Inc*., 29 F. App'x 319, 322 (6th Cir. 2002).

vague, conclusory allegations like, "[u]pon information and belief, Defendants' activities have caused and/or contributed to radioactive contamination offsite and onto Plaintiffs' properties in levels that exceed levels allowed under federal law, and specifically the PAA." 4thAC, Doc. 142 ¶ 60; *see also id.* ¶¶ 9, 125. Plaintiffs also double down on allegations that their properties have been "impacted" by radioactive materials or that they are otherwise within the "zone of impact." *Id.* ¶¶ 11-18. In its prior decision, the Court rejected these allegations as insufficient to state a PAA claim. *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *11-12; *see also Adkins*, 960 F. Supp. 2d at 773 ("Although plaintiffs allege[d] in a general sense the violation of federal safety standards . . . they totally fail[ed] to provide any factual allegations which would support the allegation of the breach of an applicable federal safety standard."). The Court need not accept the allegations now.

### 1) Plaintiffs' hypothetical dose calculations do not save their PAA claims.

Plaintiffs now try to support their baseless PAA allegations with hypothetical dose calculations. *See generally* Ex. 2, Doc. 142-2. These calculations purport to represent the radiation doses to **hypothetical** children (ranging from 3-months old, 1-year old, 5-years old, 10-years old, and 15-years old) who ingest 200 milligrams of specific soil every day for 350 days straight on the properties at issue and adults who ingest 100 milligrams of that soil. *Id.* at PageID # 2167 ("Table 2 shows the dose rates based on the ingestion of the 6 soil samples for each of the 6 ICRP age groups."). There are several problems with Plaintiffs' hypotheticals, which Defendants highlight in detail below. But ultimately, they confirm that Plaintiffs cannot meet the governing NRC standard, and that the Court should dismiss Plaintiffs' PAA claims.

For starters, Plaintiffs fail to plausibly tie their hypotheticals to reality. As the Supreme Court and this Court have recognized, "the task of determining plausibility is 'context-specific

[and] requires the reviewing court to draw on its judicial experience and common sense.'"
*Campbell v. Miller*, 835 F. Supp. 2d 458, 465 (S.D. Ohio 2011) (quoting *Iqbal*, 556 U.S. at 679).
Again, to arrive at the doses alleged, Plaintiffs' hypotheticals assume that children ingest 200
milligrams and 100 milligrams, respectively, of soil from the same spot every day for 350 days.
Plaintiffs, however, offer no factual allegations to make it plausible that any of them have
ingested this much soil, let alone from a single isolated location on their properties for 350 days
straight.[3] This basic pleading failure is reason alone for the Court to dismiss Plaintiffs' PAA
claims.

The exhibit that Plaintiffs attach in support of their hypothetical dose calculations is also
facially flawed. The exhibit states that it is based on assumed soil-ingestion rates of "200
mg/day" for children and "100 mg/day" for adults published by U.S. EPA in 2014. Ex. 2, Doc.
142-2 at PageID # 2167. But it fails to address the EPA's 2017 update, which significantly
reduces the assumed ingestion rates. U.S. EPA, *Update for Chapter 5 of the Exposure Factors
Handbook: Soil and Dust Ingestion*, at Table 5-1, p. 15 (September 2017) (assuming that
children might ingest between 10 and 90 milligrams of soil in a day, and that adults might ingest
between 10 and 50 milligrams of soil in a day), https://www.epa.gov/sites/production/files/2018-
01/documents/efh-chapter05_2017.pdf.

The exhibit is also internally inconsistent. First, Table 1 purports to provide
concentrations of various radioisotopes in "soil samples collected and analyzed on the property
of the 5 Plaintiffs." Ex. 2, Doc. 142-2 at PageID# 2168. There are 6 samples, each of which has
a unique identifier or "Sample Number." *Id.* Table 2 purports to "show[] the dose rates based on

---

[3] Plaintiffs' hypotheticals rest on limited soil samples. Ex. 2, Doc. 142-2 at PageID # 2167-68. As is apparent from
the McGlone soil samples, the actual amount of radiation in the soil (which can come from several sources unrelated
to Defendants, including background radiation that naturally occurs in the environment) varies per sample. *Id.* at
2168.

the ingestion of each of the 6 soil samples for" various age groups. *Id.* at 2167. But many of the sample numbers in Table 2 do not correspond to Table 1. *Id.* at 2168. Thus, some doses in Table 2 do not appear to be based on alleged sample results shown in Table 1.[4] Second, Table 1 purports to "show[] the concentration of background for each of th[e] radioisotopes." *Id.* at 2167. Generally, background levels are "used as a baseline against which to measure changes that result from human activities."

https://www.oxfordreference.com/view/10.1093/oi/authority.20110803095439556. As such, they are not a factor in the NRC dose calculation. *See* 10 C.F.R. § 20.1301(a) (limiting radiation dose "exclusive of . . . background radiation"). Despite attempting to explain how they arrived at the other variables they used, Plaintiffs fail to provide any information on the background levels in Table 1.

