IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**URSULA MCGLONE**, *et al.*,

    **Plaintiffs**,

v.

    Case No. 2:19-cv-2196
    Chief Judge Algenon L. Marbley
    Magistrate Judge Elizabeth P. Deavers

**CENTRUS ENERGY CORP.**,
*et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the motion to compel filed by Plaintiffs. (ECF No. 153.) Defendants have filed a Response. (ECF No. 157.) The Court did not permit a Reply. For the following reasons, the motion to compel is **DENIED.**

### I.

In its Opinion and Order dated July 31, 2020, the Court described the background of this case as follows:

> Plaintiffs Ursula McGlone, Jason McGlone, Julia Dunham, Brittani Rider, and Adam Rider, proceeding on behalf of themselves, their minor children, and all others similarly situated, initiated this civil action on May 26, 2019, alleging that they were injured when uranium radiation was released onto their property from the Portsmouth Gaseous Diffusion Plant (the "Plant") in Pike County, Ohio.
>
> From 1954 to 2001, the Plant produced enriched uranium to support the United States' nuclear weapons program to support commercial nuclear reactors. Beginning in 1989, and continuing today, there have been ongoing efforts to clean up the environmental harm caused by uranium production at the Plant. This remediation was undertaken, in part, pursuant to a Consent Decree overseen by the Ohio EPA. Each of the Defendants in this case was, at some point between 1993 and present day, responsible for at least one of the following activities at the Plant:

> uranium operations; depleted uranium hexafluoride conversion; or environmental remediation.
>
> The Plaintiffs in this case all own property located within five miles of the Plant. Plaintiffs contend that their properties have been impacted by or are within the zone impacted by the release of radioactive and toxic materials from the Plant.

(ECF No. 113 at 1-2.)

In their joint Amended Rule 26(f) Report the parties stipulated to the bifurcation of discovery between class certification and merits discovery. (ECF No. 79 at 4.) ("The parties agree upon bifurcated discovery." The parties agree to bifurcate discovery between class certification discovery and merits discovery.") Although they agreed to bifurcation, the parties disagreed as to the scope of class certification discovery. Ultimately, the Court entered a Preliminary Pretrial Order limiting class discovery to the following topics: (1) numerosity of class; (2) questions of law and fact common to class; (3) typicality of claims and defenses; (4) adequate representation; (5) defendants' alleged act or refusal to act on grounds applicable to the class; and (6) the predominance of common questions of law and fact. (ECF No. 81 at 2.) Discovery ensued.

In its Opinion and Order dated July 31, 2020, the Court dismissed Plaintiff's claims for a violation of the Price-Anderson Act; a violation of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA); declaratory judgment as to class rights and status; Alternative Count One (A) through (E) including claims for Negligence/Gross Negligence; Trespass; Nuisance; Ultra-Hazardous Activity/Absolute Liability/Strict Liability; and Injunctive and Equitable Relief of Medical Monitoring; and Alternative Count Three (B) Declaratory Judgment of Due Process Protection of State Law Claims. The Court also dismissed Alternative Count Three (C) Declaratory Judgment of Unconstitutionality of PAA 100 MREM Standard without prejudice. (ECF No. 113 at 32.)

Following this ruling, the scope of the discovery requests changed to include only non-radioactive contaminants. (ECF No. 153 at 2.)

Defendants have produced or agreed to produce the following information and documents (among other things) for the time period of 2015 to the present:

- Results of sampling conducted in the area surrounding the Portsmouth Site (including data relating to non-radioactive substances collected off-site), which is conducted up to approximately 13 miles from the Site;

- Annual Site Environmental Reports for the Portsmouth Site containing off-site sampling results and information relating to the Portsmouth Site;

- The URL for Pegasis, an interactive website containing thousands of off-site sampling results, extending to approximately 13 miles from the Portsmouth Site;

- Documents sufficient to identify the type and quantity of non-radioactive hazardous chemicals stored at the Portsmouth Site;

- Any Tier I and/or Tier II reports required by the Emergency Planning and Community Right-to-Know Act (EPCRA), which inventory and provide information on the hazardous chemicals stored at the Portsmouth Site;

- Operating procedures for dealing with non-radioactive wastes or regulated emissions;

- A description of the pollution/emission systems that are currently in place at the Portsmouth Site; and

- The identities of personnel responsible for regulatory compliance and environmental testing at the Portsmouth Site.

(ECF No. 157 at 3.)

