## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| URSULA MCGLONE, et al., | : | |
| | : | Case No. 2:19-cv-02196 |
| Plaintiffs, | : | |
| | : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| CENTRUS ENERGY CORP., et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on Defendants Centrus Energy Corp., United States Enrichment Corporation, Uranium Disposition Services, LLC, BWXT Conversion Services, LLC, Mid-America Conversion Services, LLC, Bechtel Jacobs Company, LLC, LATA/Parallax Portsmouth, LLC, and Fluor-BWXT Portsmouth, LLC's ("Defendants") Motion to Dismiss. (ECF No. 150). After careful review of the parties briefing, the Court finds that oral argument is not necessary to the fair resolution of this matter. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (*Id.*).

## I.    BACKGROUND

### A.  Factual Background

On May 13, 2019, Zahn's Corner Middle School in Piketon, Ohio abruptly closed. (ECF No. 142 ¶ 5). Hazardous levels of enriched Uranium were found inside the school building and Neptunium-237 was detected by a neighboring air monitor. (*Id.*). Nearby, several plants operated at a 3,777-acre site ("Portsmouth site" or "PORTS"). (*Id.* ¶ 2). The plants enriched Uranium, used

1

centrifuge-related equipment, converted depleted uranium hexafluoride, and provided, at least some, environmental remediation and waste management services.  (*Id*. ¶¶ 32–46).

Ursula and Jason McGlone, Adam and Brittani Rider, Joshua and Rachel Ross, Patsy Brownfield, and Mickey and Heather Tackett, as well as their minor children live within three miles of the Portsmouth site.  (*Id.* ¶¶ 65–69).  They allege that their properties—much like Zahn's Corner elementary school—are contaminated with radioactive and toxic materials.  (*Id.*).  Moreover, they assert that the contamination comes from operations that took place at the Portsmouth site.  (*Id.*).  Since at least 1993 to present, the Defendants operated or operate a facility at the PORTS site engaged in the above enumerated activities.  (*Id.* ¶¶ 32–46).  Only after the sudden closing of Zahn's Corner, however, did the landowners file suit.  (*See id.* ¶¶ 71–73).

## B. Procedural Background

Ursula and Jason McGlone, Adam and Brittani Rider, Joshua and Rachel Ross, Patsy Brownfield, and Mickey and Heather Tackett, proceeding on behalf of themselves, their minor children, and all others similarly situated, initiated this action on May 26, 2019.  (ECF No. 1).  On December 10, 2019, Plaintiffs filed their first amended complaint.  (ECF No. 64).  Approximately thirty days later, Plaintiffs filed their second amended complaint.  (ECF No. 78).  Defendants followed with a timely Motion to Dismiss.  (ECF No. 83).  On July 31, 2020, this court issued an order granting in part and denying in part Defendants' Motion to Dismiss the second amended complaint.  (ECF No. 113; *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-02196, 2020 WL 4431482, at *2 (S.D. Ohio July 31, 2020) ("*McGlone I*")).

In *McGlone I*, this Court held that Plaintiffs failed "to state a cognizable claim under the Price-Anderson Act … [b]ecause Plaintiffs [did] not allege that they or their properties were exposed to radiation levels in excess of the limits set forth in 10 C.F.R. § 20.130." *Id.* at *5.  Moreover, Plaintiffs claims for negligence/gross negligence, trespass, nuisance, ultra-hazardous

activity/absolute liability/strict liability, and injunctive and equitable relief of medical monitoring were similarly dismissed. *Id.* at *6. Specifically, these alternative claims—a term Plaintiffs used to describe them—were based on identical theories as its Price-Anderson Act ("PAA") claim, just brought under state law. *Id.* There, the Court found that under *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1549 (6th Cir. 1997), these state law claims were preempted by the PAA. *Id.* Further, Plaintiffs' claim "for a declaratory judgment that Price-Anderson Act preemption violates their due process rights" was also dismissed. *Id.*

Additionally, Plaintiffs asserted a claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA); a medical monitoring claim; and an additional request for a declaratory judgment. *Id.* at *1. The Court found the CERCLA claim insufficient because Plaintiffs "failed to allege any necessary, recoverable response costs that are consistent with the National Contingency Plan." *Id.* at *11. The medical monitoring claim failed to stand as an independent cause of action. *Id.* at * 16. And finally, the Court dismissed Plaintiffs additional declaratory judgment claim as duplicative of its other asserted causes of action. *Id.*

Following *McGlone I*, Plaintiffs filed a third amended complaint, but subsequently withdrew it on March 12, 2021. (ECF No. 139). On March 23, 2021, Plaintiffs filed their Fourth Amended Complaint. (ECF No. 142). There, Plaintiffs allege various theories of liability, premised on federal and state law:

**Federal Causes of Action**

    1)    **<u>Count One:</u>** Violation of the Price-Anderson Act;

**State Causes of Action**

    2)    **<u>Count One (A):</u>** Negligence/Gross Negligence;

    3)    **<u>Count One (B):</u>** Trespass;

    4)      **Count One (C):** Nuisance;

    5)      **Count One (D):** Ultra-Hazardous Activity/Absolute Liability/Strict Liability;

**Non-radioactive hazardous substances/wastes only**

    6)      **Count Two (A):** Negligence/Gross Negligence;

    7)      **Count Two (B):** Trespass;

    8)      **Count Two (C):** Nuisance;

    9)      **Count Two (D):** Ultra-Hazardous Activity/Absolute Liability/Strict Liability;

(ECF No. 142 ¶¶ 111–211). On May 24, 2021, Defendants filed their Motion to Dismiss. (ECF No. 150). Plaintiffs timely filed their Response in Opposition (ECF No. 152), and Defendants timely followed with their Reply. (ECF No. 154). This motion is now ripe for review.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Finally, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for

relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019).

## III.   LAW & ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint for a failure to state a claim upon which relief can be granted on several bases. First, Defendants assert that Plaintiffs' federal claim fails because: (1) the claim is time barred as to some Defendants; and (2) they fail to allege necessary elements. (ECF No. 150 at 6, 19). Additionally, Defendants maintain that Plaintiffs' state law claims as to the minor litigants must fail because each of the claims derives from property ownership. (*Id.* at 34). Because the minor litigants cannot own property, Defendants say, the claims necessarily fail. (*See id.*). Finally, Defendants argue that the state law claims are also time-barred, resting on the same reasoning as its attack on the PAA claim. (*Id.* at 35). The Court will address each of these arguments in turn.

### A.  Motion to Dismiss Price-Anderson Act claim

In *McGlone I*, this Court held, "[t]o prevail on a claim under the Price-Anderson Act, Plaintiffs must establish four elements: (1) Defendants released radiation into the environment in excess of federal regulatory limits; (2) Plaintiffs were exposed to this radiation; (3) Plaintiffs have injuries; and (4) radiation was the cause of those injuries." *McGlone I*, 2020 WL 4431482, at *2 (citing *In re TMI*, 67 F.3d 1103, 1119 (3d Cir. 1995)).

Here, Defendants argue that Plaintiffs fail to allege claims under the PAA because: (i) those claims are time-barred against some defendants; and (ii) they fail to allege all elements of a PAA claim. (ECF No. 150 at 11, 24). The Court will consider these arguments in turn.

*1. Parties Arguments as to Whether PAA Claims are Time-Barred*

Defendants argue that Plaintiffs PAA claims as to Defendants Bechtel Jacobs, UDS, LATA/Parallax are time-barred by the relevant statute of limitations. (*Id.* at 24). First, Defendants contend that courts may dismiss a claim when it is time-barred on its face. (*Id.*) (citing *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). Moreover, Defendants maintain, there is no specified statute of limitations in the PAA. Instead, say Defendants, the PAA incorporates the relevant state's law regarding any applicable statutes of limitations. (*Id.*) (citing *Day v. NLO, Inc.*, 3 F.3d 153, 154 n.1 (6th Cir. 1993)). As such, because Ohio is the relevant state, the Court should look to Ohio law in determining the applicable statute of limitations. (*See id.*). Further, Defendants reason, because Plaintiffs attempt to allege injuries of bodily harm and property, the relevant statute of limitations is two and four years respectively. (*Id.*) (citing R.C. 2305.10(A) (bodily injury) and R.C. 2305.09 (property injury)). Accordingly, Defendants contend that the claims against Bechtel Jacobs, UDS, LATA/Parallax should be dismissed because Plaintiff alleges that they last operated at the site in question more than four years ago (the longer of the two statutes of limitations). (*See id.* at 25).