In any event, Plaintiffs' hypotheticals fail to satisfy the governing NRC standard. Under the NRC standard, and as this Court held, Plaintiffs must plausibly allege that, over the course of a year, each Defendant released radiation that caused each Plaintiff or their properties to receive a total effective dose of 0.1 rem (100 millirem) of radiation. 10 C.F.R. § 20.1301(a)(1); *see also McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *8-9, n.2, 13; *Good*, 222 F. Supp. 2d at 1250. Plaintiffs' calculations, however, hinge on the ***hypothetical*** ingestion of soil by ***hypothetical*** children and adults. These hypotheticals do not reflect annual releases of radiation by any Defendant. Rather, the soil that the hypothetical individuals are ingesting contains radiation allegedly deposited on Plaintiffs' properties ***from the beginning of time to present***. At best,

---

[4] In September 2020, Plaintiffs told Chief Magistrate Judge Deavers that they would provide Defendants all sample data. 9/2/20 Discovery Conference Tr., Doc. 148 at 10:2-9, 11:2-24, 13:2-11. Although Plaintiffs have provided some limited data (much of which is qualified by information that calls into question the data's validity and utility), Plaintiffs failed to provide any of the data included in Table 1 of Exhibit. Furthermore, Plaintiffs' Table 1 fails to include any supporting sample results.

Plaintiffs allege that there is soil on their properties that, if ingested at a rate of 200 milligram per day for 350 days, *could* be "sufficient to deliver" various doses of radiation to children.  *See* 4thAC ¶¶ 134-66; Ex. 2, Doc. 142-2.  Plaintiffs make no attempt to tie their hypothetical dose calculations to (1) actual conditions of exposure of their persons or properties or to (2) an annual release of radiation by a Defendant that exceeded the NRC standard.  These failures are fatal to Plaintiffs' PAA claims.  *See McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *8-15; *Good*, 222 F. Supp. 2d at 1250.

But even ignoring these threshold problems, Plaintiffs still cannot state a PAA claim.  In fact, Plaintiffs' new hypothetical dose allegations confirm that they cannot meet the NRC standard.  The only dose relevant here is "total effective dose."  10 C.F.R. 20.1301(a)(1).  And the only total effective radiation dose that Plaintiffs allege to be above 0.1 rem (100 millirem) is that to a hypothetical 3-month old on Patsy Brownfield's property.  Ex. 2, Doc. 142-2 at PageID # 2168.  For three reasons (independent of the many problems outlined above), this hypothetical dose allegation does not make it plausible that any of the actual Plaintiffs received a radiation dose in excess of the NRC standard.

First, the dose allegation ignores the fact that children age, and that it is unrealistic (at best) for a 3-month old to eat 200 milligrams of soil for 350 days straight.  Second, applying the correct EPA soil-ingestion rate of 20 milligrams (likely rate) to 50 milligrams (highest rate) for this age group, the alleged effective dose of 109.9 millirem/year drops to ***11 millirem/year*** and ***27 millirem/year***, respectively.[5]  Third, and perhaps more fundamentally, ***no Plaintiff is 3-months old and lives on Patsy Brownfield's property***.  Ms. Brownfield is an adult, 4thAC, Doc.

---

[5] Defendants arrived at these figures by reducing the 109.9 mrem/year figure proportionately by the appropriate soil-ingestion rate according to the EPA.  The math is as follows: Dose = 20/200 x 109.9 (mrem/year) = 11 mrem/year; Dose = 50/200 x 109.9 (mrem/year) = 27 mrem/year.

142 ¶ 17, and Plaintiffs' hypothetical dose calculations themselves confirm that, at most, an adult on the Brownfield property could have a total effective dose of 2.6 millirem/year if she ate 200 milligrams of dirt from the same spot every day for 350 days.  Ex. 2, Doc. 142-2 at PageID # 2168.  Indeed, the only Plaintiff alleged to be under 1-year old is Ursula and Jason McGlone's son, T.M, ***but Plaintiffs' hypothetical effective doses for a 3-month old (and a 1-year old) on the McGlone property are far less than the applicable 0.1 rem (100 millirem)/year standard***. *Id.*  Put another way, Plaintiffs' hypothetical dose calculations confirm that there is no actual Plaintiff who received a dose even close to the governing NRC standard.  Plaintiffs cannot change this basic truth with hypotheticals, *see Ewalt*, 2021 U.S. Dist. LEXIS 40258, at *9, and Plaintiffs have not stated a PAA claim.