Plaintiffs filed a Fourth Amended Class Action Complaint on March 23, 2021, (ECF No. 142), seeking to represent the following class of individuals[1]:

---

[1] The Fourth Amended Complaint is the currently operative Complaint. The Court notes, however, that a motion to dismiss this pleading currently is pending. (ECF No. 150.) Plaintiffs had filed a Motion for Leave to file a Third Amended Class Action Complaint on August 18, 2020 (ECF No. 119) but withdrew it by Notice dated March 12, 2021. (ECF No. 139.) The

3

(1) All property owners within a 5-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence;

(2) All residents and former residents with more than one year of residence within a 5-mile radius of the Portsmouth Site or other geographic designation as supported by future scientific evidence;

(3) All former students at Zahn's Corner Middle School from 1993 to its closure as well as their parents; and

(4) All property owners with property within 500 yards of the Scioto River downstream of a point 500 yards upstream of Piketon until its confluence with the Ohio River at Portsmouth.

(ECF No. 142 at ¶ 93.)

## II.

Through their current motion, Plaintiffs seek to compel responses to seven Requests for Production and two Interrogatories. These discovery requests, separated by category, include:

**Releases from the Portsmouth Site**

**RFP 11**: Provide all documents in your possession either received from or sent to any local, state, or federal regulatory agency or members of the press concerning [] Activities at the Plant, or Hazardous Substances at the Portsmouth Site.

**RFP 34**: Provide documents relating to any real or potential violations or deficiencies ever issued, whether released internally or externally, in relation to any environmental or worker safety permit held by you for the Portsmouth Site.

**RFP 37**: Produce all documents related to the detection or discovery of [] or wastes of any kind, in HVAC systems, HVAC filters or devices, or in stacks, discharge devices, or air or dust-handling conveyances at the Portsmouth Site.

**RFP 38**: Produce all documents related to the testing, inspection, repair, or restoration of any stacks, discharge devices, vents, or other air and water emission conveyances at the Portsmouth Site. Include documents related to proposed or implemented upgrades to the facilities at the Portsmouth Site.

---

Court further notes that Plaintiffs' motion to compel cites to the class definition as set forth in the Second Amended Complaint. (ECF No. 153 at 5-6 citing ECF No. 78 at ¶ 81.)

**Interrogatory 5**: Identify the full name, current residence address, phone number, email address, job title, and job description of any person that tested emissions from the Portsmouth Site or implemented emission policies at the Portsmouth Site to ensure that your Activities did not Release harmful substances into the environment or surrounding property. For each such person, also describe the dates testing occurred, describe those tests, and state the result of those tests.

**Interrogatory 17**: Describe in detail any ways in which the monitoring or testing procedures with respect to any of the Portsmouth Site's emissions have changed from the period of time when you first began to operate at the Portsmouth Site through and including the present.

**Environmental and Human Health Risks**

**RFP 9**: Produce documents describing or discussing environmental and/or human health risks and/or risk assessments and/or dose assessments for any areas which are associated with any exposure to materials found at the Portsmouth Site.

**RFP 43**: Produce copies of all Material Safety Data Sheets (MSDS) and Safety Data Sheets (SDS) that reference or concern any … Hazardous Substance, as well as any documents related to said MSDS and SDS.

**RFP 44**: Produce all health physicists'—including those health physicists at the Portsmouth Site and those offsite—plans, procedures, and protocols in your possession concerning any of the Portsmouth Site's operations or anyone's safety or wellbeing in connection with the Portsmouth Site's operations.

(ECF No. 153 at 2-3.)

Plaintiffs variously describe these requests as seeking "potential evidence of releases" or as relating to "conduct tied to releases of hazardous chemicals." (ECF No. 153 at 12.) Further, they argue that "evidence of these releases is necessary to prove causation." (*Id.*) They additionally state that "[a]s these requests all seek potential evidence of releases, they should be permitted during the class certification phase to prove causation." (*Id.*) Plaintiffs request that the Court "order Defendants to produce every document that is relevant to prove the causation of Plaintiffs' claims." (*Id*. at 14.) They also contend that discovery relating to the human and environmental health risks will allow

them to "craft a reasonable geographic class area." (*Id*. at 13.) In moving to compel, Plaintiffs also argue that bifurcated discovery is not appropriate.

Defendants contend that Plaintiffs are not entitled to discovery regarding evidence of releases because it is not necessary for class certification. More specifically, Defendants assert that: (1) causation is not appropriate class discovery; and (2) regardless, Plaintiffs do not define their proposed class in terms of the class members' exposure to materials released from the plant. (ECF No. 157 at 6-7.) Further, Defendants contend that, with respect to discovery relating to environmental and human health risks, proof of damages is not required at this stage. Beyond this, Defendants contend that the requested discovery is overly broad.