In support, Defendants also argue there are no applicable exceptions or tolling that applies to the relevant statute of limitations. (*See id.* at 31). Although property claims are subject to the discovery rule, it is Plaintiff's burden to plead that rule. (*Id.*). Moreover, Plaintiffs had constructive notice of the releases—thus, the discovery rule is inapplicable. (*Id.*at 32). Indeed, say Defendants, Plaintiffs acknowledge this notice in their Complaint. (*Id.*). Similarly, Defendants contend, that neither equitable estoppel nor fraudulent concealment—other possible exceptions to the statute of limitations —apply. (*Id.* at 33). That's because, according to Defendant, Plaintiffs did not plausibly plead the necessary elements for either theory. (*See id.*). Accordingly, say Defendants, the claims should be dismissed.

Plaintiffs contend that the Defendants argument about the statute of limitations is improper and invalid. (ECF No. 152 at 30). First, they claim it is improper because Defendants have waived this argument. (*Id.*). Plaintiffs note that the Sixth Circuit has not decided this issue directly; so, for support, they rely primarily on an Eleventh Circuit decision. (*Id.*) (citing *Krink v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3 ed. 2004)). In addition to a number of out-of-district decisions, they also rely on *Williamson v. Recovery Ltd. Partnership*, No. C2-06-292, 2009 WL 3172648, at *3 (S.D. Ohio Sep. 30, 2009).

Next, Plaintiffs claim that in any event the discovery rule overcomes Defendant's statute of limitations argument. (*Id.* at 31) (citing *Lally v. BP Products North America, Inc.*, 615 F.Supp.2d 654, 660 (N.D. Ohio 2009)). While Plaintiffs do not dispute the four-year statute of limitations, they say it has not run because they were not aware of the harm to their properties until they performed testing. (*Id.*). Moreover, Plaintiffs say, Defendants arguments asserting constructive notice are unpersuasive. (*Id.* at 32). Defendants rely on Annual Site Environment Reports ("ASERs") to support their theory that Plaintiffs had notice of their claim because the ASERs published information about releases. (*Id.* at 9, 32). Yet, Plaintiffs point out that the same document Defendants say conclusively establishes releases below the legal limit cannot also be the notice of an illegal release by Defendants. (*See id.*). Finally, Plaintiffs assert that the case law Defendants rely on is either mischaracterized or does not support the proposition that PORTS conclusively did not release contaminants above the legal limit. (*See id.*).

### a. Waiver

As a threshold matter, it is undisputed by the parties that the Sixth Circuit has not spoken directly on this issue. Both parties rely on decisions within this district that support Defendants'

argument that its statute of limitations is not waived. Plaintiffs rely on *Williamson v. Recovery Ltd. Partnership* for the proposition that the "filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading." *Id.* (citing 2009 WL 3172648, at \*3). In *Williamson*, the Court relied on the Sixth Circuit's guidance regarding Federal Rule of Civil Procedure Rule 12 in *English v. Dyke, 23 F.3d 1086* (6th Cir. 1994):

> Subdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. He cannot delay the filing of a responsive pleading by interposing these defenses and objections in piecemeal fashion but must present them simultaneously. Any defense that is available at the time of the original motion but is not included, may not be the basis of a second pre-answer motion.

*Id.* (citing *English*, 23 F.3d at 1090). The *Williamson* Court then noted that "Rule 12(g) … does prohibit a party who makes a Rule 12 motion that omits a Rule 12 defense available at the time from making a subsequent motion based on the omitted defense." *Id.* (citing *English*, 23 F.3d at 1090). This is true despite the fact that "the three defenses listed in Rule 12(h)(2) [including failure to state a claim upon which relief may be granted] may be raised on a motion under rule 12(c) for judgment on the pleadings, on a summary judgment motion, or at trial." *Id.* (citing Wright & Miller, supra, at § 1385).

Accordingly, the *Williamson* Court found that because "Defendants have not asserted, and the record cannot support a conclusion, that they had no knowledge of the bases of the defenses they raise in the instant Motions to Dismiss at the time they filed their first motions under Rule 12(b) ... [their] Motions to Dismiss [on those bases] were denied." *Id.* The Rule 12 defense in which the *Williamson* Court was referring were those several categories of defenses listed in 12(b).

*See id.* Indeed, the Defendants there filed its first Motion to Dismiss against Plaintiff's initial complaint upon two bases: 12(b)(1) (lack of subject matter jurisdiction); and (2) 12(b)(3) (improper venue). *Id.* at *2. The Court denied that Motion. *Id.* Then, Plaintiff filed an Amended Complaint. *Id.* Defendants filed its second Motion to Dismiss, this time based upon a new 12(b) category: 12(b)(6). The *Williamson* Court then denied this second Motion to Dismiss relying on *English*. *Id.* at *3.

Defendants, recognizing this point, rely on *Premier Dealer Servs., Inc. v. Allegiance Administrators, LLC*. (*See* ECF No. 154 at 29–30) (citing No. 2:18-CV-735, 2019 WL 1981864, at *4 (S.D. Ohio May 3, 2019)), which clarifies the level of generality at which the rule was supposed to operate. *Premier Dealer Servs., Inc.*, 2019 WL 1981864, at *3–4. There, Plaintiffs asserted a similar argument as those in *Williamson*. Unlike the Defendants in *Williamson*, however, the Defendant there had "raised a Rule 12(b)(6) defense in its original pre-answer motion." *Id.* at *4. As such, the Court found that because they had asserted this category of defenses, "its Rule 12(b)(6) defense was not waived in its Second Motion to Dismiss." *See id.*

Moreover, it is important to note the thrust of the rule first articulated in *Williamson*. Even when the Court found that the Defendant had waived its ability to assert a 12(b)(6) defense in its pre-answer motion, the Court explained the rule's limits:

> The Court is mindful, however, that though its second Rule 12(b) motions have been prohibited, Defendants may raise the defenses in a post-pleading dispositive summary judgment motion, or at trial.

*Williamson*, 2009 WL 3172648, at *3.

Finally, because many of the cases advanced by Plaintiffs—as cited in *Premier* decision— actually stand for the proposition articulated by Defendants, this Court finds the rule articulated by *Williamson* and clarified in *Premier* persuasive. Accordingly, Plaintiffs' waiver argument is rejected and the Court will consider Defendants' statute of limitations argument on the merits.

*b. Whether Plaintiffs Pled Discovery Rule*

Next, the parties do not dispute that the relevant statute of limitations is determined by state law. Further, the parties do not dispute that the four-year statute of limitations as prescribed by Ohio Revised Code applies. Although Defendants assert several theories of why the statute of limitations has run (*See* ECF No. 150 at 24–34), the Plaintiffs only respond to one: the applicability of the discovery rule in this case. (*See* ECF No. 152 at 31). While the parties do not dispute whether this rule applies to such actions generally (property-based claims under PAA and state law), Defendants argue that Plaintiffs failed to plead it. Plaintiffs urge the opposite.

Generally, "under Ohio law, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Metz v. Unizan Bank*, 649 F.3d 492, 497 (6th Cir. 2011) (quoting *Collins v. Sotka*, 81 Ohio St.3d 506, 692 N.E.2d 581, 582 (1998)). Yet, "the discovery rule provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 470 (6th Cir. 2013) (quoting *Flagstar Bank, F.S.B. v. Airline Union's Mortg*. Co., 128 Ohio St.3d 529, 947 N.E.2d 672, 675–76 (2011)).

Accordingly, "the running of the limitations period is tolled until the injury is discovered or should have been discovered through the exercise of reasonable diligence. Constructive notice is therefore sufficient to start the [applicable time-period], and [n]o more than a reasonable opportunity to discover the [injury] is required to start the period of limitations." *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 690–91 (S.D. Ohio 2011) (citing *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454, 635 N.E.2d 1326 (1993)).

Here, Plaintiffs say they received notice of the damage to property once they had testing performed on their land. (ECF No. 152 at 31). Because they allege this testing is well within the

10

four-year time-period, their claim is still alive. Further, Plaintiffs argue in the alternative that the earliest they had notice of property damage was in May of 2019 when the sirens went off near Zahn's corner elementary. (*See id.* at 32).