### 2) EPA standards do not apply in PAA cases.

Unable to meet the governing standard, Plaintiffs ask the Court to change it.  Plaintiffs suggest that they have stated a PAA claim based on alleged violations of an EPA standard found in 40 C.F.R. Part 190.  *See* 4thAC, Doc. 142 ¶¶ 123-24.  This provision requires "uranium fuel cycle operations" to "be conducted in such a manner as to provide reasonable assurance that":

> The annual dose equivalent does not exceed 25 millirems to the whole body, 75 millirems to the thyroid, and 25 millirems to any other organ of any member of the public as the result of exposures to planned discharges of radioactive materials, radon and its daughters excepted, to the general environment from uranium fuel cycle operations and to radiation from these operations.

40 C.F.R. § 190.10(a).  Although PORTS hasn't enriched uranium for 20 years, Plaintiffs allege that Defendants are subject to this regulation because they "are all engaged in operations at PORTS which are part of the uranium fuel cycle and/or the nuclear fuel cycle."  4thAC, Doc. 142 ¶ 131.  The allegation is baseless, but the Court need not resolve the issue to dismiss Plaintiffs' PAA claims.  The EPA standard is irrelevant to this PAA case for four reasons.

12

First, Plaintiffs have waived any argument that it applies. Arguments not raised in opposition to a motion to dismiss are waived. *Lees v. Thermo Electron Corp.*, No. C2-06-984, 2008 U.S. Dist. LEXIS 86367, at *36 (S.D. Ohio Sept. 4, 2008); *Ajamu v. City of Cleveland*, No. 1:15CV1320, 2017 U.S. Dist. LEXIS 123363, at *9 (N.D. Ohio Aug. 4, 2017). In their opposition to Defendants' motion to dismiss their second amended complaint, Plaintiffs raised three legal arguments in defense of their PAA claims: (1) that they need not plead exposure to radiation in excess of the NRC standard, only that such radiation was released; (2) that the NRC standard does not apply to DOE contractors like Defendants; and (3) that the as-low-as-reasonably-achievable ("ALARA") standard in 10 C.F.R. § 20.1101 sets the standard of care. Opp., Doc. 98 at PageID ## 1537-1549; *see also McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *8-14. Plaintiffs did ***not*** argue, as they do now, that the EPA standards in 40 C.F.R. Part 190 set the standard of care in a PAA case. And although Plaintiffs had the soil samples that they now rely upon ***before*** filing their second amended complaint, Plaintiffs did not argue that the EPA standards had been exceeded. In other words, Plaintiffs had the facts and law necessary to make their new argument about the EPA standards but failed to do so. Plaintiffs have therefore waived the argument.

Second, the Court already held that the NRC standard applies. In its prior decision, the Court quoted the 0.1 rem/year (100 millirem/year) standard and squarely held that it applies to DOE contractors like Defendants. *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *8, n.2; *id.* at *8-15. As the Court explained, "DOE General Order 458.1 requires contractors to 'establish and implement procedures and practices' to ensure that 'exposure of members of the public to ionizing radiation will . . . [n]ot cause a total effective dose (TED) exceeding 100 mrem (1mSv) in a year[.]'" *Id.* at *13 (quoting U.S. DOE Order 458.1 (February 11, 2011). Because the Court

recognized that **"[t]his is the exact standard established by § 20.1301 for [NRC] licensees**[,]" it rejected Plaintiffs' attempts "to hold Defendants to a more onerous standard than what § 20.1301 requires." *Id.* (emphasis added). By relying on the inapplicable EPA standard, Plaintiffs merely continue their failed efforts "to hold Defendants to a more onerous standard" that does not apply. This Court's previous decision was correct; the Court should maintain its prior ruling that the NRC's 0.1 rem (100 millirem)/year standard governs and dismiss Plaintiffs' 4thAC.

Third, Defendants have not identified a single case applying 40 C.F.R. Part 190 in a PAA case. *Carey v. Kerr-McGee Chem. Corp.* is the only case discussing these regulations in the context of PAA claims. Plaintiffs there (as here) argued that EPA regulations set the standard of care for PAA claims. *Carey*, 60 F. Supp. 2d at 807. But the court rejected their argument: "plaintiffs [have not] directed the court to any case holding that EPA regulations provide the applicable standard of care, and this court's own research has revealed none." *Id.* at 807-08. Not only is *Carey* consistent with this Court's prior decision, it follows Sixth Circuit law that "NRC safety regulations," not EPA regulations, "conclusively establish the duty of care owed by Defendants in" a PAA case. *TNS, Inc.*, 296 F.3d at 398.