### III.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Consistent with this, Local Rule 37.1 requires the parts to "exhaust[ ] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1. Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion. *Id.* The parties have completed these processes.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is

well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery' " because " '[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance

8

'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

## IV.

Initially, the Court quickly will dispense with Plaintiffs' arguments against bifurcated discovery. First, Plaintiffs agreed to proceed in this manner and such method of discovery was ordered by the Court. Further, Plaintiffs did not object to this agreed upon procedure for nearly eighteen months. Significantly, the case law Plaintiffs cite as the basis for their apparent change of heart well precedes their original agreement to bifurcate. Moreover, despite Plaintiffs' claim that bifurcation is routinely disfavored, it is not uncommon for courts in this Circuit to order such discovery. *See, e.g., Chenault v. Beiersdorf, Inc*, No. 1:20-CV-174, 2020 WL 5016795, at *2 (S.D. Ohio Aug. 24, 2020) (bifurcation of discovery determined to be appropriate over Plaintiff's opposition where Court found it would add to a timely determination on the class certification motion; promoted judicial economy and class issues and merit-based discovery did not have considerable overlap); *Ballard v. Kenan Advantage Grp., Inc.,* No. 5:20CV1042, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (bifurcated discovery ordered over Plaintiff's objection for similar reasons). Most notably, however, Plaintiffs' challenge to bifurcated discovery appears to be an tacit acknowledgment that the discovery they seek is not appropriate at the class certification stage.

Perhaps in recognition of this fact, Plaintiffs alternatively argue that causation is a class certification issue. This argument, however, fares no better. Initially, Plaintiffs assert that the "court's class certification inquiry is [] *required* to reach into the merits of the action in order that the court satisfy its obligation to conduct a 'rigorous analysis.'" (ECF No. 153 at 7.) In support of this position, they rely heavily on *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131

9

S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  The Sixth Circuit, however, citing *Dukes*, has explained the Court's obligation at the class certification as follows:

> [P]ermissible inquiry into the merits of the plaintiffs' claims at the class certification stage is limited:
>
>> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.
>
> …
>
> The Supreme Court's recent opinions in *Amgen* and *Dukes* now clarify that some inquiry into the merits may be necessary to decide if the Rule 23 prerequisites are met. *Amgen,* 133 S.Ct. at 1194–95; *Dukes,* 131 S.Ct. at 2551–52. *Amgen,* however, admonishes district courts to consider at the class certification stage only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied. *See Amgen,* 133 S.Ct. at 1194–95. In other words, district courts may not "turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012).

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851-852 (6th Cir. 2013) (additional citations omitted); *see also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) ("[m]erits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").  Consequently, to the extent that Plaintiffs contend that the Court is *required* to address the merits at the certification stage, they greatly overread *Dukes*.

As the above discussion instructs, the only issue here is whether evidence of releases directed to the issue of causation is necessary to a decision as to whether the Rule 23 prerequisites have been met.  *See Dukes,* 564 U.S. 338, 351.  Plaintiffs contend that such evidence is necessary to determine whether a geographic class, as that proposed here, is reasonably defined.  Defendants disagree.  According to Defendants, at the certification stage, Plaintiffs need only establish that causation is *provable* on a class-wide basis but are not required

10

to *prove* causation. Defendants note that, to this end, they already have agreed to provide (1) information to identify the non-radioactive[2] chemicals held at the Portsmouth site and (2) results of sampling conducted in the surrounding areas. The Court concludes that Defendants have the better argument.

Courts consider causation to be a merits issue. *See, e.g., Gates v. Rohm & Haas Co.,* No. CIV.A.06-1743, 2007 WL 1366883, at *5 n. 13(E.D. Pa. May 3, 2007) (following bifurcation of discovery between issues related to class certification and the merits the court recognized that "[c]ausation is a separate issue that is more properly addressed after the parties have conducted discovery on the merits."); *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.,* 198 F.R.D. 41, 47 (E.D.N.Y. 2000) ("the Court cannot address the question of causation on the merits, because the issue is being examined in the context of a motion for class certification.") Plaintiffs do not seriously contend otherwise. Rather, as noted, Plaintiffs appear to concede that causation is a merits issue in arguing against bifurcation. Further, Plaintiffs' argument is limited to repeated declarations, without citation to authority, that causation is a class certification issue.

Instead, Plaintiffs rely heavily on *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D. Ohio 1991) for the proposition that evidence of releases/causation is required at the class certification stage. As Defendants note, however, *Boggs* easily is distinguishable. In *Boggs*, the Court described the proposed class as "all persons living within a six mile radius of the Portsmouth Plant whose persons or property have been exposed to radioactive or hazardous

---

[2] Defendants' brief states "non-hazardous chemicals" (ECF No. 157 at 9) but as the Court understands the further description of Defendants' documents as set forth above, it seems that Defendants mean "non-radioactive." (*Id.* at 3.)

wastes released from the plant." *Id*. at 60-61. Plaintiffs in the present case have not defined their proposed class in terms of exposure.