Defendants argue that Plaintiffs not only failed to allege that they didn't know about the property damage but they also had constructive notice. (ECF No. 150 at 21). Defendants again point to the ASERs for support. (*See id.*). Plaintiffs rejoin, however, noting that Defendants already argued that the ASERs conclusively established that Defendants did not release radioactive materials in excess of federal limits. (ECF No. 152 at 32). How, then, Plaintiffs ask, can a document provide notice of damage and conclusively prove there was no damage? (*See id.*).

Plaintiffs' point is well taken. Although Plaintiffs assert a property damage claim, the foundation of that claim relies on dose limits to humans. (*See* ECF No. 152 at 22–23). While a trespass claim does not require pollution to be radioactive, the PAA claim necessarily does. In fact, Plaintiffs' arguments are even more narrow than that: the PAA property claim Plaintiffs allege asserts that Defendants released radioactive material in such amounts that it exceeded regulatory dose limits and has rendered their properties less safe. The consequences of such an assertion are twofold: loss of use of that property; and the damage to the affected properties' marketability. So, while the Court is unwilling to say that it could never be the case, here, at least, the ASERs cannot both form the basis for notice of injury under the PAA and conclusively establish that the Defendants did not violate federal regulations (i.e., there was no injury under the PAA).

Moreover, despite Defendants' insistence on the importance of distinguishing between a continuing and permanent trespass, the operation of the discovery rule here makes that distinction irrelevant. *See Sexton v. Mason*, 2008-Ohio-858, ¶ 53, 117 Ohio St. 3d 275, 284, 883 N.E.2d 1013, 1021. According to Defendants, as to Bechtel Jacobs, UDS, and LATA/Parallax, Plaintiffs must

be asserting a permanent theory because those entities "have been absent from the PORTS for at least 11 years." (ECF No. 150 at 25). As such, Defendants say, the statute of limitations on the allegedly tortious conduct of these entities began to run as soon as these specific Defendants ceded control of the property. (*See id.*). Thus, according to Defendants, the latest the statute of limitations could have stopped for these parties was 2014. (*See id.*).

The case Defendants cite for this proposition, however, explains that the discovery rule continues to operate in the permanent trespass context. In *Sexton*, the Supreme Court of Ohio reconciled its holding there with a previous decision: *Harris v. Liston*, 1999-Ohio-159, 86 Ohio St. 3d 203, 714 N.E.2d 377. The Court explained that when:

> a plaintiff who could not reasonably have discovered that he or she was damaged will not be foreclosed from filing suit within four years of the date when the damage becomes evident or should have become evident, even if the defendant did not exert continuing control over the alleged source of the damage during that period.

*Sexton v. Mason*, 2008-Ohio-858, ¶ 53. Thus, because the Plaintiff adequately pled the discovery rule, the Court need not determine which theory Plaintiffs intended to plead because the cases upon which the Defendants rely demonstrate that the discovery rule renders this distinction irrelevant.

Finally, when viewing the Complaint in the light most favorable to Plaintiffs as this Court is bound to do, Plaintiffs earliest allegation of notice was when they heard the sirens going off at Zahn's Corner. *Directv, Inc.*, 487 F.3d at 476; (ECF No. 142 ¶ 5). Because it is undisputed they filed suit within the month (*See* ECF No. 1), the operation of the discovery rule precludes Defendants statute of limitations defense. Defendants' Motion to Dismiss on this basis is **DENIED**.

### 2. *Whether Plaintiffs Failed to Allege Elements of PAA Claim*

#### a. *Whether Plaintiff Were Exposed to Radiation above Federal Limits*

Defendants argue that Plaintiffs fail to allege a necessary element of a PAA claim: namely, that they were exposed to radiation in excess of federal limits. (ECF No. 154 at 10). Although Plaintiffs attempt to satisfy this pleading standard through several methods, according to Defendants, each fails. Even if Plaintiffs asserted exposure calculations were plausible—and Defendant contends they are not, without tying those calculations to a single Plaintiffs' exposure, the calculations do not assist Plaintiffs in meeting its pleading burden. (*Id.* at 14, 19). Defendants also argue that Plaintiffs' attempt to use a different standard regarding the federal limits of radiation exposure—one promulgated by the EPA—do not help Plaintiffs. (*Id.*). Defendants insist that the NRC conclusively establishes the standard of care that Defendants must abide and that adopting the EPA standard would be counter to established law. (*Id.* at 14). Finally, Defendants maintain that publicly available information refutes the narrative Plaintiffs advance: such information shows that there has been no exposure over the relevant time period about which Plaintiffs complain. (*Id.* at 21). The Court considers each in turn.

### i.  *The Appropriate Standard*

Defendants argue that Plaintiffs impermissibly rely on the EPA standard when alleging violations of the PAA. First, Defendants, relying on *Lees v. Thermo Electron Corp.*, No. C2-06-984, 2008 U.S. Dist. LEXIS 86367, at *36 (S.D. Ohio Sept. 4, 2008) and *Ajamu v. City of Cleveland*, No. 1:15CV1320, 2017 U.S. Dist. LEXIS 123363, at *9 (N.D. Ohio Aug. 4, 2017)), maintain that Plaintiffs have waived this argument. (ECF No. 150 at 18). Next, Defendants assert that under *McGlone I* this Court held the NRC standard to be appropriate and rejected adopting an alternative standard. (*Id.*). Further, say Defendants, Plaintiffs have provided no authority where the EPA standard displaces the one identified by the NRC. Indeed, in *Carey v. Kerr- McGee*

*Chem. Corp.*, 60 F. Supp. 2d 800, 809 (N.D. Ill. 1999), the district court expressly rejected a litigant's insistence to use the EPA standard.  (*See id.* at 19)

Plaintiffs retort contending that it is the Defendants who are using the wrong standard.  As a threshold matter, Plaintiffs note they did not waive this claim.  (ECF No. 152 at 15).  Plaintiffs argue that Defendants wholly mischaracterize the cases they cite for this proposition.  (*See id.*).  Next, while the Plaintiffs acknowledge that 10 CFR § 20.1301 is the proper regulatory directive promulgated by the NRC, they contend it is part (e) rather than part (a) that is controlling.  (*Id.* at 16).  According to Plaintiffs, the Defendants were part of "a fuel cycle"—a fact Plaintiffs note that the Government has acknowledged.  (*See id.* at 9).  Further, because it is part e, the appropriate standard is incorporated from 40 CFR part 190—the so-called EPA standard.  (*See id.* at 14).

Plaintiffs argue Defendants misread *Carey*.  (*Id.* at 16) (citing *Carey*, 60 F. Supp. 2d at 809).  Although it is true that the district court did not adopt the standard found in 10 CFR § 20.1301(e), it was because the Plaintiffs did not allege that the Defendants were part of the "fuel-cycle." (*Id.*).  Accordingly, the district court found that part e did not apply.  (*Id.*).  Here, however, Plaintiffs assert they do allege that Defendants were part of the fuel cycle.  Thus, *Carey*, while relevant, does not support Defendants' position and instead bolsters Plaintiffs'.  (*See id.*).

Additionally, according to Plaintiffs, *McGlone I* is also not a bar to the application of part e.  (*Id.* at 16).  Plaintiffs again note that it is not disputing the propriety of 10 C.F.R. § 20.1301; instead, it disputes the applicability of part a.  (*See id.*).  As such, *McGlone I*'s holding that the NRC standard is appropriate—as opposed to the ALARA—is consistent with Plaintiffs' position. (*Id.*).

Since 1988, the Price Anderson Act has provided would-be Plaintiffs with the right to sue for 'public liability actions' that arise from nuclear incidents." *McGlone v. Centrus Energy Corp.*,

No. 2:19-CV-02196, 2020 WL 4431482, at *2 (S.D. Ohio July 31, 2020) (Marbley, J.) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1549 (6th Cir. 1997)). As this Court articulated in *McGlone I*, "Plaintiffs must establish four elements" to state such a claim: "(1) Defendants released radiation into the environment in excess of federal regulatory limits; (2) Plaintiffs were exposed to this radiation; (3) Plaintiffs have injuries; and (4) radiation was the cause of those injuries." *Id.* (citing *In re TMI*, 67 F.3d 1103, 1119 (3d Cir. 1995)). This Court further finds, and it is undisputed by the parties, that the "federal regulatory limits" articulated in the statutory text is found in 10 C.F.R. § 20.1301.