Fourth, the EPA standard would lead to the same problems as the ALARA standard that the Court rejected in *McGlone I*. *See McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *13-14. Much like ALARA, EPA regulations require operations to be conducted "in such a manner as to provide **reasonable assurance**" that certain thresholds are not violated. 40 C.F.R. 190.10(a) (emphasis added). This reasonable-care standard contrasts with 10 C.F.R. § 20.1301(a), which states that Defendants "**shall** conduct operations" so that the 0.1 rem (100 mrem)/year standard is not violated, 10 C.F.R. § 20.1301(a) (emphasis added), and, like ALARA, is ill-suited to serve as

the standard of care in a PAA case.  There is no basis to apply 40 C.F.R. Part 190 in this PAA

case.

### 3) Publicly-available government environmental reports refute Plaintiffs' PAA claims regardless.

Finally, regardless of the governing standard, Plaintiffs cannot insulate their PAA claims

from publicly-available facts that refute them.  The Court can consider publicly-available

documents in deciding Defendants' motion to dismiss.  *Basset v. NCAA*, 528 F.3d 426, 430 (6th

Cir. 2008).  In fact, "[i]f a document relied on in the complaint" or a publicly-available document

"contradicts allegations in the complaint, the document, not the allegations, controls, and the

court need not accept the allegations in the complaint as true."  *Tufamerica, Inc. v. Diamond*, 968

F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (citation omitted); *In re Amarin Corp.*, PLC, 2015 U.S.

Dist. LEXIS 84080, at *14-15 n.5 (D.N.J. June 26, 2015) (same); *see also, e.g.*, *Lilkos v. New

York City*, No. 14-cv-05288 (PKC) (LB), 2016 U.S. Dist. LEXIS 136052, at *10-11 (E.D.N.Y.

Sept. 30, 2016) (dismissing claim under Rule 12(b)(6) where contradicted by publicly-available

facts); *Tex. Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 105 (D.D.C. Sept. 9,

2011) (same)

Plaintiffs assert, without citation, that "reports by DOE, NIOSH, and EPA demonstrate[]

multiple instances of release of contaminants from the Portsmouth Site, including . . . radioactive

contaminants, . . . in violation of federal statutes and/or regulations."  4thAC, Doc. 142 ¶ 47.  But

these reports prove the opposite.

For example, each year, DOE publishes an "Annual Site Environmental Report" or

"ASER."  The ASERs establish that "[n]o administrative guidelines or regulatory dose limits

were exceeded[,]" and that Plaintiffs have no PAA claims:

- The 2019 ASER confirms that "[t]he maximum annual dose a member of the public *could receive* from radiation released by PORTS in 2019 . . . is *0.95 mrem/year*[,]"which is significantly less than the applicable 0.1 rem (100 mrem) annual limit. U.S. DOE, *Annual Site Environmental Data 2019* at 4-1 (emphasis added), https://www.energy.gov/sites/default/files/2020/12/f82/Environmental%20Radiol ogical%20Program%20Information.pdf; 10 C.F.R. § 20.1301(a)(1). This figure includes all potential exposure pathways (air, water, soil, sediment, and biota). *Id.* "No administrative guidelines or regulatory dose limits were exceeded in 2019." *Id.* at 4-14.

- The 2018 ASER confirms that "[t]he maximum annual dose a member of the public *could receive* from radiation released by PORTS in 2018 . . . is *0.92 mrem/year*." U.S. DOE, *Annual Site Environmental Data 2018* at 4-1 (emphasis added), https://www.energy.gov/sites/prod/files/2020/07/f77/2018%20Portsmouth%20AS ER-4-env-radiological-programs_0.pdf; 10 C.F.R. § 20.1301(a)(1). This figure includes all potential exposure pathways (air, water, soil, sediment, and biota). *Id.* "No administrative guidelines or regulatory dose limits were exceeded in 2018." *Id.* at 4-14.

- The 2017 ASER provides that "[t]he maximum dose that a member of the public *could receive* from radiation released by PORTS in 2017 is *0.90 mrem*." U.S. DOE, *Annual Site Environmental Data 2018* at 4-1 (emphasis added), https://www.energy.gov/sites/default/files/2019/10/f68/Env_Rad_Program_Info_ 2017_PORTS_ASER_1.pdf (emphasis added). This figure includes all potential exposure pathways (air, water, soil, sediment, and biota). *Id.* "No administrative guidelines or regulatory dose limits were exceeded in 2017." *Id.* at 4-13.

- Historical ASERs show the same. *See* U.S. DOE, Portsmouth Annual Site Environmental Reports, https://www.energy.gov/pppo/downloads/portsmouth-annual-site-environmental-reports-0 (providing ASERS from 2010 to present, none of which show any exceedance of the relevant standards).

In short, these publicly-available facts establish that Plaintiffs cannot plausibly allege that any Defendant violated the governing NRC dose limit (or any dose limit, for that matter), and that Plaintiffs have no PAA claims. The Court should dismiss Plaintiffs' 4thAC just as it dismissed Plaintiffs' previous complaint.