This decision not to define the class in terms of exposure also distinguishes this case from the additional cases cited by Plaintiffs. For example, in *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 382 (D. Colo. 1993), the proposed class was defined as "[a]ll natural persons residing or having resided during the operating history of Rocky Flats within the boundaries of the Medical Monitoring Class Area." The "Medical Monitoring Class Area" was further defined "with reference to geographical representations of exposure or dose levels (alluding to exposure to plutonium and volatile organic compounds ("VOCs")) received by segments of the exposed population, known as "dose or exposure contours". Consequently, given these definitions, the court noted that the plaintiffs had demonstrated many common issues of law and fact including, *inter alia*, "whether defendants exercised reasonable care to prevent the release of hazardous radioactive and nonradioactive materials from Rocky Flats; what materials were released, in what quantities; what caused the releases; [and] what precautions to avoid emissions were taken; …." *Id.* at 388-389. The court further noted that, each plaintiff's claim "depends upon proof concerning these common issues," in essence confirming the merits related nature of the evidence addressed to these questions.

Similarly, in *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319–20 (C.D. Cal. 1998), the classes the plaintiffs sought to certify were defined as persons who have lived, worked, and/or owned real property in a bounded geographic area "through which radioactive contaminants and/or hazardous, non-radioactive substance released from the Rocketdyne Facilities were dispersed by means of air currents, surface runoff, and subsurface groundwater." In that case, the Court was considering the sufficiency of the plaintiffs' evidence submitted to

demonstrate the reasonableness of its class definitions. *Id*. at 321. This evidence consisted of toxic dispersion maps based on experts' models. *Id*. at 320. At issue were certain expert assumptions relating to the release of particular substances and by extension the impact on the reliability of this expert modeling. *Id*. As Defendants point out here, of significance is the fact that certain modeling was based, at least in part, on release *assumptions*.

Plaintiffs also cite to *Ludwig v. Pilkington N. Am., Inc.,* No. 03 C 1086, 2003 WL 22478842 (N.D. Ill. Nov. 4, 2003). In that case, the plaintiffs defined their class as all persons who reside or own property in Naplate. *Id.* at *1. In the context of considering commonality, the court found that "whether [the defendant] mishandled arsenic containing waste and whether that waste migrated from [the defendant's] property to other properties in Naplate predominate." *Id*. at *5. Applying the reasoning of *Ludwig* here, the relevant issue would appear to be *whether* non-radioactive hazardous substances migrated from the Portsmouth site over the defined geographic area. Plaintiffs do not dispute that Defendants have provided, or agreed to provide, environmental sampling data extending to approximately 13 miles from the Portsmouth site and documents sufficient to identify the type and quantity of non-radioactive hazardous chemicals stored at the Portsmouth site.

Plaintiffs defend their proposed class definition, noting their position that it does not constitute an impermissible "fail-safe class."[3] Plaintiffs assert that any reference to exposure in their proposed class definition would, by default, result in a proscribed fail-safe class. (ECF No. 153 at 4: "Adding 'exposure' to the definition would make the putative class a 'Fail Safe

---

[3] A "fail-safe" class is a class that cannot be defined until the case is resolved on its merits. *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 538 (6th Cir. 2012(citing *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). As Plaintiffs contend, such class definitions are impermissible. *Id.*

Class.'")  The adequacy of Plaintiffs' class definition, however, is not an issue to be addressed at this juncture.  As Defendants point out, regardless of the reasoning, Plaintiffs did not define their class in terms of exposure.  Accordingly, they have not demonstrated, for class certification purposes, a need for their requested discovery relating to releases/emissions.

Further, Plaintiffs' argument that they are entitled to class discovery on the issue of "human and environmental health risks" is equally unavailing.  Plaintiffs contend that such information is relevant to the issue of property damage. (See ECF No. 13 at 17 "For trespass under Ohio law, a plaintiff can show property damage by showing a likelihood of harm to human health.")  However, proof of injury is not required at the class certification stage.  *See, e.g., Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) ("[at] the class certification stage, plaintiffs may demonstrate that these elements are susceptible to generalized proof by disclosing a suitable methodology"); *see also Cmty. Refugee & Immigr. Servs. v. Registrar, Ohio Bureau of Motor Vehicles*, 334 F.R.D. 493, 503 (S.D. Ohio 2020) (citing *Rikos*, 799 F.3d at 503 (at the certification stage, the plaintiffs need not show that all class members have been injured in precisely the same way or were in fact injured at all)).

V.

For these reasons, the Motion to Compel (ECF No. 153) is **DENIED.**

**IT IS SO ORDERED.**

**DATED:  September 16, 2021**          /s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**

!