10 C.F.R. § 20.1301 is entitled "Dose limits for individual members of the public." 10 C.F.R. § 20.1301. The section lays out the maximum doses for members of the public, accounting for differences across scenarios. *See* § 20.1301. Part (a) sets out the general standard applicable to all licensees:

> Each licensee shall conduct operations so that—
> (1) The total effective dose equivalent to individual members of the public from the licensed operation does not exceed 0.1 rem (1 mSv) in a year, exclusive of the dose contributions from background radiation, from any medical administration the individual has received, from exposure to individuals administered radioactive material and released under § 35.75, from voluntary participation in medical research programs, and from the licensee's disposal of radioactive material into sanitary sewerage in accordance with § 20.2003, and
> (2) The dose in any unrestricted area from external sources, exclusive of the dose contributions from patients administered radioactive material and released in accordance with § 35.75, does not exceed 0.002 rem (0.02 millisievert) in any one hour.

§ 20.1301(a)(1)–(2).

Sections (b) through (f), on the other hand, represent special scenarios contemplated by the NRC. For example, (b) deals with licensees that allow members of the public to have access to controlled areas of their operation. *See* 10 C.F.R. § 20.1301(b). There, the NRC commands

that the duty of those licensees does not change just because members of the public are allowed access to their controlled areas.  *See* § 20.1301(b).  Part (c) operates as another duty category that does not apply to all licensees. *See* § 20.1301(c).

Notably, part (d) contemplates a scenario where some licensees are given NRC authorization to exceed the dose standard set out in part (a):

> A licensee or license applicant may apply for prior NRC authorization to operate up to an annual dose limit for an individual member of the public of 0.5 rem (5 mSv). The licensee or license applicant shall include the following information in this application:
>
> (1) Demonstration of the need for and the expected duration of operations in excess of the limit in paragraph (a) of this section;
> (2) The licensee's program to assess and control dose within the 0.5 rem (5 mSv) annual limit; and
> (3) The procedures to be followed to maintain the dose as low as is reasonably achievable.

§ 20.1301(d).  In other words, while (a) appears to set a hard ceiling for licensees at 0.1 rem (1 mSv) per year, the NRC clearly contemplated allowing some licensees—specifically those that could meet the above criteria—to exceed that ceiling.  § 20.1301(d).

Part (e) likewise represents yet another special restriction set out by NRC.  There, it states:

> (e) In addition to the requirements of this part, a licensee subject to the provisions of EPA's generally applicable environmental radiation standards in 40 CFR part 190 shall comply with those standards.

10 C.F.R. § 20.1301(e).  In other words, NRC decided to incorporate the "EPA's generally applicable environmental radiation standards" to ensure its licensees complied with the regulatory scheme as a whole.  *See* § 20.1301(e).  Section (f) appears to serve as a warning for licensees.  *See* § 20.1301(f).  There, it notes that the NRC may "impose additional restrictions … in order to restrict the collective dose."  § 20.1301(f).

16

Thus, when the section is read together, it becomes abundantly clear that the NRC enumerated a series of dose limit categories relating to its licensees, only one of which appears to bind all licensees – part (a). *See* § 20.1301. So, while (b) through (f) may not apply to all licensees in all scenarios, the NRC decided to provide a somewhat comprehensive list of the duties licensees can expect to uphold, where appropriate. *See* § 20.1301. That NRC licensees can expect to have different duties in different scenarios is an uncontroversial proposition. As such, taken together, this list constitutes the "federal regulatory limits" set by the NRC.

The decisional law advanced by Defendants not only fails to refute this conclusion, but instead supports this Court's conclusion. Starting with those in this Circuit, *McGlone I* and the Sixth Circuit case *TNS, Inc. v. NLRB*, 296 F.3d 384, 398 (6th Cir. 2002) are illustrative. In *McGlone I*, this Court rejected "Plaintiffs' argument that 10 C.F.R. § 20.1101 sets the applicable standard in this case, as opposed to § 20.1301." *McGlone I*, 2020 WL 4431482, at *4. There, this Court rejected Plaintiffs' argument to adopt the ALARA (as low as reasonably achievable) standard, in line with several courts within this Circuit that have considered that precise question— i.e., whether the ALARA should displace 10 C.F.R. § 20.1301. *See id.* (citing *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 772 (E.D. Tenn. 2012) ("Several courts within the Sixth Circuit have already rejected this argument.")).

Defendants' emphasis of language in *TNS, Inc. v. NLRB* also does not help its argument. There, the Sixth Circuit considered a decision by the NLRB that TNS, an NRC licensee, violated a provision of the National Labor Relations Act. *TNS, Inc.*, 296 F.3d at 398. A specific issue considered by the Court was whether NRC's failure to "shut down the workplace or remove employees from their jobs for safety or health reasons" should have resulted in the NLRB finding that "a presumption that no 'abnormal danger' exists." *Id.* Defendants argued that the general

proposition that "scientific regulatory agencies such as the NRC should be given extreme deference within their area of expertise" compelled the NLRB's adoption of the presumption. *Id.*

The Court's discussion of the NRC is helpful. *Id.* at 394. The Sixth Circuit acknowledged the general proposition expressed by Defendants that "scientific regulatory agencies such as the NRC should be given extreme deference within their area of expertise." *Id.* at 398 (citing *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103, 1 (1983); *Fed. Power Comm'n v. Florida Power & Light Co.*, 404 U.S. 453, 463 (1972); *Browning–Ferris Indus. v. Muszynski*, 899 F.2d 151, 160 (2d Cir.1990)). Then, the Court asserted, "in speaking particularly of the NRC, the Sixth Circuit has joined with almost every other circuit in holding that NRC safety regulations conclusively establish the duty of care owed by defendants in radiation safety personal injury cases governed by the 1998 [sic] amendments to the Price–Anderson Act." *Id.* (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1552–53 (6th Cir. 1997)). Moreover, it explained the import of this approach: "this deference promotes efficiency, avoids unnecessary duplication of effort and helps to avoid the situation where an agency without expertise in an area countermands the determinations of agencies with that expertise, and thereby frustrates broader purposes." *Id.*

Accordingly, this Court finds no reason to depart from the approach instructed by the Sixth Circuit. As consistent with the Sixth Circuit guidance, this Court recognizes that deferring to agencies like the NRC "promotes efficiency, avoids unnecessary duplication of effort and helps to avoid the situation where an agency without expertise in an area countermands the determinations of agencies with that expertise, and thereby frustrates broader purposes." *Id.* Further, Sixth Circuit precedent binds this Court to recognize "that NRC safety regulations conclusively establish the duty of care owed by defendants in radiation safety personal injury cases governed by the 1998

[sic] amendments to the Price–Anderson Act." *Id.* This Court, therefore, reaffirms its holding in

*McGlone I* that 10 CFR § 20.1301 provides the specific duty of care.

The issue, however, is determining which part of 10 CFR § 20.1301 applies. Plaintiffs

argue that part e applies. (ECF No. 152 at 16). Defendants argue that part e can never support a

personal injury lawsuit under the Price-Anderson Act. (ECF No. 150 at 17). As the above

discussion reveals, this extreme position has little support in the text of the regulation and in

decisional law applying the regulation. The Court rejects Defendants interpretation of the

regulation as Plaintiffs' reading is well taken. This does not, however, resolve the issue. The

question changes from whether (e) could ever apply to whether (e) applies here.

Revisiting the language of the regulation, part (e) provides:

> In addition to the requirements of this part, a licensee subject to the
> provisions of EPA's generally applicable environmental radiation
> standards in 40 CFR part 190 ***shall comply*** with those standards

10 CFR § 20.1301(e) (emphasis added). Thus, the NRC commands those licensees otherwise

"subject to the provisions of EPA's generally applicable environmental radiation standards in 40

CFR part 190" to comply with that provision. § 20.1301(e).