**b.** **Plaintiffs fail to allege that they have suffered injuries compensable under the PAA.**

Even if Plaintiffs' exposure allegations were legally sufficient, Plaintiffs' PAA claims still fail.  Again, to state a PAA claim, each Plaintiff must plausibly allege that each Defendant caused them to be exposed to radiation in excess of the governing NRC standard ***and*** tie that exposure to an injury compensable under the PAA.  *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at *7-8; *Lokos*, 67 F. Supp. 2d at 743; *Good*, 222 F. Supp. 2d at 1250.  No Plaintiff has met this burden.

The PAA provides the exclusive list of compensable injuries:  "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property . . . ."  42 U.S.C. § 2014(q).  In *Rainer*, the Sixth Circuit held that "courts are required to look to state law" in determining whether there is "bodily injury" under the PAA.  *Ranier v. Union Carbide Corp.*, 402 F.3d 608, 618-19 (6th Cir. 2005).  Emotional distress is not "bodily injury."  *Snell v. Katafias*, No. 17440, 1999 Ohio App. LEXIS 997, at *7-8 (2d Dist. Mar. 19, 1999).  Nor is an increased risk of personal harm.  *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) ("Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition, because that would invite speculation by the jury.").  Likewise, to have a compensable property injury, PAA plaintiffs must allege "actual, physical damage to . . . property" that is substantial or "substantial interference" with the use of property.  *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 523-24 (6th Cir. 2013).

No Plaintiff here alleges a compensable bodily or property injury.  Again, the only dose that Plaintiffs allege to be above the NRC's 0.1 rem (100 millirem) standard is the total effective dose of a hypothetical 3-month old on Patsy Brownfield's property.  Ex. 2, Doc. 142-2 at PageID # 2168.  No 3-month old lives there or is a Plaintiff in this case, 4thAC, Doc. 142 ¶ 17, so no

17

bodily or property injury has resulted from this hypothetical dose. Plaintiffs' suggestion that the radiation levels on the Brownfield property might lead to a heightened risk of cancer, *see id.* ¶¶ 49-55, cannot state a PAA claim as to Patsy Brownfield or any other Plaintiff.

Moreover, even if the Court accepts Plaintiffs' argument that the EPA standard in 40 C.F.R. Part 190 applies, there is still no compensable bodily or property injury tied to a radiation dose that exceeds that standard. All of the hypothetical dose allegations that exceed even the EPA standard relate to minor children. Ex. 2, Doc. 142-2 at PageID # 2168. The children allege no bodily injury (only an increased risk of one), and they have no cognizable property-injury claim because they do not own the properties at issue. Plaintiffs' 4thAC establishes this fact because Plaintiffs allege that the properties are owned by Ursula and Jason McGlone, Adam and Brittani Rider, Joshua and Rachel Ross, Patsy Brownfield, and Mickey and Heather Tackett— not the minor children. 4thAC, Doc. 142 ¶¶ 11, 13, 15, 17-18.

Parties "without legal or equitable title in a property[,]" like the minor Plaintiffs here, have "no interest in claims stemming from that property" and therefore lack standing. *Windsor Realty & Mgmt. v. Ne. Ohio Reg'l Sewer Dist.*, 8th Dist. Cuyahoga No. 107597, 2019-Ohio-3096, ¶ 14; *see also, e.g.*, *Myers v. Vill. of Alger*, 102 F. App'x 931, 933 (6th Cir. 2004) (finding a husband lacked standing to sue because the couple's property was titled in the wife's name only); *Adams v. Pitorak & Coenen Invests., Ltd.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶ 42 (appellee lacked standing to bring a cause of action against appellant for loss of enjoyment of land, trespass, and nuisance about property that appellee did not own); *Lame v. E.G. Sys. Inc.*, 8th Dist. Cuyahoga No. 101566, 2015-Ohio-686, ¶ 22 (appellant lacked standing to bring a tort cause of action against appellee about property that appellant did not own).

18

Ultimately, even if Plaintiffs could allege that any Defendant violated the governing federal dose limit—which they cannot—no Plaintiff has alleged a compensable injury under the PAA, which failure to so allege is independently fatal to Plaintiffs' PAA claims.

## 2. Plaintiffs' PAA claims are facially time barred as to several Defendants.

Plaintiffs' PAA claims are also facially time barred as to several Defendants.  As the Sixth Circuit has held, the court can dismiss a claim on statute-of-limitations grounds when, as here, "it is apparent from the face of the complaint that the time limit for bringing the claim has passed."  *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992).  The PAA does not provide a statute of limitations for public liability actions arising out a "nuclear incident," so "the limitations period and accrual and tolling rules must be borrowed from the State law."  *Day v. NLO, Inc.*, 3 F.3d 153, 154 n.1 (6th Cir. 1993).