40 CFR Part 190 has two subparts: Subpart A—General Provisions; and Subpart B—

Environmental Standards for the Uranium Fuel Cycle. 40 C.F.R. § 190. Further, Subpart A has

two subsections: Subsection 190.01 Applicability; and Subsection 190.02 Definitions. 40 CFR

part 190.01 provides:

> The provisions of this part apply to radiation doses received by
> members of the public in the general environment and to radioactive
> materials introduced into the general environment as the result of
> operations which are part of a ***nuclear fuel cycle***.

40 C.F.R. § 190.01 (emphasis added). The above regulatory text notes where radiation doses are

being measured (general environment) and which operators can reasonably expect to comply with

this directive (those operations which are part of the nuclear fuel cycle). § 190.01. Part 190.02 is the definition section. There, the regulation defines the phrase nuclear fuel cycle generally and uranium fuel cycle specifically. § 190.02. The uranium fuel cycle is defined as:

> the operations of milling of uranium ore, chemical conversion of uranium, isotopic enrichment of uranium, fabrication of uranium fuel, generation of electricity by a light-water-cooled nuclear power plant using uranium fuel, and reprocessing of spent uranium fuel, to the extent that these directly support the production of electrical power for public use utilizing nuclear energy

40 C.F.R. § 190.02(b). Moreover (b) also includes exclusions from the above definition:

> but excludes mining operations, operations at waste disposal sites, transportation of any radioactive material in support of these operations, and the reuse of recovered non-uranium special nuclear and by-product materials from the cycle.

§ 190.02(b).

*Carey v. Kerr-McGee Chem. Corp.* specifically dealt with an allegation under 40 CFR § 190. 60 F. Supp. 2d at 809 n.3. There, in a footnote, the court explained that because the Defendant-facility was not a nuclear power plant, part 190 was inapplicable. *See id.* This suggests that had the plant been a nuclear power plant, part 190 would have been applicable. *See id.* Thus, Defendants' attempts to use this case as support for the proposition that part 190 could never be the applicable standard of care is belied by the plain language of the opinion. *Id.*

Defendants also rely on a clause within an Advance Notice of Proposed Rulemaking to urge that even the EPA believes that 40 CFR Part 190 does not apply. (ECF No. 154 at 12) (citing Environmental Radiation Protection Standards for Nuclear Power Operations, 79 Fed. Reg. 6,509, 6,512 (Feb. 4, 2014)). Specifically, Defendants assert that 40 CFR part 190 does not apply to the decommissioning of facilities. (*Id.*). Defendants suggest without explaining that the single clause

20

within the advanced notice of proposed rulemaking is sufficient to represent EPAs regulatory position on this matter. (*See id.*). Upon closer examination of the proffered authority, other infirmities of Defendants argument begin to surface. For example, on the first page of that same document, it proclaims that "the Nuclear Regulatory Commission is responsible for ***implementing*** and ***enforcing*** these standards." Environmental Radiation Protection Standards for Nuclear Power Operations, 79 Fed. Reg. 6,509, 6,509 (Feb. 4, 2014) (emphasis added). This suggests that the NRC's position on this matter might control. Yet, as Defendants note, courts must read regulations as a whole. (ECF No. 154 at 15) (citing *In re Anheuser-Busch Beer Labeling Mktg.*, 644 F. App'x 515, 523 (6th Cir. 2016) (citation omitted)). Fidelity to this command, however, and adopting the position advanced by defendants, would unnecessarily frustrate the regulatory scheme.

The consequence of Defendants position is that a commissioned facility within the scope of the regulation would be subject to the standard but a decommissioned facility would not. Absent additional explanation and authority, this position is tenuous. It appears the most important criteria for bringing licensees within the embrace of this regulation is not whether it is currently operating but whether it was ever part of the fuel cycle. *See* 40 C.F.R. § 190.02(b). Indeed, the Advanced Notice of Proposed Rulemaking also states that "[f]or decommissioning and license termination requirements, NRC establishes cleanup criteria in Subpart E of 10 CFR part 20, 'Radiological Criteria for License Termination' ***that are consistent with EPA standards at 40 CFR part 190*."** Environmental Radiation Protection Standards for Nuclear Power Operations, 79 Fed. Reg. at 6,522. (emphasis added). Thus the authority advanced by Defendants is neutral and does little to undermine the applicability of 10 CFR § 20.1301(e).

Defendants also assert that the standard in § 190.10 is unworkable because it only requires that operations be conducted in a manner as to provide reasonable assurance that the dose limits

are not exceeded. (ECF No. 154 at 15). Defendants seize on this language and compare its apparent vagary to the ALARA standard that this and other courts have already rejected. (*See id.*). Defendants' interpretation, however, ignores the very next section: 190.11. 40 C.F.R. § 190.11. The regulation provides that the standard specified in§ 190.10 may be exceeded *only* if the Regulatory agency has granted a variance. *See* 40 C.F.R. § 190.11. ("The standards specified in § 190.10 may be exceeded if: (a) The regulatory agency has granted a variance…."). Thus, the standard is not a suggestion as Defendants insist, but is an upper limit that requires the granting of a variance prior to noncompliance. In other words, the standard is very clear. Defendants' contrary interpretation violates the very principle it relies on for support: namely, that regulations must be read as a whole. (*See* ECF No. 154 at 15) (citing *In re Anheuser-Busch Beer Labeling Mktg.*, 644 F. App'x 515, 523 (6th Cir. 2016) (citation omitted))

Accordingly, this Court finds that the EPA standard of care—as adopted by NRC regulation—not only can support a PAA claim generally, but according to the plain language of the regulations applies when the defendants are part of the fuel cycle pursuant to 40 CFR part 190. 10 CFR § 20.1301(e); 40 CFR § 190.

Plaintiffs have adequately pled that the defendants in question are part of the fuel cycle as defined in 40 CFR Part 190 and incorporated by reference in 10 CFR § 20.1301. *See* 10 CFR § 20.1301(e); 40 CFR § 190. Plaintiffs assert that USEC Inc. operated "what is known as the American Centrifuge Lead Cascade Facility." ("Lead Cascade"). (ECF No. 142 ¶ 39). Despite this facility being currently decommissioned by Centrus American, USEC Inc.'s successor, Centrus is now constructing another Centrifuge Plant known as the American Centrifuge Plant. Plaintiffs assert that these two corporations—Centrus and USEC Inc.—both operated (until approximately 2016 for USEC) or are in the process of constructing (Centrus) a facility that will

undertake similar operations.  (*See id.* ¶ 40).  The process of uranium enrichment appears to fit squarely within the regulatory definition of uranium fuel cycle.  Accordingly, USEC Inc. and Centrus are both subject to 40 CFR Part 190's standards as incorporated by 10 CFR § 20.1301(e).

Further, Plaintiffs assert that Uranium Disposition Services, LLC, BWXT Conversion Services, LLC, and Mid-America Conversion Services, LLC are also part of the fuel cycle.  (*See id.* ¶ 130).  Plaintiffs contend that these defendants operate a "Depleted Hexafluoride Conversion Plant."  (*Id.* ¶¶ 35–37).  "Depleted uranium hexafluoride (DUF6) is a coproduct of the uranium enrichment process" that this plant converts "to a more stable uranium oxide form for reuse, storage, and/or transportation and disposition."  (*Id.*).  These operations appear to fit squarely within the embrace of the regulatory definition of uranium fuel cycle.  40 CFR § 190.02. ("reprocessing of spent uranium fuel").

Defendants Bechtel Jacobs Company, LLC, LATA/Parallax Portsmouth, LLC, and Fluor-BWXT Portsmouth, LLC, Plaintiffs say, were responsible "for environmental remediation at the Portsmouth Site."  (*Id.* ¶¶ 42–46).  Although these operations do not fit so squarely within the regulatory definition, they also do not fit squarely within the regulatory exclusions.  That is, it is possible the EPA intended that once a site was deemed within the regulatory definition that all other operators on the site also fall within the regulatory definition.  *See* 40 C.F.R. § 190.02(b).