Under Ohio law, personal-injury claims are subject to a two-year statute of limitations, R.C. 2305.10(A), while property-damage claims—such as those that the Plaintiffs allege here—are governed by a four-year statute of limitations.  R.C. 2305.09.  R.C. 2305.09 says that property-damage claims "shall be brought within four years after the cause thereof accrued."  The question of when a cause of action accrues, for purposes of property-damage claims under Ohio law, turns on whether the trespass or nuisance is "continuing" or "permanent."  Continuing trespass or private nuisance "arises when the [defendant's] tortious conduct is ongoing, perpetually generating new violations."  *Kramer v. Angel's Path, LLC*, 174 Ohio App. 3d 359, 2007-Ohio-7099, 882 N.E.2d 46 (6th Dist.) (internal citations and quotation marks omitted).  When a defendant's tortious act "constitutes a continuing course of conduct," the statute of limitations period is tolled.  *Sexton v. City of Mason*, 117 Ohio St. 3d 275, 282, 2008-Ohio-858, 883 N.E.2d 1013.  "Conversely, a permanent [trespass or private] nuisance occurs when the

[defendant's] tortious act has been completed, but the plaintiff continues to experience injury in the absence of any further activity by the defendant." *Kramer*, 882 N.E.2d at 52 (internal citation omitted).

Based on the plain language of the 4thAC, Plaintiffs' claims against several Defendants—specifically, Bechtel Jacobs, UDS, and LATA/Parallax—are barred by R.C. 2305.09. First, Plaintiffs cannot assert continuing trespass against these Defendants. Under relevant Ohio law, a "defendant's ongoing conduct or retention of control is the key to distinguishing a continuing trespass from a permanent trespass." *Sexton*, 117 Ohio St. 3d at 282. If there is no "continuing or ongoing allegedly tortious activity attributable to the defendant," any alleged trespass must be considered a permanent trespass. *Id*.; *see also Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 508 (S.D. Ohio 2012) ("[I]t is the *tortious act itself* that must be continuing, not the injury or harm caused by past conduct" (citing *Sexton*, 117 Ohio St. 3d at 281 (emphasis in original)).

Plaintiffs allege that Bechtel Jacobs, UDS, and LATA/Parallax have been absent from the PORTS for at least 11 years. *See* 4thAC, Doc. 142 ¶¶ 35-36 (alleging that UDS's involvement in DUF6 conversion occurred from 2002 to 2010); *id.* ¶ 43 (alleging that "[b]etween 1997 and 2005, Bechtel Jacobs Company, LLC . . . was responsible for environmental remediation at the Portsmouth Site"); *id.* ¶ 44 (alleging that "[b]etween 2005 and 2010, LATA/Parallax Portsmouth, LLC . . . was responsible for environmental remediation at the Portsmouth Site"). So any property damage claims against these Defendants are not "continuing" claims and thus are subject to the four-year statute of limitations. As a result, Plaintiffs had to file any claims against Bechtel Jacobs by 2009 and against UDS and LATA/Parallax by 2014. Plaintiffs, however, did

not sue until 2019, rendering their claims against these Defendants untimely under R.C. 2305.09.[6]

> **a.** **Plaintiffs have alleged no facts to justify tolling the statute of limitations.**

Plaintiffs offer no basis to toll the statute of limitations. First, although claims for property damages are subject to the discovery rule in Ohio, *see Sexton*, 117 Ohio St. 3d 275, ¶ 53, it is Plaintiffs' burden to plead the discovery rule. *LRL Properties v. Portage Metro Housing Auth.*, 55 F3d. 1097, 1106 n. 6 (6th Cir. 1995); *Reid v. Banker*, 499 F. App'x 520, 526 (6th Cir. 2021) ("[W]hen the court can ascertain from the complaint that the period for bringing the claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute"). Plaintiffs, however, offer no allegations to support application of the discovery rule. Nor can they.

Under Ohio law, "constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." *Flowers v. Walker*, 63 Ohio St. 3d 546, 549, 589 N.E. 2d 1284, 1287 (1992). The constructive knowledge that triggers the running of the statute of limitations can stem from publicly-available documents. *See, e.g.*, *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-180284, 2019-Ohio-5208 (SEC filings and proxy statements triggered the discovery rule for purposes of statute of limitations on trust beneficiaries' breach of fiduciary duty claim).

Here, a variety of publicly-available materials have put Plaintiffs on notice:

---

[6] Plaintiffs' property-damage claims against the remaining Defendants (Fluor-BWXT Portsmouth, LLC, Centrus Energy Corp., Mid-American Conversion Systems, United States Enrichment Corporation, and BWXT Conversion Services) are also limited to a four-year period. The continuing trespass doctrine may extend the statute of limitations, but it does not extend the period for which damages can be recovered. *Wojcik v. Pratt*, 9th Dist. Summit No. 24583, 2009-Ohio-5147, ¶ 25. Plaintiffs' potential recovery is automatically limited to "the four-year period prior to the filing of the complaint." *Id.* (citation omitted). Consequently, all defendants are entitled to a decision by this Court limiting any claims for property damages to a period of 2015 forward.