Defendants attacks on this point do not meet the allegation that Plaintiffs assert: that Defendants are part of the uranium fuel cycle.  (*See* ECF No. 150 at 18–20).  Instead of arguing that Defendants are not part of the fuel cycle, Defendants offer four reasons why 40 CFR Part 190, should not apply here.  (*Id.*).  First, relying on *Lees v. Thermo Electron Corp.*, No. C2-06-984, 2008 WL 4146375, at *12 (S.D. Ohio Sept. 4, 2008) and *Ajamu v. City of Cleveland*, No.1:15CV1320, 2017 U.S. Dist. LEXIS 123363, at *9 (N.D. Ohio Aug. 4, 2017), they assert that

Plaintiffs have waived this argument.  (*Id.* at 18).  Next, Defendants assert that this Court has already established that the standard in 10 CFR § 20.1301(a) controls in this case.  (*Id.* at 18–19).  Further, Defendants contend that *Carey v. Kerr-McGee Chem. Corp.* is the only case to address 40 CFR Part 190 and it rejected this approach.  (*Id.* at 19).  Finally, Defendants claim that this Court should not adopt 40 CFR Part 190 because it poses the same problems as ALARA: namely the difficulty of administering the standard. (*Id.* at 19–20).

Defendants' contention that Plaintiffs waived argument about the application of 40 CFR Part 190 is rejected.  The first case they cite *Lees v. Thermo Electron Corp.* does not support their position. 2008 WL 4146375, at *1.  There, Plaintiffs filed an Amended Complaint with two claims to which the Defendants Moved to Dismiss.  *Id.* at *12.  In its Response in Opposition, Plaintiffs failed to address the Defendants' Motion to Dismiss regarding one of its claims.  *Id.*  For that reason, the Court held that Plaintiff "waives his opposition to the Motion with respect to Count 2." *Id.*  Defendants appear to be saying, although they offer little explanation, that once a Plaintiff has waived an argument in a responsive memo to a motion to dismiss, that argument is gone forever. And while it is easy to see why an argument is treated as waived in the course of deciding a motion to dismiss that corresponds to the operative complaint, it is questionable to extend that waiver rule to subsequent complaints.  Indeed, it would appear to violate this Circuit's, and indeed the Federal Rules of Civil Procedure's liberal policy regarding amending pleadings.  *See Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("Because Rule 15(a)(2) directs courts to 'freely give leave when justice so requires,' the rule embodies a "liberal amendment policy.").  The other case Defendants rely on for this proposition appears even less appropriate.

24

In *Ajamu v. City of Cleveland,* No. 1:15CV1320, 2017 WL 3336519, at *3 (N.D. Ohio Aug. 4, 2017) the Court was resolving the Defendant's Motion for Summary Judgment. 2017 WL 3336519, at *1. In *Ajamu*, Defendant argued that there was "insufficient evidence to show that Defendant was involved in fabricating or withholding evidence." *Id.* The Court agreed. *Id.* at *3. It appears waiver was not the subject of this case. *Id.* The Court has already demonstrated that the holdings of this Court in *McGlone I* and the Northern District of Illinois in *Casey* do not pose a bar to the applicability of 40 CFR Part 190 here. *See McGlone I*, 2020 WL 4431482, at *1. Finally, as discussed above, this standard does not present the same concerns as ALARA.

In their Reply brief, Defendants rehash and restyle many of their arguments. (*See* ECF No. 154). Defendants again contend that: Plaintiffs misinterpret the holding of *McGlone I*; the EPA itself believes that the limits promulgated in 40 CFR Part 190 do not apply; subjecting Defendants to the requirements in 10 CFR § 20.1301(e) would contravene the PAA; and, Plaintiffs waived their asserted theory regarding EPA dose limits. (*Id.* at 11–17). As discussed above, the Court rejects these assertions. Defendants simply resist the fact that part e is part of the regulation. Thus, even though they vigorously frame part (a) as the only part of the regulation that matters, the inability or unwillingness to engage with parts (b) through (f) is a glaring omission. *See* 10 C.F.R. 20.1301(a)–(f). Having considered all of the ancillary attacks on Plaintiffs' position, the Court finds that Plaintiffs have adequately pled that Defendants are part of the fuel cycle. Accordingly, Defendants attacks fail.

*ii. Hypothetical Calculations*

Defendants argue that they have identified numerous issues with Plaintiffs' calculations of hypothetical exposure to radiation. (ECF No. 150 at 6). Defendants assert that the calculations are being measured against the wrong standard. (*See id.*). When using the right standard, however,

25

Defendants maintain that the calculations do not meet the exposure thresholds set forth in 10 C.F.R. 20.1301(a)(1). (*See id.*). Further, they contend that Plaintiffs' calculations fail to consider: (i) the 2017 EPA Update; and (ii) the background radiation levels in which Plaintiffs are otherwise exposed. (*Id.* at 14). Relying on *Campbell v. Miller*, 835 F. Supp. 2d 458, 465 (S.D. Ohio 2011) (quoting *Iqbal*, 556 U.S. at 679), Defendants assert that the Court may reject implausible allegations. (*Id.*). Thus, according to Defendants, because Plaintiffs' hypothetical calculations are implausible, the Court should reject those assertions.

Plaintiffs respond that its calculations are not only plausible, but when measured against the appropriate standard, demonstrate exposure in excess of federal limits. (ECF No. 152 at 19). As previously noted, Plaintiffs assert that it is part (e) that governs. (*Id.* at 8). Under either standard, Plaintiffs contend that Defendants misread the regulations. (*Id.* at 17). Plaintiffs argue that the relevant measure is the amount of exposure per individual or property, not the amount of release per year. (*Id.*). Finally, Plaintiffs note that Defendants critiques concerning dose calculations—essentially factual disputes—are inappropriate at the motion to dismiss stage. (*Id.* at 18).

Having found that 10 CFR § 20.1301(e) applies to this action, it is important to articulate that standard. Pursuant to 40 CFR § 190.10(a) licensees shall conduct their operations in a manner such that:

> The annual dose equivalent does not exceed 25 millirems to the whole body, 75 millirems to the thyroid, and 25 millirems to any other organ of any member of the public as the result of exposures to planned discharges of radioactive materials, radon and its daughters excepted, to the general environment from uranium fuel cycle operations and to radiation from these operations.

40 C.F.R. § 190.10(a).

As succinctly laid out in a table excerpted from the Fourth Amended Complaint (see below), Plaintiffs allege that every age group that lives on their property, except adults, would be exposed to a dose limit above the federal regulatory limit in violation of 10 CFR § 20.1301. (ECF No. 142-2 at 4); *see also* Table *infra*. Although Defendants attempt to refute the facts alleged by Plaintiffs by attacking their dose calculation methodology, Plaintiffs correctly note that such an argument is impermissible at this stage. (ECF 152 at 18); *Wamer v. Univ. of Toledo*, 27 F.4th 461 (6th Cir. 2022) (reversing the district court and holding that it "erred in failing to construe the complaint in the light most favorable to" plaintiff); *Domus Dev. LLC v. Titan Dev. LLC*, 350 F. Supp. 3d 683, 691 (M.D. Tenn. 2018) ("These kinds of factual determinations are inappropriate for a Rule 12(b)(6) motion."); *Moher v. United States*, 875 F.Supp.2d 739, 757 (W.D. Mich. 2012) ("These disputed [factual] issues may be decided either at trial or on summary judgment under Fed. R. Civ. P. 56, but cannot be decided on a Rule 12(b)(6) motion to dismiss.").

In direct opposition to Defendants' insistence, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in