- Environmental monitoring data (including the ASERs) are produced as required by law and shared with the public

- Alleged contamination from PORTS has been the subject of several cases in this Court, *see Boggs v. Divested Atomic Corporation*, Doc. 83-2; *United States ex rel. Walburn v. Lockheed Martin Corp.*, 312 F. Supp. 2d 936 (S.D. Ohio 2004) (dismissing a False Claims Act action), *aff'd Walburn v. Lockheed Martin Corp.*, 531 F.3d 966 (6th Cir. 2005); *Walburn v. Lockheed Martin Corp.*, No. 2:96-CV-722, 2010 U.S. LEXIS 8109 (S.D. Ohio Jan. 13, 2010); *Walburn v. Lockheed Martin Util. Servs.*, No. 2:09-CV-288, 2010 U.S. Dist. LEXIS 31148 (S.D. Ohio Mar. 30, 2010) (dismissing personal injury claims arising from alleged exposure to dangerous gases), *aff'd Walburn v. Lockheed Martin Util. Servs.*, 443 Fed. Appx. 43 (6th Cir. 2011);

In fact, Plaintiffs themselves acknowledge that government environmental reports put them on notice of the alleged contaminants underlying their lawsuit. *See* 4thAC, ¶ 47; *see also Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 823 (N.D. Ohio 2015) (holding that government environmental reports triggered statute of limitations for claims about contaminants related to reports).

In short, Plaintiffs have been on continuous notice of the circumstances that underpin their allegations in this case. Because the Plaintiffs have known (or should have known) of the basis of their claims, the four-year statute of limitations in R.C. 2305.09 that governs their property claims is not tolled by the discovery rule. All of Plaintiffs' claims against Defendants Bechtel Jacobs, UDS, and LATA/Parallax must therefore be dismissed.

### b. No other exception to the statute of limitations applies.

No other exception to the statute of limitations applies. When the claims are facially time-barred—as they are here against Bechtel Jacobs, UDS, and LATA/Parallax—the "burden shifts to the plaintiff to establish an exception to the statute of limitations." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Plaintiffs have failed to plead any viable exception.

Under Ohio law, equitable estoppel "may be used to prevent the inequitable use of the statute of limitations" if a plaintiff establishes four necessary elements. *JRC Holding, Inc. v. Samsel Servs. Co.*, 166 Ohio App. 3d 328, 335-36, 2006-Ohio-2148, 850 N.E.2d 773 (11th Dist.) (citations omitted). To establish equitable estoppel, a plaintiff must show (1) a factual misrepresentation, (2) that is misleading, (3) that induced actual reliance, which was reasonable and in good faith, and (4) which caused detriment to the relying party. *Helman v. EPL Prolong, Inc.*, 139 Ohio App. 3d 231, 246, 2000-Ohio-2593, 743 N.E.2d 484 (7th Dist.) (citation omitted). Indeed, to toll the statute of limitations, Ohio courts require "'an affirmative statement that the statutory period to bring an action was larger than it was' or 'promises to make a better settlement of the claim if plaintiff did not bring the threatened suit.'" *Id.* (quoting *Cerney v. Norfolk & W. Ry. Co.*, 104 Ohio App. 3d 482, 488, 662 N.E.2d 827 (8th Dist. 1995)).

Plaintiffs' 4thAC lacks any allegations that could support equitable estoppel. Plaintiffs identify no factual misrepresentations, misleading or otherwise, by Bechtel Jacobs, UDS, or LATA/Parallax. Plaintiffs point to no actual reliance on any misrepresentations because those misrepresentations do not exist. And Plaintiffs include no allegations that Bechtel Jacobs, UDS, or LATA/Parallax made "affirmative statements that the statutory period to bring an action was larger than it was" or that those Defendants made "promises to make a better settlement of the claim if the plaintiff did not bring the threatened suit." *Helman*, 139 Ohio App. 3d at 246. Thus, equitable estoppel cannot apply to save Plaintiffs' PAA claims against Bechtel Jacobs, UDS, or LATA/Parallax.