**Table 2. Committed dose equivalent rates based only on ingestion of soil typified by these samples.**

| Location Data | | | 3-Month Old Infants (mrem/year) | | | 1-Year Old Infants (mrem/year) | | | 5-Year Old Children (mrem/year) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Medium | Sample Number | Client | Effective | Bone Surface | Spleen | Effective | Bone Surface | Spleen | Effective | Bone Surface | Spleen |
| Soil | PIK0034S | Ursula McGlone 1571 Schuster Rd | 45.4 | 197.1 | 368.1 | 15.1 | 49.9 | 127.2 | 7.6 | 24.0 | 68.6 |
| Soil | PIK0005S | Ursula McGlone 1571 Schuster Rd | 15.1 | 84.3 | 115.6 | 4.8 | 18.2 | 39.9 | 2.5 | 9.8 | 21.5 |
| Soil | PIK0040S | Dawn Tackett 106 Randall | 17.6 | 90.9 | 136.7 | 5.7 | 20.5 | 47.2 | 2.9 | 10.6 | 25.5 |
| Soil | PIK0078S | Ross 226 Carrico | 90.8 | 300.9 | 760.9 | 30.6 | 83.4 | 262.9 | 15.3 | 33.9 | 141.8 |
| Soil | PIK0080S | Brownfield 176 Delay Dr | 109.9 | 401.0 | 910.2 | 36.8 | 105.5 | 314.4 | 18.5 | 45.4 | 169.6 |
| Soil | PIK0003S | Brittney Rider 521 Happy Hollow | 3.2 | 96.2 | 0.5 | 0.5 | 14.3 | 0.1 | 0.4 | 11.9 | 0.1 |

| Location Data | | | 10-Year Old Children (mrem/year) | | | 15-Year Old Children (mrem/year) | | | Adults (mrem/year) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Medium | Sample Number | Client | Effective | Bone Surface | Spleen | Effective | Bone Surface | Spleen | Effective | Bone Surface | Spleen |
| Soil | PIK1004S | Ursula McGlone 1571 Schuster Rd | 4.7 | 23.2 | 41.9 | 3.3 | 40.7 | 26.8 | 1.1 | 3.8 | 9.2 |
| Soil | PIK0089S | Ursula McGlone 1571 Schuster Rd | 1.5 | 9.3 | 13.1 | 1.1 | 14.5 | 8.4 | 0.4 | 2.3 | 2.9 |
| Soil | PIK0034S | Dawn Tackett 106 Randall | 1.8 | 10.6 | 15.5 | 1.3 | 18.4 | 10.0 | 0.4 | 2.3 | 3.4 |
| Soil | PIK0013S | Ross 226 Carrico | 9.1 | 20.6 | 86.5 | 5.7 | 16.8 | 55.4 | 2.1 | 3.9 | 19.0 |
| Soil | PIK0050S | Brownfield 176 Delay Dr | 11.0 | 31.7 | 103.4 | 7.0 | 35.4 | 66.2 | 2.6 | 6.4 | 22.8 |
| Soil | PIK0003S | Brittney Rider 521 Happy Hollow | 0.4 | 15.6 | 0.1 | 0.5 | 29.6 | 0.1 | 0.1 | 4.3 | 0.0 |

favor of the plaintiff." *Wamer*, 27 F.4th 461 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Accordingly, this Court accepts the dose calculations as true and draws the inference that this survey of allegedly polluted soil is conservative as it only considers one of the three primary pollution pathways (air, water, soil).

Under this NRC standard Plaintiffs sufficiently allege exposure in excess of federal limits in violation of the PAA. Although Defendants contend that the exposure limits must be tied to an annual release by Defendants, this Court rejects such a narrow construction of the regulation. (*See* ECF No. 150 at 12). The regulation, despite contrary claims, clearly identifies the relevant standard: dose limits per year. *See* 10 C.F.R. § 20.1301; 40 C.F.R. § 190.10. In both 10 C.F.R. § 20.1301 and 40 C.F.R. § 190.10, the directive to the regulated community is to conduct operations in such a way that keeps radiation exposure below these prescribed limits. *See* 10 C.F.R. § 20.1301 ("Each licensee shall conduct operations so that…."); 40 C.F.R. § 190.10 ("Operations covered by this subpart shall be conducted in such a manner…."). This regulatory text does not tell the regulated exactly *how* they must conduct their operations, but instead gives them a standard they cannot exceed (annual dose limits). And while the relevant regulation uses the measure "annual dose equivalent," it is entirely plausible that releases in the present (or prior) year can result in an annual dose limit that is observed the year of the release and years beyond. *See* 10 C.F.R. § 20.1301; 40 C.F.R. § 190.10. Defendants' arguments about Plaintiffs' asserting that all Defendants are liable was considered and rejected in *McGlone I*; absent a new basis for advancing this contention, the Court sees no reason to depart from its initial ruling. *See McGlone I* 2020 WL 4431482, at *14. Thus, Plaintiffs have sufficiently alleged pollution that would in turn result in dose limits that exceed the regulatory maximum in violation of the PAA.

28

*iii.   Publicly Available Documents*

Defendants urge that the Court may consider public information when considering Plaintiffs claims, relying on *Basset v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).   Further, Defendants contend that if a publicly available document contradicts allegations made in the Complaint, the Court must defer to that document.   (*Id.*) (citing *Tufamerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013); *In re Amarin Corp.*, PLC, 2015 U.S. Dist. LEXIS 84080, at *14-15 n.5 (D.N.J. June 26, 2015); *Lilkos v. New York City*, No. 14-cv-05288 (PKC) (LB), 2016 U.S. Dist. LEXIS 136052, at *10-11 (E.D.N.Y. Sept. 30, 2016); *Tex. Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 105 (D.D.C. Sept. 9, 2011)).   To that end, Defendants point to documents produced by the Department of Energy that contradict Plaintiffs claims concerning exposure during the relevant time period.   (ECF No. 150 at 20).   As such, Defendants say, Plaintiffs cannot maintain their PAA claims.

Plaintiffs argue that defendants cannot substitute their own version of the facts at this stage by relying on information outside of the Complaint.   (*See* ECF No. 152 at 20–22).   Further, Plaintiffs maintain that accepting Defendants' argument on this point is too much to bear.   (*Id.*). If it is true, as Defendants say, that these publicly available documents conclusively establish release levels, then such documents would independently establish such allegations in every potential PAA suit.   (*See id.*).   Plaintiffs argue this could not have been what Congress intended. The cases Defendants rely on do not support this proposition.   (*See id.*).

This Court notes that a motion to dismiss "is meant to test the sufficiency of the complaint; it does not resolve the facts of the case."   *Rittenberry v. Citizens Tri-Cty. Bank*, 423 F. Supp. 3d 509, 515 (E.D. Tenn. 2019).   Indeed, "dispute[s] involv[ing] the resolution of facts [are] more appropriately dealt with at the summary-judgment stage or at trial."   *Mills v. Barnard*, 869 F.3d

473, 487 (6th Cir. 2017).  As such "[w]hen considering public documents in the context of a motion to dismiss, [the Court] may not accept a document to decide facts that are in dispute." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 634 (N.D. Ohio 2014).

Although Defendants say that publicly available information refutes Plaintiffs' factual allegations, such an argument is again improper at the motion to dismiss stage.  Defendants ask this Court to take judicial notice of such records and then, on that basis, conclude that Plaintiffs claims are implausible.  The Court finds this invitation to reject Plaintiffs' facts to be in direct contravention of our Circuit's law: this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer*, 27 F.4th 461 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Accordingly, this Court accepts the dose calculations as true and draws the inference that this survey of allegedly polluted soil is conservative as it only considers one of the three primary pollution pathways (air, water, soil).  The public documents offered by Defendants "may not [be] accept[ed] … to decide facts that are in dispute." *Whirlpool Corp.*, 996 F. Supp. 2d at 634.  Plaintiffs have sufficiently alleged conduct that would in turn result in dose limits that exceed the regulatory maximum in violation of the PAA; Defendants' Motion to Dismiss on this basis is **DENIED**.

### b.  *Cognizable injuries under the PAA*

Defendants also argue that even if Plaintiffs were exposed to radiation in excess of federal limits, they have not alleged injuries cognizable under the PAA.  According to Defendants, PAA provides for an exhaustive list of injuries and Plaintiffs fail to plead any on that list.  (ECF No. 150 at 22).  Specifically, there are only two that even appear relevant to Plaintiffs allegations: bodily injury and property-based injuries.  (*See id.*).  Yet, Defendants contend that what Plaintiffs allege—

hypothetical exposures and increased risk of harm—do not constitute a bodily injury under Ohio law.  (*Id.*).  Additionally, Defendants maintain, Plaintiffs have failed to allege actual damage or substantial interference to its property.  (*Id.*) (citing *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 523–24 (6th Cir. 2013)).  Finally, there cannot be a property injury for the minor children because those minors do not and cannot own the land.  (*Id.*).

Plaintiffs respond by asserting that they are not alleging bodily injury claims but rather property-based claims.  (ECF No. 152 at 22).  Plaintiffs contend *Baker v. Chevron* read the right way supports their allegations.  (*Id.* at 22–23) (also citing *Abrams v. Nucor Steel Marion, Inc.*, 979 F. App'x. 974, 979-80 (6th Cir. 2017)).  Indeed, this Court held that increased risk of cancer incidences is sufficient to allege injury to property.  (*Id.*) (citing *McGlone I*, 2020 WL 4431482 at *14).  Alleged facts demonstrate not just increases in risk but actual increases in observed rates of cancer.  Accordingly, Plaintiffs assert they have alleged sufficient facts for property-based claims under PAA.