Plaintiffs have also failed to provide a basis to toll the statute of limitations for fraudulent concealment. Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead this exception with specificity and set forth the "who, what, when, where, and how" of any alleged

misrepresentation or omission. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). To plead fraudulent concealment, Plaintiffs must also plausibly allege (1) wrongful concealment of the defendants' actions, (2) failure to discover operative facts that are the basis of the plaintiffs' cause of action within the limitations period, and (3) plaintiffs' due diligence. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 850 (6th Cir. 2006). But Plaintiffs identify no specifics and only generally allege that "Defendants made misrepresentations." *See* 4thAC, Doc. 142 ¶ 91. This vague allegation cannot plead fraudulent concealment or toll the statute of limitations. *Thornton v. Miles*, 65 F. App'x 997, 998 (6th Cir. 2003) (rejecting "conclusory allegations that some defendants acted fraudulent" as basis to toll statute of limitations and affirming dismissal); *Stinnett v. United States*, 891 F. Supp. 2d 858, 869 (M.D. Tenn. 2012) (holding that the plaintiff is "under an obligation to plead the essential details supporting his fraudulent concealment claim in more than conclusory terms" and dismissing claim on statute of limitations grounds when the complaint establish that the claim was time barred and the plaintiff failed to allege facts to establish a basis for tolling the statute based on the fraudulent concealment exception).

In short, because Plaintiffs' claims against Bechtel Jacobs, UDS, and LATA/Parallax are facially barred by the statute of limitations, and because there is no basis to toll the statute of limitations, those claims must be dismissed.

**B.     The Court should dismiss Plaintiffs' state-law claims in part.**

**1.     The minors have no viable state-law claims.**

The Court should also dismiss Plaintiffs' state-law claims in part. To begin with, Plaintiffs who are minors have no viable state-law claims. Trespass and nuisance claims "exist[] to remedy an injury to someone's property." *Gevelaar v. Millennium Inorganic Chems.*, 11th Dist. Ashtabula No. 2012-A-0013, 2013-Ohio-435, ¶ 31; *see also McGlone I*, 2020 U.S. Dist.

24

LEXIS 135784, at \*41 ("entry upon land in the possession of another" to be "essential element[]" of trespass claim (internal quotation marks omitted) (citation omitted)).  A plaintiff thus "cannot pursue a nuisance [or trespass] action to recover for alleged damage to property he does not own or rent."  *Gevelaar*, 2013-Ohio-435, ¶ 31; *Adams*, 2012-Ohio-3015, ¶ 42.  Here, the minor Plaintiffs own none of the properties at issue.  *See* 4thAC ¶¶ 11, 13, 15, 17-18.  And because they do not own the properties at issue, the minors have no trespass or nuisance claims.

The minors' negligence, gross negligence, and strict liability claims fare no better.  Damages are an "essential element" of Plaintiffs' claims for negligence, gross negligence, and strict liability.  *Clay v. Sotheby's Chi., Inc.*, 257 F. Supp. 2d 973, 982 (S.D. Ohio 2003); *McGlone I*, 2020 U.S. Dist. LEXIS 135784, at \*45-46 (stating elements of negligence and strict liability claim).  Again, an increased risk of personal harm is not a cognizable injury under Ohio law.  *Bouchard*, 213 F. Supp. 2d at 807 (N.D. Ohio 2002).  And the minors lack standing to sue for any alleged property injuries under negligence or strict liability theories, as they own none of the properties at issue.  *Lame*, 2015-Ohio-686, ¶ 22.  The Court should dismiss the state-law claims asserted by Plaintiffs who are minors.

## 2. Plaintiffs' state-law claims are facially time barred as to certain Defendants.

Finally, Plaintiffs' state-law claims against Bechtel Jacobs, UDS, and LATA/Parallax are untimely for the same reasons as their PAA claims.  As explained above, Ohio law imposes a four-year statute of limitations period for property-damage claims like Plaintiffs' state-law claims.  *See* R.C. 2309.05.  Plaintiffs affirmatively allege that Bechtel Jacobs, UDS, and LATA/Parallax have been absent from PORTS since at least 2011.  4thAC ¶¶ 35-36, 43-44.  There is no continuing trespass, which makes Plaintiffs' claims against these Defendants untimely.  *See supra* § III.A.2.  Plaintiffs also fail to plead any basis—whether it be the

discovery rule, equitable estoppel, or fraudulent concealment—to toll the governing four-year statute of limitations.  *See supra* § III.A.2.a.-b.

## IV.  <u>Conclusion</u>

For these reasons, the Court should dismiss Plaintiffs' 4thAC for failure to state a claim.

Respectfully submitted,

<u>/s/ Richard D. Schuster</u>
Richard D. Schuster (0022813)
    Trial Attorney
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5475 (phone)
(614) 464-5475 (fax)
rdschuster@vorys.com

Jacob D. Mahle (0080797)
Jessica K. Baverman (0083951)
Wesley R. Abrams (0095746)
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
(513) 723-8589 (phone)
(513) 852-7844 (fax)
jdmahle@vorys.com
jkbaverman@vorys.com
wrabrams@vorys.com

*Counsel for Defendants*