Plaintiffs also argue that the minor children have standing to sue. Although they don't own the land, they are residents.  (*See* ECF No. 152 at 24).  As residents they possess the land.  (*See id.*).  The law recognizes possessory interest as a basis to litigate property-based claims.  (*Id.*) (citing The Restatement (Second) of Torts and *In Re Peace*, 546 B.R. 65, 72 n. 3 (S.D. Ohio Bankr. 2015).  Plaintiffs contend that the cases relied on by Defendant are distinguishable because none of the cases cited involves the ownership interest of minor children.  (*Id.*) (citing *Windsor Realty and Management, Inc. v. Northeast Ohio Regional Sewer District*, 2019-Ohio-3096 (8th Dist. 2019); *Lame, Inc. v. E.G. Sys., Inc.*, 2015-Ohio-686 (8th Dist. 2015); and *Myers v. Vill. of Alger*, 102 F.App'x. 931 (6th Cir. 2004)).  *Adams* is distinguishable because it was about the misrepresentation of ownership.  (*Id.*) (discussing *Adams v. Pitorak & Coenen Invests, Ltd.*, 2012-

31

Ohio-3015 (11th Dist. 2012)). Plaintiffs maintain that because there is no misrepresentation here, *Adams* is in apposite. (*Id.*). Thus, Defendants' attack on this basis must be rejected.

As articulated in *McGlone I*, the Price-Anderson Act provides plaintiffs with a vehicle to sue for "any legal liability arising out of or resulting from a 'nuclear incident.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1549 (6th Cir. 1997). A nuclear incident:

> "is any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."

*McGlone I*, 2020 WL 4431482, at *2 (citing 42 U.S.C. § 2014(q)); *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1549 (6th Cir. 1997)). Section 2014(q) allows successful plaintiffs to recover for "loss of or damage to property, or loss of use of property." 42 U.S.C. § 2014(q). Because "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent," it is undisputed that Ohio law provides the substantive law in question. 42 U.S.C.A. § 2014 (hh).

Plaintiffs make it abundantly clear in their Response in Opposition that "this is a case about damage to property; it is not a personal injury case." (ECF No. 152 at 19). This clarification facilitates the Court's review. The Court will address Defendants' arguments about whether: (i) Plaintiffs alleged an injury cognizable by the PAA; and (ii) a minor can assert a property-based claim in Ohio as incorporated into the PAA.

*McGlone I* resolved whether Plaintiffs' claims are cognizable under the PAA. There, the Court noted:

> Plaintiffs claim substantial damages to their property by way of the fact that counties immediately surrounding the Plant have the highest cancer rates in the state of Ohio. [Second Amended

>Complaint] at 12.; *See Abrams v. Nucor Steel Marion, Inc., 694 F. App'x* 974, 979-80 (6th Cir. 2017) ("[A] plaintiff may establish substantial physical damage to, or interference with, his property by demonstrating that the concentration of an invading contaminant on his property is likely to cause harm to human health."). These allegations are sufficient for the Court to draw the inference at this stage that each of the Plaintiffs sustained a cognizable injury.

*McGlone I*, 2020 WL 4431482, at \*14.  Here, the Plaintiffs reaffirm their property-based theory of injury.  As nothing factually or legally—other than the assertion of a new standard, which Plaintiffs assert they meet—has materially changed, and Defendants fail to say otherwise, the Court sees no reason to depart from this finding.  Thus, Defendants' Motion to Dismiss based on the Plaintiffs' purported failure to allege a cognizable harm is **DENIED**.

The issue of whether minors had standing to bring property-based claims was not raised in *McGlone I. See McGlone I*, 2020 WL 4431482 at \*1.  Instead, Defendants press this issue in the operative Motion to Dismiss (ECF No. 150).  Although Plaintiffs attempt to distinguish the case cited by Defendants, their seemingly innocuous concession bolsters the Defendants position. Defendants argued that *Gevelaar v. Millenium Inorganic Chemicals*, 11th Dist. Ashtabula No. 2012-A- 0013, 2013-Ohio-435, among other cases, stand for the proposition that children—even residents—do not automatically acquire a property interest in property owned by their parents. (ECF No. 150 at 30).  In *Gevelaar*, Plaintiff owned land that his son later moved onto, occupying a construction trailer.  *Gevelaar*, 2013 WL 501745 \*1.  The Plaintiff's son resided on the property in question, "but did not own any portion of the … properties and was not paying rent to his father." *Id.*  The Ohio trial court dismissed the son's Complaint for lack of standing. Specifically, the Court found that "Gevelaar, Jr. cannot pursue a nuisance action to recover for alleged damage to property he does not own or rent."  *Id.* at \*5.

The consequent of that, Defendants say, is that minor children with no purported ownership interest other than residing at the property similarly lack standing to bring suit to recover damages. (*See* ECF No. 150 at 30). In their Response, Plaintiffs contend *Gevelaar* is distinguishable because it does not deal with minor children. (ECF No. 152 at 28). This, however, is not the defining feature nor thrust of the case. As such, Defendants articulation of Ohio's standing rule as to minors is well taken.

Additionally, Plaintiffs citation to a 2015 Bankruptcy case, the Restatement of Torts 2d, and a 2015 decision from this Court does not disturb that conclusion. (*See* ECF No. 152 at 28). That is because none of these cases displaces Ohio's common law. (ECF No. 154 at 21). If anything, Plaintiffs offer some evidence of alternative approaches and general principles, but these cases do not resolve the more specific question of standing based on Ohio law. Therefore, Plaintiffs' assertions of property-based claims by minors—under both the PAA and state law— fail for lack of standing. The minor Plaintiffs' claims are **DISMISSED**.

### B. Motion to Dismiss State Law Claims

Defendants also move to dismiss Plaintiffs' state law claims in part based on two primary theories: (1) the claims are time-barred for the same reason as the PAA claim; and (2) the minors have no claims because they cannot sue for damage to property they neither own nor rent. (ECF No. 150 at 29–31). The Court will address these arguments in turn.

#### 1. Whether the Claims Are Time-barred

Defendants argue that Plaintiffs' state-law claims are time-barred on the same basis as its time-barred PAA claims. (*Id.* at 30–31). Plaintiffs, similarly, reassert their earlier defenses. (*See* ECF No. 152 at 29).

Because this statute of limitations analysis is identical, the Court reaffirms its earlier findings: Defendants did not waive this defense and Plaintiffs adequately pled the discovery rule. Accordingly, the Court necessarily reaches the same result. Defendants' Motion to Dismiss on this basis is **DENIED**.

### 2. Minors

Defendants argue maintain that Plaintiffs' state law claims as to the minor litigants must fail. That is so, according to Defendants, because each claim for relief is derived from property ownership. Relying on *Gevelaar v. Millennium Inorganic Chems.*, 11th Dist. Ashtabula No. 2012-A-0013, 2013-Ohio-435, ¶ 31 and *Adams v. Pitorak & Coenen Invests., Ltd.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶ 42, Defendants contend that claims for trespass and nuisance cannot be asserted as to property not owned by the Plaintiff. (ECF No. 150 at 29–30). As such, Defendants say, the claims must fail.

Plaintiffs rejoin, pointing to their rationale for property-based claims under PAA: ownership is not the only way to establish standing. (*See* ECF No. 152 at 28) (citing *Little Hocking Water Ass'n, Inc. v. E.I. du Pont Nemours and Co.*, 91 F.Supp.3d 940, 975 (S.D. Ohio 2015)). As previously asserted, Plaintiffs claim that the law recognizes possessory interest as a basis to litigate property-based claims. (*Id.*) (citing The Restatement (Second) of Torts and *In Re Peace*, 546 B.R. 65, 72 n. 3 (S.D. Ohio Bankr. 2015)).

As previously discussed, because Ohio law does not allow for those without property interests to sue for damages to land, Plaintiffs' claim—the PAA and state law claims—must fail for lack of standing. The minor Plaintiffs' claims are **DISMISSED**.

### IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' Motion to Dismiss (ECF No. 150).  Specifically, the PAA claim and state law claims

asserted by the minors are **DISMISSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 31, 2022**